251.    All this was particularly, shocking, alarming and distressing for the Plaintiff given that the H&H Report radio broadcasts, and others referenced herein, will be permanently on record, available to global audiences, so that others can listen to and download it on the Internet, and be directed from the February 10 Radio Broadcast, to read Quayle and Hagmann's February 10 Joint Statement.

252.    The sad reality is what should have taken minutes to rectify had BTR and Cinchcast acted lawfully with H&H Report prior, during, or after the February 10, 2015 Radio Broadcast, the injury the Plaintiff sustained could have been significantly alleviated or possibly prevented.

253.    In addition, Defendants BTR and Cinchcast with a wanton disregard for the cruelty inflicted upon the Plaintiff added stress and financial burdens on the Plaintiff.

254.    The Defendants BTR and Cinchcast act as if they are above-all-laws, and their tortious conduct was, and is, willful, intentional, oppressive, malicious and fraudulent.

255.    BTR's and Cinchcast's conduct continues to constitute extreme and outrageous conduct that violates public policy.

256.    BTR and Cinchcast's unlawful conduct has been and continues to be pursued without privilege or justification.

257.    BTR and Cinchcast have intentionally caused or recklessly disregarded a substantial probability of causing the Plaintiff harm and injury.

258.    The totality of BTR's and Cinchcast's longstanding unlawful conduct against the Plaintiff has caused the Plaintiff to suffer distress, and mental pain and anguish, including, but not limited to, anxiety, stress, loss of sleep and exacerbation of other physical harms.  Moreover,

63

the Defendants' unlawful conduct has also caused the Plaintiff to fear for her life and the safety of family, and friends.

259.    Because BTR and Cinchcast acted without cause or justification and harmed the Plaintiff, thus entitling the Plaintiff to exemplary and punitive damages in an amount appropriate to punish or set an example of the BTR and Cinchcast and to deter such conduct in the future, which amount will be proved at trial.

260.    Defendants' BTR and Cinchcast's sole motive for their conduct against the Plaintiff outlined above was disinterested malevolence.

261.    The above-pled misconduct by BTR and Cinchcast also constitutes the tort of the Prima Facie. The Defendants' BTR and Cinchcast's conduct has also caused the Plaintiff special damages in an amount to be determined at trial.

262.    **WHEREFORE,** the Plaintiff prays for the relief described below.

### TENTH CAUSE OF ACTION
### Fraudulent Misrepresentations
### Against BTR and Cinchcast

263.    Plaintiff hereby incorporates by reference the entirety of the content of paragraph 1-262 above as though fully set forth herein.

264.    BTR and Cinchcast represent themselves as honorable, lawful digital media corporations.  The Plaintiff did not know that BTR and Cinchcast operate as if they are above-all-laws, be it State, Federal or otherwise, and possess the intent to be unlawful.

265.    The Plaintiff relied upon BTR's and Cinchcast's representations and material facts when she contacted them in good faith, and has been damaged by their fraudulent misrepresentations.

266.    BTR and Cinchcast are private corporations.  As private corporations they are not required to provide a platform for radio hosts, and their regular guests who violate, are in breach of their Terms of Use, and misuse and abuse their patented technology that results in unprotected speech.

267.    Upon information and belief, BTR and Cinchcast were founded and are managed by a team with a longstanding history of working together, have extensive private sector global corporate governance experience (as their corporate bios state), and have direct knowledge with the devastating and costly consequences of misguided and or ill thought out corporate governance though their work history.

268.    Upon information and belief, this same BTR and Cinchcast team is, or was, a part of another corporation that obtained government contract(s) with the Federal Communications Commission (FCC).

269.    Therefore, BTR and Cinchcast's founders and management team have working knowledge with lawful and proper business practices in the private and public sectors which makes BTR's and Cinchcast's conduct injurious to the Plaintiff.  The Plaintiff submits these corporations should be held to the highest standards possible that the laws provide.

270.    This was not just in reckless disregard to the Plaintiff's rights; BTR has disregarded the rights and contracts between themselves and others. For instance, the Plaintiff had also contacted some of BTR's affiliated partner companies, licensees or assignees to remove the content. She was either ignored, or told that there was nothing they could do because they do not control the content, and she needed to go back to the original publisher who controls it.

271.    Without conscience, and excuse or justification, BTR and Cinchcast, directly or indirectly, by virtue of being in contractual privity with H&H Report, and others, engaging with,

then ignoring, and closing down the cases on the Plaintiff's complaints for reasons unknown, ignoring long-term red flags that a cursory look at H&H Report's show titles clearly shows, have selected third-party content themselves are knowing participants, liable and complicit.

272.    Furthermore, by making a deliberate decision by continuing to allow H&H Report's non-compliance with BTR's Terms of Use, despite prior red flags, in contrary to their lawful representations, are liable for the damage against the Plaintiff.

273.    BTR and Cinchcast, without cause or justification, have damaged and injured the Plaintiff, acted with common law malice and harbor spite, hatred, ill will, and animus towards the Plaintiff.

274.    BTR and Cinchcast's fraudulent conduct exposes the Plaintiff to public contempt, ridicule, aversion or disgrace, induce an evil opinion of her in the minds of right-thinking persons, and to deprive her of friendly intercourse in society. This harms the Plaintiff personally and her future work-related prospects.

275.    The above-pled misconduct by Defendants also constitutes the torts of fraudulent misrepresentations, and has caused the Plaintiff general and special damages in lost income in her capacity as a journalist, author, collaborator and ghostwriter, in an amount to be determined at trial. The Plaintiff has already suffered losses and cannot predict the loss income from the ghostwriting jobs she was not offered, and or from other reporting, and book marketing she should have been doing for her books.

276.    Since BTR's and Cinchcast's tortious conduct are ones that harm the Plaintiff and or deter third persons from associating or dealing with the Plaintiff, while also exposing the Plaintiff to public contempt, ridicule, aversion and disgrace, the Plaintiff is presumed to have suffered injury and damages.

277.    The aforementioned acts of BTR and Cinchcast were done with a disregard of the Plaintiff's rights and safety, and with a reckless disregard for any laws, be it State, Federal or otherwise.

278.    As a direct and proximate result of the aforementioned acts by BTR and Cinchcast, Defendant corporations have caused harm to Plaintiff, which includes, but is not limited to general and specific damages in an amount not presently known, to be determined as appropriate at trial.

279.    BTR and Cinchcast showed no regard for the cruelty inflicted upon the Plaintiff, thus the Plaintiff is entitled to exemplary and punitive damages in an amount appropriate to punish or set an example of BTR and Cinchcast, and to deter such conduct in the future, which amount will be determined and proved at trial.

**WHEREFORE,** the Plaintiff prays for the relief described below.

**ELEVENTH CAUSE OF ACTION**
**Fraudulent Negligence**
**Against BTR and Cinchcast**

280.    Plaintiff hereby incorporates by reference the entirety of the content of paragraph 1-279 above as though fully set forth herein.

281.    Plaintiff has been damaged by BTR's fraudulent negligence, dereliction of duty, and long standing pattern of not adhering to their own New York State governance, by ignoring red flags, when, at minimum, they had or should have had, substantial reasons to question the accuracy of the H&H Report, and their purported high-level sources who appeared under fictitious identities as alphabet letters or otherwise (in the show titles).

282.    As referenced above, BTR and Cinchcast had initially engaged with the Plaintiff through their represented "abuse" and "support" email contact information.  The Plaintiff will

not be able to ascertain until during or after the discovery process whether or not her repeated interactions played a factor in BTR's sudden Terms of Use and Privacy Policies contractual updates.

283.    In addition, fraudulent negligence is applicable, as a reasonable person would assume and take at face value that BTR's lawyers crafted BTR's Terms of Use, as a legally binding contract for a reason; to ostensibly protect all the Defendants, their listeners, and the public-at-large from any harm or liability, and if breached face liability.

284.    The above-pled misconduct by Defendants also constitutes the torts of fraudulent negligence and under New York law, entitling the Plaintiff to monetary and punitive damages.

**WHEREFORE,** the Plaintiff prays for the relief described below.

<u>**TWELFTH CAUSE OF ACTION**</u>
<u>**Equitable Estoppel and Promissory Estoppel**</u>
<u>**Against BTR and Cinchcast**</u>

285.    Plaintiff hereby incorporates by reference the entirety of the content of paragraph 1-292 above as though fully set forth herein.

286.    BTR and Cinchcast who initially engaged with the Plaintiff through their represented purported abuse and support email contact information, ultimately prevented the enforcement of the Plaintiff's rights which work fraud or injustice upon the Plaintiff whom sought enforcement and was justified in her reliance upon the opposing party's words, representations and conduct, and acted upon that belief. *Nassau Trust Co. v. Montrose Concrete Prods. Corp.*, 56 N.Y.2d 175, 184, 436 N.E.2d 1265, 451 N.Y.S.2d 663 (1982), rearg denied 57 N.Y.2d 674 (1982).

287.    Moreover, when BTR and Cinchcast, initially engaged with the Plaintiff in a promissory and helpful way, it was reasonable to expect that the promissor induced action or

forbearance, upon which the Plaintiff justifiably relied upon. The injustice against the Plaintiff

can only be avoided through enforcement of the promise and initial representations. Instead,

without cause or with justification, BTR and Cinchcast ultimately showed no good faith, and

figuratively slammed the door on the Plaintiff three (3) times. Their conduct was

unconscionable, and without cause of justification. [23]

288.   Plaintiff submits, had BTR and Cinchcast adhered to their own governing laws,

the injury against the Plaintiff could have been minimized or possibly prevented.

289.   The above-pled misconduct by Defendants also constitutes the torts of equitable

estoppel and promissory estoppel. The Defendants' tortious conduct has caused the Plaintiff

general and special damages to in an amount to be determined at trial. The Plaintiff cannot

predict the loss income from the ghostwriting jobs she was not offered, or from other reporting,

and book marketing she should have been doing on her books.

290.   The above-pled misconduct by Defendants also constitutes the torts of equitable

estoppel and promissory estoppel under New York law, entitling the Plaintiff to monetary and

punitive damages.

WHEREFORE, the Plaintiff prays for the relief described below.

### THIRTEENTH CAUSE OF ACTION
### Vicarious Liability
### Against BTR and Cinchcast

291.   Plaintiff hereby incorporates by reference the entirety of the content of paragraph

1-290 above as though fully set forth herein.

292.   BTR is headquartered, and incorporated in New York State, and is governed

under New York State laws. New York State's General Business and corporate laws defines and

discharges benefits and duties to individuals. Employment contracts both written and verbal

---

[23] *Clark v. Ravikumar*, 90 A.D.3d 971, 972 (2d Dep't 2011).

created the rights and duties of the parties involved. *Right* requires performance by another; duty requires performance by its possessor.

293.    Upon information and belief, in addition to an employer's liability under the doctrine of respondent superior, and employer, BTR and Cinchcast engaged in, at minimum, negligent hiring practices, if the employer hired or retained employee(s) with knowledge the employees did not possess the skill set necessary to perform their duties which resulted in the injury.

294.    The Plaintiff submits it will be during the discovery process where she will be able to ascertain:

a.        The number of individuals with additional H&H Report complaints who were engaged, and then ignored by individuals employed at BTR or Cinchcast (and or their predecessors), that had they not been, the injury the Plaintiff has sustained could have been minimized or possibly prevented.

b.        While BTR and Cinchcast initially engaged with the Plaintiff, the one employee, at Cinchcast, who showed concern was removed for reasons unknown.

c.        Whether employees were qualified for their positions.

295.    In addition, Soderberg, on behalf of BTR and Cinchcast, personally took ownership over the unprotected speech audio content(s) as complained by the Plaintiff, when he claimed that he had personally reviewed it, and thereby is obligated to prove the Defendants defamatory speech.

296.    Plaintiff submits vicarious liability may also apply to Soderberg's apparent supervisor at BTR, Toh, and others in BTR's and Cinchcast's purported "abuse" and "support" departments.