**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| MARINKA PESCHMANN, | : | CIVIL ACTION NO.: |
| Plaintiff, | : | 15-CV-09504-PGG |
| -Against- | : | **Plaintiff's Memorandum of Law in Opposition to Defendants** |
| STEPHEN QUAYLE, DOUGLAS HAGMANN, DOES 1-20, | : | Motion to Dismiss the Action |
| Defendants. | : | |

### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Plaintiff *pro se*, Marinka Peschmann ("Plaintiff"), hereby respectfully submits this memorandum of law in opposition to the motion of defendants Stephen Quayle ("Quayle") and Douglas Hagmann ("Hagmann ") (collectively the " Defendants ") to dismiss the Amended Complaint pursuant to Fed. R. Civ. P.  12(b)(6) in accordance to Dkt. No. 55.

In addition, the Plaintiff respectfully requests, in the event, she has improperly submitted exhibits, for this Court to order her to remedy and re-file any deficiencies.

December 29, 2016

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/30/16

Respectfully submitted,

Marinka Peschmann
PO Box 45094 Port Credit
Mississauga, Ontario  L5G 4S7 Canada
marinkapm@aol.com,
Telephone: 646-929-4132
Fax: 917-732-7754
*Plaintiff pro se*

## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................I

TABLE OF AUTHORITIES..........................................................................III

PRELIMINARY STATEMENT.........................................................................1

LEGAL ARGUMENT ..................................................................................4

I.      General Standards Relative to The Sufficiency Of The Pleadings -
        The Complaint Should Not Be Dismissed For Failure To State a Claim When
        Relief Can Be Granted.........................................................................4

II.     A Motion to Dismiss Under Rule 12(B)(6) Merely Tests The Legal
        Feasibility of the Complaint. ...............................................................4

III.    Defendants under New York State law, by their Business Endeavors, and Conduct with
        BlogTalkRadio, Inc., and their Purported High-Level Financial Insider Viji Varghese of
        New York, and others, Availed Themselves of the Benefits of New York for this Court
        To potentially retain jurisdiction.  Alternatively, this Action may be transferred and heard
        in Pennsylvania pursuant to 28 U.S.C. § 1404(a) and/or 28 U.S.C. § 1406(a) And Should
        Not Be Dismissed ..................................................................... 9

        A. Specific and General Jurisdiction ..............................................12
        B. Subject matter jurisdiction .....................................................13

IV.     Spoliation of Defendants Joint Statement Against the Plaintiff Has Occurred In This
        Action .................................................................................. 14

V.      Plaintiff's claims Are Not Barred By the First Amendment And Are Defamatory......... 14

VI.     The Plaintiff Adequately Pled Her Causes of Action. ...................................... 19

        A. Fraudulent Misrepresentation (Count 2)................................................ 19
        B.  Infliction of Emotional Distress Claim (Count 3) ................................... 20
        C. Equitable Estoppel (Count 4) ......................................................  21
        D. Injurious Falsehoods (Count 5) ....................................................  22
        E. Civil Conspiracy (Defendants self-admitted "Circle of Trust")
           Aiding and Abetting (Count 6 & 7) ................................................ 22
        F.  Unjust Enrichment (Count 8) ...................................................... 24

VII.    Defendants Motion is Untimely And Should Be Denied ..................................... 25

VIII.   Defendants' fail to meet their burden for dismissal. The Plaintiff should

be afforded the right to further develop her claims in discovery ........................... 25

Conclusion .................................................................................................... 25

Certificate of Service ........................................................................................ 27

### TABLE OF AUTHORITIES

*Abacus Fed. Sav. Bank v. Lim*, 75 A.D.3d 472, 475 (1st Dep't 2010)......................................... 22

*Accurate Grading Quality Assur., Inc. v. Thorpe*, 12 Civ. 1343 (ALC), 2013 WL 1234836, at \*2 (S.D.N.Y. Mar. 26, 2013) ............................................................................................... 11

*Alharbi v. Beck et al*, U.S. District Court, District of Massachusetts, No. 14-11550 .............. 18

*Alexander & Alexander of New York, Inc. v. Fritzen*, 68 N.Y.2d 968, 969 (1986) ............... 23

*Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009)* (quoting *Bell Atlantic Corp.*

*v. Twombly*, 550 U.S. 544, 570 (2007)............................................................................................ 5

*Atchison, Topeka & Santa Fe Ry. v. Buell*, 480 U.S. 557, 568 n.15 (1987) ......................... 7

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ........................................... 5, 6,7

*Best Cellars Inc. v. Grape Finds at Dupont, Inc.*, 90 F. Supp.2d 431, 446

(S.D.N.Y. 2000) ........................................................................................................................ 23

*Bigio v. Coca-Cola Co.*, 675 F.3d 163, 176 (2d Cir. 2012) .......................................... 22

*Briarpatch Ltd., L.P. v. Pate*, 81 F. Supp. 2d 509, 516 (S.D.N.Y. 2000).......................... 23

*Cain v. Esthetique*, No. 13 CIV. 7834 (JCF), 2016 WL 1599490, at \*13-14 (S.D.N.Y.

Apr. 20, 2016) ........................................................................................................................ 21

*Caruso v. City of New York*, 973 F. Supp. 2d 430, 459 (S.D.N.Y. 2013) .......................... 15

*Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)...................................... 4

*Caruso v. City of New York*, No. 06 Civ 5997 (RA), 2013 U.S. Dist. LEXIS 138643, at \*77 (S.D.N.Y. Sept. 26, 2013) ............................................................................................... 15

*Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991), *cert. denied*, 503 U.S. 960 (1992) ............................................................................................................... 3

*Chance v. Armstrong*, 143 F.3d 698 (2d Cir. 1998) *aff'd. on appeal after remand*, 159 F.3d 1345 (2d Cir.1998)................................................................................................................ 5

*Chandok v. Klessig*, 632 F.3d 803, 811 (2d Cir. 2011) .......................................... 15

*Conley v. Gibson*, 355 U.S. 41 (1957) ............................................................................ 4

*De Sole v. Knoedler Gallery, LLC*, 139 F. Supp. 3d 618, 659 (S.D.N.Y. 2015). ............. 21, 22

*Digizip.com, Inc. v. Verizon Services Corp.*, 139 F. Supp. 3d 670, 682 (S.D.N.Y. 2015) ........ 25

*Dotel v. Walmart Stores, Inc.*, 627 Fed. Appx. 42, 43-44 (2d Cir. 2016) ........................... 20

*Dunlap v. Credit Prot. Ass'n, L.P.*, 419 F.3d 1011, 1012 n.1 (9th Cir. 2005) .................... 25

*Drury v. Tucker,* 210 A.D.2d 891, 892 (4th Dep't 1994) ............................................... 20

*Eramo v. Rolling Stone LLC et al* No. 3:15-cv-00023 U.S. District of Virginia ................... 19

*Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*, No. 16 CIV. 57 (PAE), 2016 WL 3773394, at *10-11 (S.D.N.Y. July 8, 2016) ............................................................. 15

*Firth v. State, 306 A.D.2d 666* (N.Y. App. Div. 2003) ................................................ 14

*Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1261 (11th Cir. 1997) ................... 13

*Geisler v. Petrocelli*, 616 F.2d 636 (2d Cir. 1980) ..................................................... 4

*Gertz v. Robert Welch, Inc. (1974)* .................................................................... 18

*Goldberg v. Gray,* No. 5:15-CV-0538 (DNH/TWD), 2016 WL 4099189, at *12-13 (N.D.N.Y. Aug. 2, 2016) ..................................................................................... 25

*Gorman v. Covidien,* LLC, 146 F. Supp. 3d 509, 535 (S.D.N.Y. 2015) ............................ 20

*Greenberg, Trager & Herbst, LLP v. HSBC Bank USA*, 17 N.Y.3d 565, 581 (2011) ............ 21

*Horn v. Politopoulos*, 628 Fed. Appx. 33, 34-35 (2d Cir. 2015) ................................... 21

*Hoyle v. Dimond*, No. 08-CV-347C, 2013 U.S. Dist. LEXIS 39857, at *15 (W.D.N.Y. Mar. 19, 2013) ..................................................................................................... 15

*Innovative Biodefense, Inc. v. VSP Technologies, Inc.*, No. 12 Civ 3710 (ER), 2016 WL 1301179, at *17 (S.D.N.Y. March 31, 2016) ........................................................... 20

*Korova Milk Bar of White Plains, Inc.* v. Pre Props., LLC, No. 11 Civ 3327 (ER), 2013 U.S. Dist. LEXIS 14937, at *54 (S.D.N.Y. Feb. 1, 2013) .................................................. 22

*Leatherman,* 507 U.S. at 168-69 (1993) ................................................................ 6

*Marathon Structured Finance Fund, LP v. Paramount Pictures Corp.*, 622 Fed. Appx. 85, 86 (2d Cir. 2015) …………………………………………………...…… 25

*Margrabe v. Sexter & Warmflash, P.C.*, 353 Fed. Appx. 547, 550 (2d Cir. N.Y. 2009) ….....… 20

*Marmelstein v. Kehillat*, 11 N.Y.3d 15 , 22-23 (2008) ……………………………………   20

*Mejia v. City of New York,* 119 F. Supp. 2d 232, 285 (E.D.N.Y. 2000)…………………………... 20

*Murphy-Higgs v. Yum Yum Tree, Inc.*, 112 Fed. Appx. 796, 797 (2d Cir. 2004) (element of special damages for injurious falsehood) ……………………………………………….... 21

*Nielsen Co. (U.S.), LLC v. Success Sys., Inc.*, 112 F. Supp. 3d 83, 116 (S.D.N.Y. 2015)……… 21

*O'Diah v. Yogo Oasis*, 954 F. Supp. 2d 261, 275 (S.D.N.Y. 2013) (slander per se) ……...…… 15

*Lumbard v. Maglia, Inc.*, 621 F. Supp. 1529 (S.D.N.Y. 1985)........................................................ 24

*L.W.C. Agency, Inc. v. St. Paul Fire & Marine Ins. Co.,* 125 A.D.2d 371, 373 (2d Dep't 1986) …………………………………………………………………………… 22

*Lyon v. Chase Bank USA*, N.A., 656 F.3d 877, 883 (9th Cir. 2011 ……………………………… 25

*McCusker v. Hibu PLC et al.* (cv 15-2659 (Wexler, J.)…………………………………...…… 13

*McKevitt v.Mueller*, 689 F. Supp. 2d 661, 665 (S.D.N.Y. 2010)……………………………...… 4

*Moneygram Payment Sys., Inc. v. Consorcio Oriental,* S.A., 05 Civ. 10773 (RMB), 2007 WL 1489806, at *3 (S.D.N.Y. May 21, 2007) …………………………………………… 12

*Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003) ………………………………… 13

*NAACP v. Claiborne Hardware Co.,* 458 U.S. 866 (1982) ........................................................ 23

*Newman v. Family Mgmt. Corp.*, 530 Fed. Appx. 21, 24 (2d Cir. 2013) ……………………... 20

*Obsidian Fin. Grp., LLC v. Cox,* 812 F. Supp. 2d 1220, 1232–34 (D. Or. 2011)…………...…17, 18

*O'Diah v. Yogo Oasis*, 954 F. Supp. 2d 261, 275 (S.D.N.Y. 2013) ……………………………… 15

*Obsidian Fin. Grp., LLC v. Cox,* No. 3:11-cv-00057-HZ, 2012 WL 1065484, at *7 (D. Or. Mar. 27, 2012) …………………………………………………………………….. 17, 18

*Patel v. Patel,* 497 F. Supp. 2d 419, 425 (E.D.N.Y. 2007) …………………………………...…… 12

*Pelman v. McDonald's Corp.*, 396 F.3d 508 (2d Cir. 2005)......................................................... 6

*Peters v. Baldwin Union Free Sch. Dist.*, 320 F.3d 164, 169 (2d Cir. 2003)........................ 14

*Phelps v. Kapnolas*, 308 F.3d 180 (2d Cir. 2002).............................................................. 4

*Planned Parenthood v. American Coalition of Life Activists,* 290 F.3d 1058 (9th Cir. 2002) .... 17

*Reyes v. Schuttenberg* (CIVIL NO. 13-00028 JMS-BMK ............................................... 13

*Robertson v. Dowbenko*, 443 Fed. Appx. 659, 661 (2d Cir. 2011) ...................................... 15

*Rodriguez v. Cal. Highway Patrol,* 89 F. Supp. 2d 1131, 1136 (N.D. Cal. 2000) ................. 13

*Samson Tug & Barge Co. v. Koziol,* 869 F. Supp. 2d 1001 1015 (D. Alaska 2012) (internal citations omitted) .................................................................................................... 13

*Schultz v. Safra Nat. Bank of New York,* 377 Fed. App'x. 101, 102 (2d Cir. 2010) ............... 11

*SEC v. Apuzzo*, 689 F.3d 204, 207 (2d Cir. 2012) ...................................................... 5

*Singer v. Bell*, 585 F. Supp. 300 (S.D.N.Y. 1984)...................................................... 24

*Sparrow v. United Airlines, Inc.*, 216 F.3d 1111 (D.C. Cir. 2000), *appeal dismissed after remand,* 2001 WL 936257 (D.C. Cir. July 12, 2001) ......................................................... 5

*Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506 (2002)............................................... 5, 6, 7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ........................... 4

*Thai v. Cayre Grp., Ltd.*, 726 F. Supp. 2d 323, 329 (S.D.N.Y. 2010) ............................... 14

*Towers Tenant Ass'n v. Towers Ltd. P'ship*, 563 F. Supp. 566, 569 (D.D.C. 1983) ............... 7

*Twombly v. Bell Atlantic Corp.*, 425 F.3d 99 (2d Cir. 2005)......................................... 6

*United States Supreme Court*'s decision in *Daimler AG v. Bauman*...................................... 11

*United States v. Rahman*, 1994 U.S. Dist. LEXIS 10151, S3 93 Cr. 181, 1994 WL 388927, at *1-2 (S.D.N.Y. July 22, 1994) ....................................................................... 23

*Williamson v. Tucker,* 645 F.2d 404, 415-16 (5th Cir.1981) ........................................ 14

*Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 95 (2d Cir. 2000) ............................... 12

*Woodford v. Community Action Agency,* 239 F.3d 517 (2d Cir. 2001).................................. 4

*Wynder v. McMahon*, 360 F.3d 73 (2d Cir. 2004) ............................................................ 5

*Viera v. BASF Catalysts LLC et al* ...................................................................... 13

*Vitro S.A.B. de C.V. v. Aurelius Capital Mgt., L.P.*, 99 A.D.3d 564, 565 (1st Dep't 2012)....... 21

*Zherka v. Amicone*, 634 F.3d 642, 645 & n.6 (2d Cir. 2011) ..................................... 15

*131 Main St. Assocs. v. Manko*, 897 F. Supp. 1507, 1532 n.23 (S.D.N.Y. 2010)................... 4

**Statues**
Communications Decency Act of 1996, 47 U.S.C. § 230 ................................................ 3
28 U.S.C. §1391(a)(3) ................................................................................... 13
28 U.S.C. § 1391(b) ..................................................................................... 13
28 U.S.C. § 1391(b)(2) .................................................................................. 13
28 U.S.C. § 1404(a) ................................................................................. 3, 9, 12
28 U.S.C. § 1406(a) ................................................................................. 3, 9, 12

**Federal Rules**
FED. R. CIV. P 12(b) (2) .............................................................................. 2
FED. R. CIV. P 12(b) (6) ..................................................................... 3, 4. 5, 14
FED. R. CIV. P 9 (b) .................................................................................... 6
FED. R. CIV. P 12(b) (1) ......................................................................... 13, 14
FED R. CIV. P 12(e) .................................................................................... 8

**Rules**
C.P.L.R. § 301 .................................................................................... *passim*
C.P.L.R. § 302 .................................................................................... *passim*
42 Pa.C.S.A § 5322 ............................................................................... *passim*

**United States Constitution**
First Amendment .............................................................................. 14, 17, 23
Fourteenth Amendment ............................................................................... 12
Due Process Clause ............................................................................ 3, 12, 17

**Preliminary Statement**

While Defendants' Motion to Dismiss ("Def Motion") characterizes the Plaintiff's first amended complaint ("FAC") as being "about nothing," like TV's Seinfeld, and a "non -actionable hyperbolic" "war of words," it appears the Defendants, media personalities, have confused this Federal Court proceeding as one of their almost daily appearances in the alternative media.

In the alternative media Defendants reach millions of people, and peddle discredited murder conspiracies, date-set imminent claims of marital law that come and go, scare people into believing an economic collapses will happen any day for years, all the while, as purported truth tellers, watchmen, investigative journalists, private investigators, experts, with "insider" sources.

This has been occurring for years on the Internet talk radio show *The Hagmann and Hagmann Report* ("H&H Report"), Defendants various websites, and when Defendants appear as expert guests, on shows like Alex Jones *Infowars.com*[1] (FAC at 2-4, 27-28).

Instead the Defendants Stephen Quayle ("Quayle") and Douglas Hagmann's ("Hagmann") "news" can be like screaming "fire" in a crowded theater over and over again. As it was when Defendants *per se* defamed and incited violence against the Plaintiff, after she corrected some of their false allegations against government agencies she had been assigned to report.

From the get-go to its conclusion Defendants Motion to Dismiss ("Def Motion") is based upon false narratives that are not in the Plaintiff's FAC. It is riddled with mischaracterizations and cherry picked facts, fabrications, contradictions, blatant distortions of the Plaintiff's pleadings; and glaring omissions to distort the context.

---

[1] *See,* for instance, according to Quantcast.com, Alex Jones *Infowars.com* has been reaching over 14 million unique visitors worldwide. Located at: https://www.quantcast.com/infowars.com#/trafficCard last accessed on November 26, 2016.

The Defendants Quayle and Hagmann, with experienced lawyers, submitted improper "declarations" where they could not spell their own names correctly, and an "affirmation," in which the Defendants initialed to acknowledge the misspellings, but none of the other issues.[2]

Lastly, the Plaintiff was bullied and intimidated by an individual in Defendants' self-admitted civil conspiracy, their "Circle of Trust,"[3] in their alternative media, into dropping this lawsuit, who shortly thereafter, was arrested and criminally charged for similar conduct against another individual. This individual has been released on a peace bond, and thankfully must stay out of trouble, or likely will be hauled back into custody.

All this shows the opposite of Def Motion is true. And incredibly, this is occurring in a Federal district court proceeding, while the United States debates how to address the problem of fake news and false information on the Internet; the dangerous real world consequences of it; and what to do about individuals who harmfully publish and peddle it—like the Defendants.

In the Plaintiff's view, fake news may also be referred to as defamation.

Verifiable facts vs. provable falsities; journalism vs. pretend journalism; defamation for profit vs. truth.  That is this lawsuit in a nutshell.  It is not about censorship either. This is an issue of free speech versus unprotected speech and a matter of law. The distinctions are transparent.

This lawsuit seeks to utilize the American justice system to recompense the Plaintiff, clear her name, and attempt to begin to restore some much needed integrity, honesty and accountability in the media, on the worldwide Internet, where anyone can pretend to be anything, and publish damaging, vile falsehoods with little to no accountability, unless injured parties, like the Plaintiff, file a lawsuit.  This is what this case is about.

---

[2] *See:* Plaintiff's Notice of Rejection for further discussion (Dkt. No. 55-57).
[3] To avoid repetition all references herein to Defendants' self admitted conspiracy, their circle of trust ("Circle of Trust"), also known as Defendants' and "inner circle" will include individuals who are presently in it, or who were previously a part of it (FAC at 74, 100-102, 110, 117, 144 , 228-235, 237-242, and 244).

***

Defendants' Counsel filed its Motion to Dismiss for lack of personal jurisdiction over either Hagmann or Quayle, pursuant to Fed. R. Civ. Proc. (12)(b)(2); general jurisdiction, specific jurisdiction, and claim jurisdiction fails to comport with Constitutional Due Process. Defendants claim the Plaintiff's first through eighth causes of action (defamation/defamation per se/ Intention Infliction of emotional distress/fraudulent misrepresentation/equitable estoppels/injurious falsehoods/ civil conspiracy/aiding and abetting; and unjust enrichment) fail as a matter of law, pursuant to Fed. R. Civ. Proc. 12(b)(6) and failure to state a claim upon which relief can be granted. (FAC at 37-38, 63, 65, 97- 98, 107, 114- 116, 129).

***

Defendants are wrong, and their motion fails on its merits. Moreover, as circumstances have

changed, if jurisdictional deficiencies exist, which did not exist at the time when the Plaintiff filed

this action, they can be wholly remedied by transferring this case to the district of Pennsylvania

pursuant to 28 U.S.C. § 1404(a) and/or 28 U.S.C. § 1406(a).[4]

The Western District of Pennsylvania also has subject matter jurisdiction over this case by virtue of 28 U.S.C. §1331 because this is a civil action arising under the laws of the United States, and venue pursuant to 28 U.S.C. 1391 (c). New York's long-arm statutes, are similar pursuant to Pennsylvania long-arm statute, 42 Pa.C.S.A § 5322.  A court has personal jurisdiction where a suit meets the requirements of the state's long- arm statute, and the exercise of jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment.  *Licci ex rel Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59-60 (2d Cir. 2012).  The fact that some of the events at issue (*e.g.* Plaintiff's contact with New York Defendant Corporations) took place in one jurisdiction does not prohibit venue in another. *Basile v. Walt Disney Co.*, 717 F. Supp. 2d 381, 387 (S.D.N.Y. 2010).

Thereby transferring this case to the Western District of Pennsylvania regarding Quayle is

also proper. It the most convenient forum for Hagmann, and otherwise remains mainly neutral.

The Defendants should not be permitted to escape liability for their tortious conduct against

Plaintiff that has damaged her both professionally and personally by way of this Motion.

In deciding the motion, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a

---

[4] Plaintiff recognizes that this Court has dismissed New York Defendant Corp barred by the Communications Decency Act, 47 U.S.C. § 230 (the "CDA"), and thereby circumstances have changed.  *See:* the "9/12/16 Order"; Dkt. No. 43."

court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The court may also consider documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991), *cert. denied*, 503 U.S. 960 (1992); *McKevitt v. Mueller*, 689 F. Supp. 2d 661, 665 (S.D.N.Y. 2010). Where the complaint cites or quotes from excerpts of a document, the court may consider other parts of the same document submitted by the parties on a motion to dismiss. *131 Main St. Assocs. v. Manko*, 897 F. Supp. 1507, 1532 n.23 (S.D.N.Y. 2010).[5]

## LEGAL ARUGMENT

### I. GENERAL STANDARDS RELATIVE TO THE SUFFICIENCY OF THE PLEADINGS – THE COMPLAINT SHOULD NOT BE DISMISSED FOR FAILURE TO STATE A CLAIM WHEN RELIEF CAN BE GRANTED

Plaintiff has sufficiently alleged her claims under federal and state causes of action, the common law and under the U.S. Constitution. These claims should not be dismissed.

### II. A MOTION TO DISMISS UNDER RULE 12(B) (6) MERELY TESTS THE LEGAL FEASIBILITY OF THE COMPLAINT

Defendants moves to dismiss the Complaint pursuant to Fed. R. Civ. Proc. 12(b) (6), for failure to state a claim upon which relief could be granted. Such a motion must be denied unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Wynder v. McMahon*, 360 F.3d 73, 78 n.8 (2d Cir. 2004); *Phelps v. Kapnolas*, 308 F.3d 180, 184 (2d Cir. 2002) (*per curiam*). The Court's role is "not to assay the weight of the evidence which might be offered in support" of the Complaint, but "merely to assess the legal feasibility" of the Complaint. *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980). Plaintiffs are not required to prove their case at the pleading stage; indeed, the Second Circuit has cautioned that "[t]he pleading of evidence should be avoided." *Woodford v. Community Action Agency*, 239 F.3d 517 (2d Cir. 2001). The

---

[5] Therefore, accompanying and attached to this Opposition, the Plaintiff has submitted a sworn declaration ("Plaintiff decl") dated December 29, 2016, with a series of marked exhibits which factually verify some of FAC and shows some of the falsehoods with Def Motions. It includes documentation she already possesses for this action, but obviously not all of it (like the radio broadcasts), as to not place a burden on the Court at this time. The present pleadings consist of the FAC filed on January 15, 2016. Attached to the Opposition, as exhibits, and incorporated therein.

issue on Rule 12(b) (6) motion "is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims." *Hance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998), *aff'd. on appeal after remand*, 159 F.3d 1345 (2d Cir. 1998).

In determining whether Plaintiffs could ultimately prevail, the Court must accept as true the facts alleged in the pleadings and draw all reasonable inferences in Plaintiffs' favor. *Wynder*, 360 F.3d at 78; *Phelps*, 308 F.3d at 184; and *SEC v. Apuzzo*, 689 F.3d 204, 207 (2d Cir. 2012); *SEC v. Wyly*, 788 F. Supp. 2d 92, 101 (S.D.N.Y. 2011). *See also: Woodford v. Community Action Agency*, 239 F.3d 517, 526 (2d Cir. 2001); *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998), *aff'd. on appeal after remand*, 159 F.3d 1345 (2d Cir. 1998). A motion to dismiss should be granted only if the complaint is unable to articulate "enough facts to state a claim to relief that is plausible on its face*." Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). A complaint need not contain detailed factual allegations. If the complaint contains sufficient "factual content" to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," the plaintiff has met its burden of stating a claim with "facial plausibility." *Iqbal*, 556 U.S. at 678; *see also Wyly*, 788 F. Supp. 2d at 101.

Furthermore, a Rule 12(b) (6) motion is analyzed in the context of the requirements of Fed. R. Civ. Proc. 8(a), which are extremely permissive. *Swierkiewicz*, 534 U.S. at 512-13 (2002).

Indeed, Rule 8(a)(2) provides that a complaint only need include "a short and plain statement of the claim showing that the pleader is entitled to relief" and that such a statement simply shall "give the Defendants fair notice of what the plaintiffs claim is and the grounds upon which it rests." *Id.* at 512 (quoting *Conley*, 355 U.S. at 47 (1957)); *Wynder*, 360 F.3d at 77; *see also Sparrow v. United Airlines, Inc.*, 216 F.3d 1111, 1115 (D.C. Cir. 2000), *appeal dismissed after remand*, 2001 WL 936257 (D.C. Cir. July 12, 2001) (allegation "I was turned down for a job because of my race" would be sufficient to survive a Rule 12(b)(6) motion). Furthermore, in the

absence of averments of fraud or mistake, which must be pled with particularity pursuant to Fed. R. Civ. Proc. 9(b), a federal court is prohibited from imposing more demanding requirements than those proscribed under Rule 8(a). *Leatherman*, 507 U.S. at 168-69 (1993); *Twombly v. Bell Atlantic Corp.*, 425 F.3d 99, 106-7 (2d Cir. 2005).

Several recent Second Circuit cases underscore and re-affirm these cardinal principles. In *Phelps*, the Court of Appeals held that a district court "may not go beyond FRCP 8(a)(2) to require the plaintiff to supplement his pleadings with additional facts that support his allegation of knowledge either directly or by inference." *Id.* at 186-87. The Court explained that dismissal was improper because, through discovery, the plaintiff might uncover direct evidence to support his allegations. *Phelps*, 308 F.3d at 187.

In *Pelman v. McDonald's Corp.*, 396 F.3d 508 (2d Cir. 2005), the Second Circuit again vacated a district court's 12(b)(6) dismissal and reiterated the minimal pleading standards to be applied. Quoting the unanimous Supreme Court ruling in *Swierkiewiez*, the Court reminded:

> This simplified notice pleading standard of Rule 8(a) relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims. The provisions for discovery are so flexible and the provisions for pretrial procedure and summary judgment so effective, that attempted surprise in federal practice is aborted very easily, synthetic issues detected, and the gravamen of the dispute brought frankly into the open for the inspection of the court. *Pelman*, 396 F.3d at 512 (*quoting Swierkiewicz*, 534 U.S. at 512-13 ).

In Def Motion, the Defendants appear to confuse these notice pleading standards with a review of a complaint upon a motion for summary judgment. This is not a sufficiency of the fact; rather, it is a review of the sufficiency of the pleadings. Not only do the Rules differentiate the approach, but, no discovery has taken place. Thereby, Defendants' factual allegations in Def Motion must play no role. Moreover, such 'facts' are mere, un-sworn, untested, allegations.

Defendants do not, and cannot, claim that they did not receive fair notice. Defendant clearly knows what has been alleged. Because the pleadings provide fair notice, there is no basis

for a dismissal at this time.  The Supreme Court has explained that a complaint need only "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002); accord *Atchison, Topeka & Santa Fe Ry. v. Buell*, 480 U.S. 557, 568 n.15 (1987) (under Federal Rule 8, claimant has "no duty to set out all of the relevant facts in his complaint"). "Specific facts are not necessary in a Complaint; instead, the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Epos Tech.*, 636 F. Supp.2d 57, 63 (D.D.C. 2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)).

Thus, the Federal Rules embody "notice pleading" and require only a concise statement of the claim, rather than evidentiary facts.  Accordingly, Defendants' Motion would be considered properly filed only "where a plaintiff's complaint is 'unintelligab[le] (sic),' not where a complaint suffers for 'lack of detail.'" *Epos Tech.*, 636 F. Supp. 2d at 63 (citations omitted). The simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and to dispose of unmeritorious claims.  See *Swierkiewicz,* 534 U.S. at 512.  Indeed, courts have found that if the information sought by the motion is obtainable through discovery, the motion should be denied.  See, e.g., *Towers Tenant Ass'n v. Towers Ltd. P'ship*, 563 F. Supp. 566, 569 (D.D.C. 1983) (denying motion for a more definite statement because details such as "dates, times, names and places" are "the central object of discovery, and need not be pleaded").

Def Motion complains, contradicts and fabricates. For instance, the FAC is not difficult to decipher. Plaintiff also included a list of *per se* defamatory statements, which enumerate and delineate the libel *per se* from the slander *per se*, the Joint Statement as opposed to the Radio Broadcasts (FAC at 140-144). This was done as a convenience to Defendants and the Court, and does not limit the factual assertions in the FAC. A brief summary of this case is at FAC at 68.

Consideration of the FAC as a whole demonstrates that it meets the requirements

established under the Federal Rules.  Here a review of the entire FAC demonstrates that the FAC

does not rely upon mere legal conclusions but contains a detailed factual account of Defendants'

tortious practices. The FAC provides the motivation as to why Defendants caused this injury

against the Plaintiff which also establishes their liability (FAC at 25, 26, 44, 45, 46, 47, 48, 68, 125,

126, 127-129).

        The Defendants complain, obfuscate, and double speak. On one hand Def Motion (at p 3)

states: "Plaintiff's 72 page Complaint, which contains 297 paragraphs, is, at best a difficult read,

and its claims difficult to decipher, and, at worst, patently frivolous." On the other hand,

Defendants did not specify any statement(s) that they consider to be defective, vague, unclear or

lacking in detail. The Defendants also did not file a motion for a more definitive statement pursuant

to Fed. R. Civ. Proc. 12(e). Instead Defendants distorted her pleadings, and corrective reporting

beyond recognition, and/or deceptively took them out of context, including by claiming she

admitted to facts she did not admit to. For expediency sake, to not burden the Court, the Plaintiff

expressly rejects each claim in Def Motion.

        If parts of the FAC are a "difficult read," it likely is because she was quoting the Defendants

during their regular joint talk radio show appearances on H&H Report.[6]

        Def Motion attempts to minimize this action into a "war of words," and name calling,

between little websites. That's absurd. Defendants reach millions of people, and appear publicly

almost daily, the Plaintiff does not (FAC at 2-4).[7]

        What is not absurd, and should not be understated, are the millions of trusting individuals

---

[6] The Plaintiff has lengthy transcripts and radio audio preserved to submit should the Court desire
to review it.  *See:* "Hawk and Steve Quayle on H&H Report," *BlogTalkRadio,* February 10, 2015,
located at: http://www.blogtalkradio.com/cfp-radio/2015/02/11/hawk-steve-quayle-on-the-
hagmann-hagmann-report.

[7] **Note:** The Plaintiff does not regularly publish, on her website, she barely publishes. As such it
garners little traffic. She does not promote it, and rarely uses social media—unlike the Defendants.
She did not use social media either for her correction articles concerning the Defendants.

worldwide ,who believe the Defendants are providing them with the real "news," thereby, each and

every defamatory statement concerning the Plaintiff.[8]  This is why she has been so badly damaged.

The FAC contains Defendants defamatory and *per se* defamatory statements against the

Plaintiff, the statements where Defendants bullied, intimidated and incited violence against her

(FAC at 87, 88, 89, 90, 92, 94, 97-99), and identifies whether Defendants' made these statements in

written form published in Defendants February 10 Joint Statement, or in spoken form on the H&H

Report (FAC at 68-71, 75-77, 81-102, 105-119, 130-132, 140-144, 171-189).

**III.    DEFENDANTS UNDER NEW YORK STATE LAW, BY THEIR BUSINESS ENDEAVORS, AND CONDUCT WITH BLOGTALKRADIO, AND THEIR PURPORTED HIGH-LEVEL FINANCIAL INSIDER VIJI VARGHESE OF NEW YORK, AVAILED THEMSELVES OF THE BENEFITS OF NEW YORK FOR THIS COURT TO POTENTIALLY RETAIN JURISDICTION.  ALTERNATIVELY, THIS ACTION MAY ALSO BE TRANSFERRED AND HEARD IN PENNSYLVANIA PURSUANT TO 28 U.S.C. § 1404(A) AND/OR 28 U.S.C. § 1406(A) AND SHOULD NOT BE DISMISSED**

To establish specific personal jurisdiction over a defendant, a defendant's contacts with the forum state "must reflect purposeful availment *and* the cause of action must arise out of those contacts." *Kuenzle*, 102 F.3d at 456 (emphasis in original).

The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) (diversity of

citizenship) because the parties' citizenship is diverse (FAC at 12). For the reasons set forth in FAC

(at 16-23), this Court may determine it has personal, subject, specific, and general jurisdiction over

the Plaintiff, a resident and citizen of Ontario, Canada, the Defendants,' Hagmann, a resident, and

citizen of Pennsylvania, and Quayle, a resident and citizen of Montana, (FAC at 1-4), as the Parties

have a nexus of New York contacts, to have availed themselves in New York.

Defendants are also contractually bound in New York through their transactions, and profits

derived by their continuous, and long-standing H&H Report endeavor with New York Corporation

BlogTalkRadio, Inc. ("BTR") and vice versa, bound by BTR's New York Terms of Use (FAC

at12-23, 68, 118, 233, 250-252, 264-297) where Defendants sell precious metals, books, DVDs,

---

[8] **Note.** This is evidenced, in part, by playing a jury segments from the H&H Report, which includes caller call-in, and by seeing Defendants social media feeds like Twitter and Facebook.

doomsday and prepper gear while they claim they are providing the real "news."[9]

Defendants have conducted continuous business with New York based guests on H&H Report, contrary to their assertions in Def Motion. For instance, Defendant Quayle's regular appearances on H&H Report with "V," "V" Viji Varghese ("Varghese,") of New York. Defendant's purported Financial "Insider," they call the "Guerilla Economist." Varghese operates and renders financial services while physically in New York, where he lives and is a citizen of. Varghese's joint appearances on the H&H Report with Quayle has induced non-passive sales of precious metals for Quayle, and other financial services and products they offer (FAC at 20, 40 and 68).

Varghese has admitted he has made Defendant Quayle $6 million (six million dollars) in precious metal sales in one year alone, by his joint appearances on the H&H Report with Quayle. This is a multi-million dollar operation, and is contrary to what Defendants claimed in their declarations (Quayle decl at 3, Hagmann decl at 3).[10]  In brief, "V" agrees with Quayle's Renaissance Precious Metals' motto: "If you can't touch it, you don't own it."

Defendants introduced New York based "V," in the alternative media, initially on http://www.stevequayle.com/, and then "V" appeared regularly with Quayle, on the H&H Report with Defendant Hagmann. Defendants promoted and vouched for "V," on their respective websites, H&H Report, and at CFP (with respect to Hagmann).  Defendants continue to promote Varghese on their websites. A nexus exists. *See* Plaintiff decl at Exhibit  2, 9, 10, 11, 12, 22.[11]

---

[9] Plaintiff recognizes this Court has dismissed New York Defendant Corps under the Communications Decency Act, 47 U.S.C. § 230 (the "CDA"), and thereby circumstances have changed since the Plaintiff first filed this case.  *See:* the "9/12/16 Order"; Dkt. No. 43."

[10] Michael Kirk McLeod, "Unmasking "V" the Guerilla Economist," *Revelationnow.net,* November 20, 2016, located at:  http://revelationnow.net/2016/11/20/unmasking-v-the-guerrilla-economist/ .

[11] The Plaintiff does not want to burden the Court. However, if the Court requires more information regarding New York jurisdiction, and Defendants business relationship with Varghese, of New York, the Plaintiff has hours of radio broadcasts and transcriptions with Defendants and Varghese should the Court desire to receive them. Alternatively, the Defendants may avail themselves in New York or agree to transfer to Pennsylvania.

Further, Defendants' Counsel has appeared and filed documents on Defendants behalf in this Court, in New York State Court, and Hagmann claims he is a multistate licensed private investigator including in New York (FAC at 20).  Moreover, the Supreme Court's decision in *Daimler AG v. Bauman* has brought uncertainty to application of New York's "doing business" rule.  As a result, it is unclear whether existing New York general jurisdiction jurisprudence remains viable, and thereby provides discretion for this Court.  Alternatively, § 302(a), New York's long-arm statute, confers "specific jurisdiction over a non-domiciliary defendant arising out of particular acts." *Accurate Grading Quality Assur., Inc. v. Thorpe*, 12 Civ. 1343 (ALC), 2013 WL 1234836, at *2 (S.D.N.Y. Mar. 26, 2013) (internal quotation marks omitted).  The relevant provisions of the long-arm statute for this case include the grants of jurisdiction over a person who "transacts any business within the state," CPLR §302(a)(1), or who "commits a tortious act within the state, except as to a cause of action for defamation," CPLR § 302(a)(2).

While Defamation is a part of this suit, it is *not the only tortious* act, despite Defendants claims that Counts 2-8 are "Claims Sounding in Defamation That have Been Disguised as Other Causes of Action (Def Motion p. 21)" Thereby, the Court may also confer jurisdiction over Defendants for purposes of this action.

To demonstrate personal jurisdiction over a defendant under New York state law, the plaintiff must show "either that the defendant was 'present' and 'doing business' in New York within the meaning of [CPLR] § 301, [general jurisdiction], or that the defendant committed acts within the scope of New York's long-arm statute, [CPLR] § 302, [specific jurisdiction]." *Schultz v. Safra Nat. Bank of New York,* 377 Fed. App'x. 101, 102 (2d Cir. 2010) (FAC at 20). [12] Thereby,

---

[12] **Note:** Specifically, Varghese also has his own website and Internet talk radio show as a result of being introduced, and vouched for by the Defendants on H&H Report at: https://www.roguemoney.net/   Other regular guests may be based in New York.

contrary to Def Motion (at p. 14) jurisdiction comports with Defendants Constitutional Due Process in New York and/or in the district of Pennsylvania (42 Pa.C.S.A § 5322). A court has personal jurisdiction where a suit meets the requirements of the state's long- arm statute, and the exercise of jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment. *Licci ex rel Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50.

### A.  SPECIFIC AND GENERAL JURISDICTION

Under § 301, a defendant "is subject to general personal jurisdiction in New York if it is 'doing business' in the state." *Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 95 (2d Cir. 2000).* "Although the 'doing business' test is most often used to find jurisdiction over a corporate defendant, this test can be applied to a nonresident individual." *Patel v. Patel,* 497 F. Supp. 2d 419, 425 (E.D.N.Y. 2007); see also *Moneygram Payment Sys., Inc. v. Consorcio Oriental,* S.A., 05 Civ. 10773 (RMB), 2007 WL 1489806, at *3 (S.D.N.Y. May 21, 2007). A defendant "is 'doing business' and is therefore 'present' in New York and subject to personal jurisdiction with respect to any cause of action, related or unrelated to the New York contacts, if it does business in New York not occasionally or casually, but with a fair measure of permanence and continuity." *Wiwa*, 226 F.3d at 95 (internal quotation marks and bracketing omitted). Therefore for the above stated reasons, the Court may continue to have jurisdiction in the District of New York.

In the event, this Court finds the facts pled in FAC 16-23 are insufficient to retain jurisdiction of this Action—which was removed by the Defendants, and not the Plaintiff, from New York State Supreme Court, to this Court, this case should not be dismissed. It should be transferred to the district of Pennsylvania pursuant to 28 U.S.C. § 1404(a) and/or 28 U.S.C. § 1406(a).

When circumstances have changed since a case was original filed, as occurred here, regarding the New York Corporation Defendants, the Court has discretion to construe transfer and/or rule on a motion to transfer filed by any of the parties. This is in the interest of justice, and

12

for the convenience of the Parties and non-party witnesses. For instance, *see: McCusker v. Hibu PLC et al.* (cv 15-2659 (Wexler, J.). There, the Pennsylvania federal court construed the motion to dismiss as a transfer, and transferred that case from the district of Pennsylvania to New York.[13]

In this case, transfer to the Western District Court of Pennsylvania, in Erie, Pennsylvania is proper as it was an alternative venue the Plaintiff could have filed this case, on November 9, 2015. Hagmann resides in Erie, Pennsylvania, is a citizen of, was personally properly served, and was physically present, acting in concert with Quayle, where the acts and omissions which gave rise to this action also occurred. Transfer is also proper pursuant to 28 U.S.C. §1391(a)(3);  28 U.S.C. § 1391(b)(2); and 28 U.S.C. § 1391(b).

> Subsection (2) of 28 U.S.C. § 1391(b) "does not require that a majority of the events have [sic] occurred in the district where suit is filed, nor does it require that the events in that district predominate." *Rodriguez v. Cal. Highway Patrol*, 89 F. Supp. 2d 1131, 1136 (N.D. Cal. 2000).  Rather, Plaintiff need only show that "significant events or omissions material to [her] claim[s]" occurred in [Pennsylvania]. *Samson Tug & Barge Co. v. Koziol*, 869 F. Supp. 2d 1001 1015 (D. Alaska 2012) (internal citations omitted); see also *Rodriguez*, 89 F. Supp. 2d at 1136 (stating that subsection (2) requires only a showing that "a substantial part of the events giving rise to their claims occurred" in the transferee district). [14]

## B.  SUBJECT MATTER JURISDICTION

This Court, or a Court in the District of Pennsylvania, has subject matter jurisdiction.

> In *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003), for instance, the Eleventh Circuit cautioned "that the district court should only rely on Rule 12(b)(1) '[i]f the facts necessary to sustain jurisdiction do not implicate the merits of plaintiff's cause of action.' *Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1261 (11th Cir. 1997). If a jurisdictional challenge does implicate the merits of the underlying claim then:  [T]he proper course of action for the district court ... is to find that jurisdiction exists and deal

---

[13] See also: Southern District of New York's Honorable J. Paul Oetken opinion and order (15-CV-09404 (JPO)) granting transfer from the district of New York to the district of Florida, in ~~*Viera v. BASF Catalysts LLC et al;.* and *Reyes v. Schuttenberg*~~ (CIVIL NO. 13-00028 JMS-BMK). In *Reyes,* the plaintiff was granted transfer in a defamation suit from the district to Hawaii to the district of Nevada, when the plaintiff's circumstances had changed.

[14] ~~**Note:** In brief, the main reason why the Plaintiff did not file this action in Toronto, Ontario, Canada, the most convenient district for her, is because some witnesses in Defendants odious Circle~~ of Trust, may be barred from entering Canada as some have criminal arrests and police reports.

with the objection as a direct attack on the merits of the plaintiff's case.... Judicial economy is best promoted when the existence of a federal right is directly reached and, where no claim is found to exist, the case is dismissed on the merits. This refusal to treat indirect attacks on the merits as Rule 12(b)(1) motions provides, moreover, a greater level of protection for the plaintiff who in truth is facing a challenge to the validity of [his] claim: the defendant is forced to proceed under Rule 12(b)(6) ... or Rule 56 ... both of which place great restrictions on the district court's discretion.... Id. (quoting *Williamson v. Tucker,* 645 F.2d 404, 415-16 (5th Cir.1981)"

Therefore this case should not be dismissed.

## IV.   SPOLIATION OF EVIDENCE HAS OCCURRED IN THIS ACTION

As the Plaintiff has already notified the Court and Counsel, Defendants have already spoiled and altered evidence, specifically, with regards to, at minimum; (1) the Defendants February 10 Joint Statement, where Defendants' per se libeled the Plaintiff, and damages are presumed as a matter of law (FAC at 72);15 (2) and the H&H Report show summaries of Defendants with their New York based "Financial Insider,""V." See Plaintiff decl at Exhibit 10, 13, 14,15,16. [16]

## I.   PLAINTIFF'S CLAIMS ARE NOT BARRED BY THE FIRST AMENDMENT AND ARE DEFAMATORY

Attorneys typically argue their clients remarks are never defamatory and file motions to dismiss, at this early stage, when no discovery has taken place. Defendants argue the Plaintiff failed to adequately allege defamation, while seriously claiming they were innocent victims acting in self defense *against the Plaintiff.* Defendants' arguments are without merit.

To state a claim for defamation under New York Law, the plaintiff must allege (1) a false statement about the plaintiff; (2) published to a third party without authorization or privilege; (3) through fault amounting to at least negligence on [the] part of the publisher; (4) that either constitutes defamation per se or caused 'special damages.'" *Thai v. Cayre Grp., Ltd.*, 726 F. Supp. 2d 323, 329 (S.D.N.Y. 2010); *see also Peters v. Baldwin Union Free Sch. Dist.* 320 F.3d

---

[15] Quayle and Hagmann, "Setting the Record Straight: Our Joint Response Addressing the Character Assassinations that  are Underway," *hagmannandhagmann.com.* February 10, 2015, located at: http://www.hagmannandhagmann.com/archives/1451. Defendants have since spoiled and tampered with it. *See:* https://www.hagmannreport.com/from-the-wires/setting-the-record-straight-joint-response-addressing-the-character-assassinations-underway/. *See:* Standard Litigation hold notice or document preservation.
[16] *See:* New York's single publication rule ..." The New York Court of appeals has indicated that altering the allegedly defamatory content may trigger republication, and a lower court has held that moving web content to a different web address triggered republication. See *Firth v. State, 306 A.D.2d 666* (N.Y. App. Div. 2003).

164, 169 (2d Cir. 2003); *Caruso v. City of New York*, 973 F. Supp. 2d 430, 459 (S.D.N.Y. 2013).

The Plaintiff has alleged the Defendants intentionally and with actual malice, told false, and heinous statements regarding the Plaintiff which damaged her personally and professional, without prior authorization, resulting in both actual monetary damage ("the loss of something having economic or pecuniary value") and an injury that "impugns the basic integrity or creditworthiness of a business." *Celle v. Filipino Reporter Enterprises Inc.*, 209 F.3d 163, 179-180 (2d Cir. 2000).

The Plaintiff has adequately pled all the elements of defamation and defamation *per se,* libel *per* and slander *per se* (FAC at 68-188). Here, in this case, a plain reading of Defendants statement say as such. The statements are what they are. Plaintiff's allegations constitute a prima facie case for defamation and are not "non-actionable hyperbole and name-calling," or a "war of words."[17]

Society has a pervasive and strong interest in preventing and redressing attacks upon reputation—defamation, and false allegations. This long standing interest has escalated into a new found urgency as a result of the rise of the Internet, social media, and alternative media. Here, contrary to Def Motion, none of the Defendants statements can be construed as opinion either. Moreover the Defendants' trusting audience literally believe whatever they say, no matter how preposterous (FAC at 113, 114). The statements can be proven false.

In Def Motion, they cast disingenuous aspersions and omit when they cite from the pleadings,

---

[17] *See: Robertson v. Dowbenko*, 443 Fed. Appx. 659, 661 (2d Cir. 2011) (defamation per se); *Zherka v. Amicone*, 634 F.3d 642, 645 & n.6 (2d Cir. 2011) (slander per se); *Cain v. Esthetique,* No. 13 CIV. 7834 (JCF), 2016 WL 1599490, at *13-14 (S.D.N.Y. Apr. 20, 2016) (slander per se); *Enigma Software Grp. USA, LLC v. Bleeping Computer LLC,* No. 16 CIV. 57 (PAE), 2016 WL 3773394, at *10-11 (S.D.N.Y. July 8, 2016) (libel per se); *O'Diah v. Yogo Oasis*, 954 F. Supp. 2d 261, 275 (S.D.N.Y. 2013) (slander per se); *Carotek, Inc. v. Kobayashi Ventures, LLC,* 875 F. Supp. 2d 313, 344 (S.D.N.Y. 2012) (libel per se); *Chandok v. Klessig*, 632 F.3d 803, 811 (2d Cir. 2011) ; and *Hoyle v. Dimond*, No. 08-CV-347C, 2013 U.S. Dist. LEXIS 39857, at *15 (W.D.N.Y. Mar. 19, 2013).

or Plaintiff's correction articles, to distort context.[18] For instance, Defendants nefariously

insinuated the Plaintiff was "conveniently" hiding something when she herself did not cite from her

correction articles, in their "war of words" meritless defense. There was no reason to include those

statements. They are true, thereby protected speech, and were not heinous, as opposed to

Defendants statements, which are false, heinous, and not protected speech. A "war of words"

cannot exist between Defendants, who reach millions of people worldwide in the alternative media,

in print and on Internet talk radio shows, versus Plaintiff's personal website she rarely updates with

little traffic (FAC at 1, 42)(Def Motion p. 18). The Plaintiff's website is passive. The Defendants'

websites are not passive.

Defendants argue that Plaintiff's claims infringe on Defendants freedoms of speech relying

mainly on case law about context (Def Motion at 17). The context here is Defendants should not

make false scary allegations against government agencies, or any individual, and expect people to

look the other way. The defamatory statements are what they are. They are not susceptible to two

meanings; one defamatory and one innocent. They are defamatory. By every measurable standard

the Defendants have *per se* defamed her. There are no second or third interpretations.

In addition Defendants ignore the extensive jurisprudence on the exceptions to these principals,

including *United States v. Rowlee II*, 899 F.2d 1275, 1278 (2d Cir. 1990) ("It rarely has been

---

[18] Defendants failed to provide the Court with all of Plaintiff's corrective reporting which shows
the full context for "the average reader." True context is not in Def Motion. *See:* "Poison Fruits:
"Christian" alternative media stars Steve Quayle and Doug Hagmann's SWAT allegation also
fake," *marinkapeschmann.com.* February 9, 2015. Located at:
http://marinkapeschmann.com/poison-fruits-christian-alternative-media-stars-steve-qualye-and-
doug-hagmanns-swat-allegation-also-fake/ (FAC at 67, 80) *Also see:* "Trust me, I'm lying:
"Christian" truth tellers Quayle and Hagmann strike back with veiled threats, character
assassinations, provide nothing to refute my NSA and SWAT corrective reporting,"
*marinkapeschmann.com,* February 24, 2015. Located at: http://marinkapeschmann.com/trust-me-
im-lying-christian-truth-tellers-qualye-and-hagmann-strike-back-with-veiled-threats-character-
assassinations-provide-nothing-to-refute-my-nsa-and-swat-correctiv/ (FAC at 197-201)

suggested that the constitutional freedom for speech . . . extends its immunity to speech or writing used as an integral part of conduct in violation of a valid ... statute"). [19]  Likewise in New York, "[t]he statement need not name the person explicitly if there is enough identifying information that those who know the person will recognize the statement as being about him or her," for it to be defamatory. (FAC at 133-137)[20]

In *Planned Parenthood v. American Coalition of Life Activists,* 290 F.3d 1058, 1079-82 (9th Cir. 2002) (the "Nuremburg Files" case), the Ninth Circuit held, in an en banc decision, that threats and intimidation may be actionable without violating the First Amendment, and that there is no freedom of association for the purpose of making such threats and intimidation (FAC at 87, 88, 89, 90, 92, 94, 97-99).[21]  Contrary to Def Motion, for purposes of pleading, the assertion of Plaintiffs' due process rights are not precluded by any bona fide First Amendment claim.

The Ninth Circuit held in *Obsidian Fin. Grp., LLC v. Cox, 812 F. Supp. 2d 1220, 1232–34 (D. Or. 2011),*[22] that a December 25, 2010 blog post on bankruptcycorruption.com made "fairly specific allegations [that] a reasonable reader could understand . . . to imply a provable fact assertion.[23]  Defendants made " specific allegations [that] a reasonable reader could understand," as

---

[19] The Standards for First Amendment protection are higher in a criminal case, as opposed to a civil matter. This is a civil action. Defamatory speech is grounds for civil liability. It does not chill free speech, rather, if anything, it would "chill," only the specific behavior of the Defendants.

[20] Defendants defame the Plaintiff, and her book, on the Death of Vince Foster, because the Plaintiff does not peddle discredited murder conspiracies, like the Defendants do.

[21] To further guard against a "chilling effect," the Court has the power to construe statutes narrowly to avoid unnecessary constitutional conflict, to set guidelines for proof and evidence and to issue jury instructions to mitigate any concerns over the unnecessary encroachment on free speech or association. See, e.g., *Humanitarian Law Project v. United States Dept. of Justice*, 352 F.3d 382 (statute construed to have an element of *mens rea* to preserve constitutionality). As this case is at the pleading stage, this need not be addressed, at this time.

[22] Ninth Circuit, Court of Appeals for the District of Oregon, No. 12-35238,  D.C. No. 3:11-cv-00057- HZ and No. 12-35319, D.C. No. 3:11-cv-00057- HZ

[23] The district judge therefore allowed that single defamation claim to proceed to a jury trial.  The jury found in favor of Padrick and Obsidian, awarding the former $1.5 million and the latter $1 million in compensatory damages."

Defendants imputed to the Plaintiff heinous and defamatory statements with actual malice over twenty five (25) times, meeting the criteria in all four (4) categories of defamation *per se*, be it libel *per se*, or slander *per se* (FAC at 138-144). *See: Obsidian Fin. Grp., LLC v. Cox, No. 3:11-cv-00057-HZ, 2012 WL 1065484, at *7 (D. Or. Mar. 27, 2012).*

The Defendants are public figures. Their tortious conduct against the Plaintiff caused her severe and presumed damages as a matter of law. It did not involve a matter of public concern, as opposed to the Plaintiff's corrective reporting (FAC at 64). The Plaintiff, arguably is not a public figure, did not inject herself in this incident (FAC at 24-38), and the Defendants were not acting in self defense in a meritless argument. They have no defense. [24]

Furthermore, even if any of the Defendants claims, and distortions of the pleadings, and corrective reporting were true, and they are not, they would be irrelevant.

For instance, in Defendants preliminary statement, they falsely wrote this: "Plaintiff essentially claims that her reputation was damaged because she quoted one of the defendants and his claims were false (despite the fact that information was publicly available at the time she quoted it and it was the Plaintiff who decided to include it in her article (Def Motion p. 1, p. 23—false, taken out of context, omit, did not admit)) Holding sources liable for providing false information to reporters may be a laudable goal if it were actionable, even if it were, it would quickly clog the courts."

Defendants have just told this Court who they are, and why Def Motion needs to be denied. Naturally, Defendants are essentially arguing that journalists, everyone, and anyone, (including the Plaintiff), should look the other way, be complicit, and thereby culpable to their wrongdoing. Defendants demand they should be permitted to defame anyone with impunity, if they dare to question them. Their arguments fail, but are not surprising.

Most importantly, Defendants' arguments fail as a matter of law. Plaintiff is morally and

---

[24] See: *Gertz v. Robert Welch, Inc.* (1974).

legally obligated to correct false allegations. *See Alharbi v. Beck et al*, U.S. District Court, District of Massachusetts, No. 14-11550 (settled), and *Eramo v. Rolling Stone LLC et al* No. 3:15-cv-00023 U.S. District Court, District of Virginia (jury found defendants guilty of defamation with actual malice.). Indeed. The mainstream and alternative media must conduct themselves lawfully. In both cases, defendants motion to dismiss where denied, and the plaintiff's pleadings prevailed.[25]

Here, it should be the same. Defendants' arguments are upside-down. It is defamation lawsuits, a.k.a. damaging falsehoods published on the Internet, which are clogging up the Courts. This case, and others like it, should serve as deterrents, *to relieve court dockets*. People cannot tell the difference between fact or fiction anymore on the Internet, and are getting seriously hurt, as evidenced during the United States Presidential Election of 2016.

## V.  THE PLAINTIFF PERMISSIBLY AND ADEQUATELY PLED HER EIGHT CAUSES OF ACTION

Defendants offer several arguments in support of their contention that the Plaintiff fails to state a claim. Plaintiff, in general, and specifically, has addressed this issue in her FAC supported by case law, and does not desire to burden the Court with a repetition of those arguments.

Therefore, she is the incorporating those arguments herein, and summarizing the applicable principals with additional case law. For the reasons set forth therein, none of Defendants arguments prevail, and the Plaintiff has adequately pled her causes of action.

### A.  FRAUDULENT MISREPRESENTATION (COUNT 2)

The Def Motion claimed the Plaintiff "impermissibly attempt to cast several causes of action other than defamation based on reputational damages." Def Motion is wrong (FAC at 189-195). In Def Motion, Defendants conduct themselves as they do in the alternative media, by filing improper declarations that were not "based on their knowledge." In fact, Defendant Hagmann publicly brags,

---

[25] T. Rees Shapiro, "Jury finds reporter, Rolling Stone responsible for defaming U-Va. dean with gang rape story," *Washington Post*, November 4, 2016.

like a badge of honor, at his skills to deceive, like when he published this verbatim:

> As an investigator and in particular, when I was working as an operational asset for the FBI in the 1990s, I was particularly good at securing covert video like that captured by the Center for Medical Progress of Planned Parenthood. In fact, I was used because I could convincingly present myself to the subjects of investigation as someone I was not, and secure the needed evidence that served as the basis for immediate raids, arrests and sometimes later, as courtroom exhibits for a jury to see.[26]

FAC also describes Defendants' failure to follow through with their representations (FAC at 218-220).  The Plaintiff has satisfied the elements. *See* also: *Newman v. Family Mgmt. Corp.,* 530 Fed. Appx. 21, 24 (2d Cir. 2013): and *Innovative Biodefense, Inc. v. VSP Technologies, Inc.*, No. 12 Civ. 3710 (ER), 2016 WL 1301179, at *17 (S.D.N.Y. March 31, 2016).

**B.    INFLICTION OF EMOTIONAL DISTRESS (COUNT 3)**

The Def Motion claimed the Plaintiff "impermissibly attempt to cast several causes of action other than defamation based on reputational damages." Def Motion is wrong (FAC at 133, 139 and 196-213). The fact the Plaintiff had to file this lawsuit tells the tale.

Defendants, purported truth tellers, should have retracted and apologized a long time ago to have prevented this lawsuit. *See: Dotel v. Walmart Stores, Inc.*, 627 Fed. Appx. 42, 43-44 (2d Cir. 2016); *Margrabe v. Sexter & Warmflash, P.C.*, 353 Fed. Appx. 547, 550 (2d Cir. N.Y. 2009); and *Gorman v. Covidien,* LLC, 146 F. Supp. 3d 509, 535 (S.D.N.Y. 2015).

> Further, the "Supreme Court erred in dismissing the complaint insofar as it alleges a cause of action for intentional infliction of emotional distress. . . . because [the] plaintiff sufficiently set forth concrete factual allegations of a continuing course of conduct that terminated within one year of plaintiff's commencing this action. *Drury v. Tucker,* 210 A.D.2d 891, 892 (4th Dep't 1994). A defendant's actions "must be evaluated in light of his entire alleged course of conduct. . . . While certain of [the] plaintiffs' allegations would not, by themselves, necessarily rise to the level of extremity and outrageousness to support an IIED claim, his total alleged course of conduct does." *Mejia v. City of New York,* 119 F. Supp. 2d 232, 285 (E.D.N.Y. 2000).

Def Motion is a head-spinner. Defendants cannot keep their "facts" straight. For instance,

---

[26] *See* Plaintiff Decl at Exhibit17.  Hagmann, "Planned Parenthood, unequal justice and dark forces," *Canada Free Press*, August 3, 2015, Located at: http://canadafreepress.com/article/74228

Defendants also altered the name of the publication the Plaintiff and Hagmann wrote for, who

Hagmann still writes for, from "Canada Free Press," to "Canadian Free Press" (Def Motion p. 23-

24).  One minute Defendants claim the Plaintiff reported their NSA targeting story on her own

which was already public (Def Motion at p. 1), but by the end Defendants blamed it on Canada

Free Press Judi McLeod (Def Motion p. 23-25).

### C.   EQUITABLE ESTOPPELS (COUNT 4)

Plaintiff permissibly casts several causes of action other than defamation based on

reputational damages (FAC 29-41, 52, 55-62, 214-223).

> Under the doctrine of equitable estoppels, when innocent parties suffer from the acts of a
> third person, the party that enabled the third person must bear the loss. *Greenberg,
> Trager & Herbst, LLP v. HSBC Bank USA*, 17 N.Y.3d 565, 581 (2011).  Also see: *Horn
> v. Politopoulos*, 628 Fed. Appx. 33, 34-35 (2d Cir. 2015); and *De Sole v. Knoedler
> Gallery, LLC*, 137 F. Supp. 3d 387, 422-23 n.28 (S.D.N.Y. 2015).

The Plaintiff's pleading have been sufficiently pled.

### D.   INJURIOUS FALSEHOODS (COUNT 5)

Defendants argue that Plaintiff failed to adequately allege the cause of injurious falsehoods.

Def Motion again is mistaken (FAC at 85-86, 92-94, 224-226).

As aforementioned, the Plaintiff has more than adequately pled the Defendants motivation

to cause the Plaintiff injury. Moreover, none of Defendants statements concerning the Plaintiff can

be construed as an expression of opinion. Therefore they are not "constitutionally protected" and

serve as the basis for plaintiff's injurious falsehood claim." *Vitro S.A.B. de C.V. v. Aurelius Capital

Mgt., L.P.*, 99 A.D.3d 564, 565 (1st Dep't 2012).

> The tort of trade libel or injurious falsehood requires: the knowing publication of false and
> derogatory facts about the plaintiff's business of a kind calculated to prevent others from
> dealing with the plaintiff, to its demonstrable detriment. *See: Murphy-Higgs v. Yum Yum
> Tree, Inc.*, 112 Fed. Appx. 796, 797 (2d Cir. 2004) (element of special damages for injurious
> falsehood); and *Cain v. Esthetique*, No. 13 CIV. 7834 (JCF), 2016 WL 1599490, at *13-14
> (S.D.N.Y. Apr. 20, 2016); *Nielsen Co. (U.S.), LLC v. Success Sys., Inc.*, 112 F. Supp. 3d 83,

116 (S.D.N.Y. 2015).   In pleading special damages [in connection with an injurious falsehood claim], actual losses must be identified and causally related to the alleged tortious act." *L.W.C. Agency, Inc. v. St. Paul Fire & Marine Ins. Co.,* 125 A.D.2d 371, 373 (2d Dep't 1986).

The cause of [injurious falsehood] differs from defamation in that a defamatory statement impugns the basic integrity or creditworthiness of a business while an injurious falsehood is confined to denigrating the quality of the plaintiff's business's goods or services." *Korova Milk Bar of White Plains, Inc.* v. Pre Props., LLC, No. 11 Civ. 3327 (ER), 2013 U.S. Dist. LEXIS 14937, at \*54 (S.D.N.Y. Feb. 1, 2013).

Defendants' statements were not only defamatory, but injurious falsehoods as Defendants denigrated and demeaned the Plaintiff personally and professionally. The pleadings are sufficient.

**E.    DEFENDANTS' CIVIL CONSPIRACY AND AIDING AND ABETTING (COUNT 6 &7)**

The Plaintiff permissibly and adequately pled all the elements of conspiracy and aiding and abetting (FAC at 68, 74, 100-102, 110, 117, 144, 228-235, 237-242, and 244).

As *Abacus Fed. Sav. Bank v. Lim,* 75 A.D.3d 472, 475 (1st Dep't 2010) reminds,  (In New York "[a] claim for civil conspiracy 'is merely the string whereby the plaintiff seeks to tie together those who, acting in concert, may be held responsible in damages for any overt act or acts.'").

Defendants and individuals in their odious Circle of Trust have provided the string by which to satisfy these causes of action. *See also*: *Bigio v. Coca-Cola Co.*, 675 F.3d 163, 176 (2d Cir. 2012); and *De Sole v. Knoedler Gallery, LLC,* 139 F. Supp. 3d 618, 659 (S.D.N.Y. 2015).

Fairly read, the pleadings allege that the Defendants, knowingly collaborated, assisted one another, and engaged in, and used other purported truth telling individuals, in their odious Circle of Trust; individuals of whom the Plaintiff does not personally know, and has never spoken to, as false witnesses against the Plaintiff and others, while attempting to manipulate U.S. legal systems, and silence journalists from doing what journalists do—expose corruption and correct false allegations, thereby hampering governmental efforts, engaging in propaganda  publishing and disseminating false information, and otherwise who provide material support in furtherance of the conspiracy (FAC at 97- 98, 107, 114, 116, and 129).

The Defendants attack on the Plaintiff, and the deceitful information they disseminate on the worldwide Internet was not an isolated incident, but rather the coordinated effort of a organization, who has engaged in this type of unlawful conduct for years, before and after, the Plaintiff filed this lawsuit, by utilizing an extensive network of support and aid, in the alternative media by various individuals, including the Defendants and Does 1-20 herein.

The Defendants, who conspired with each other, knew, or should have known, their actions in furtherance of a conspiracy to profit off innocent readers and listeners, by exploiting and deceiving the Plaintiff, by making false allegations against the United States, United States governmental agencies, and its citizens, would result in the damage against the Plaintiff and others.

The Plaintiff still "may plead the existence of a conspiracy in order to connect the actions of [an] individual defendant[] [to] an actionable, underlying tort." *Briarpatch Ltd., L.P. v. Pate*, 81 F. Supp. 2d 509, 516 (S.D.N.Y. 2000); *see also Alexander & Alexander of New York, Inc. v. Fritzen*, 68 N.Y.2d 968, 969 (1986). The First Amendment lends no protection to participation in a conspiracy, even if such participation is through speech. *See: United States v. Rahman*, 1994 U.S. Dist. LEXIS 10151, S3 93 Cr. 181, 1994 WL 388927, at *1-2 (S.D.N.Y. July 22, 1994) (internal citation omitted); and *NAACP v. Claiborne Hardware Co.,* 458 U.S. 866 (1982).[11]

Defendants continually speak out of both sides of their mouths. It is tedious and revealing. Defendants had  falsely accused her of "betrayal" (FAC at 72, 73, 74), as if she had been a part of their odious Circle of Trust, then they blame her, then others. It is hard to keep up.

By joining a conspiracy, knowing that acts in furtherance of the conspiracy have taken place or will take place within the United States, the Defendants assumes liability, for both jurisdictional and substantive purposes. *See: Allstate Life Ins. Co. v. Linter Grp. Ltd.,* 782 F. Supp. 215, 220-222 & n.6 (S.D.N.Y. 1992); *Best Cellars Inc. v. Grape Finds at Dupont, Inc.,* 90 F. Supp.2d 431, 446 (S.D.N.Y. 2000).[27] A conspiracy can rarely be

---

[27] The Second Circuit has held that claims of conspiracy in an anti-trust prosecution need not be pled by way of evidentiary allegations. The complaint merely needs to avoid the extremes of 'bare bones' or 'implausibility.' *Twombly,* 2005 U.S. App. LEXIS at *27-34.

proved by direct evidence and usually is established by circumstantial evidence and the totality of conduct of the parties and the reasonable inferences which can be drawn therefrom; mere speculation and conjecture are not enough. *Singer v. Bell*, 585 F. Supp. 300, 302-3 (S.D.N.Y. 1984) 585 F. Supp. at 303-4.[28]

The FAC identifies with sufficient particularity the "who," the "what," the "how," and the "when," and the "where" of Defendants' tortious conduct (FAC at 24, 30- 38, 46-64, 68, 101, 111).

The Plaintiff's pleading have been sufficiently pled. *See also*: *Best Cellars Inc. v. Grape Finds at Dupont, Inc.*, 90 F. Supp.2d 431, 446 (S.D.N.Y. 2000), and *Lehigh Valley Industries, Inc. v. Lehigh Colonial Corp*, 527 F.2d 87, 93 (2d Cir. 1975). In addition, under New York law, "those who aid or abet or conspire in tortuous conduct are jointly and severally liable with other participants in the tortuous conduct, regardless of the degree of their participation or culpability in the overall scheme." *Lumbard v. Maglia, Inc.*, 621 F. Supp. 1529 (S.D.N.Y. 1985).

In keeping with the foregoing principles, it is reasonable to assume that more Defendants will be named. In addition, the Plaintiff has pled a more than sufficient causal connection between Defendants (FAC at 74). The FAC alleges that Defendants aided and abetting one another in their self admitted conspiracy—their odious Circle of Trust, and thereby provided material support to its worldwide enterprise in the alternative media, as described above. Contrary to whatever the Defendants say—and they will say anything.[29] Plaintiff has filed this action within the one-year statute of limitations. None of her causes of action are time barred in this case.

## E. UNJUST ENRICHMENT (COUNT 8)

Defendants also contend that the Plaintiff has failed to properly plead unjust enrichment. Defendants are wrong. Defendants began exploiting the Plaintiff in 2013 to unjustly enrich themselves, and other individuals in their odious Circle of Trust (FAC at 24).

---

[28] *See:* Michael Ervena aka Kirk Michael McLeod, "Hagmann/Quayle: Revenge of the Money Changers," revelationnow.net, February 16, 2015, located at: http://revelationnow.net/2015/02/16/hagmannquayle-revenge-of-the-money-changers/ .
[29] **Note:** Listen to H&H Report

Plaintiff has adequately pled the elements of Unjust Enrichment (FAC at 24, 40, 67-68, 238-239, 243-246) of which (1) Defendants benefitted; (2) at the Plaintiff's expense; and (3) equity and good conscience require restitution. See: *Marathon Structured Finance Fund, LP v. Paramount Pictures Corp.*, 622 Fed. Appx. 85, 86 (2d Cir. 2015); *Goldberg v. Gray,* No. 5:15-CV-0538 (DNH/TWD), 2016 WL 4099189, at *12-13 (N.D.N.Y. Aug. 2, 2016); and *Digizip.com, Inc. v. Verizon Services Corp.*, 139 F. Supp. 3d 670, 682 (S.D.N.Y. 2015). The Plaintiff's pleading adequately shows the count of unjust enrichment. *See also* Plaintiff decl at Exhibit 3.

## VI.   DEFENDANTS MOTION IS UNTIMELY AND SHOULD BE DENIED

It is noteworthy to include in Opposition how untimely motions to dismiss are sometimes treated as a motion for judgment on the pleadings. The Defendants were originally served in November 9, 2015 and filed Def Motion on October 30, 2016. *Aldabe v. Aldabe*, 616 F.2d 1089, 1093 (9th Cir. 1980).

> "A judgment on the pleadings is properly granted when, taking all the allegations in the pleadings as true, [a] party is entitled to judgment as a matter of law." *Lyon v. Chase Bank USA*, N.A., 656 F.3d 877, 883 (9th Cir. 2011) (quoting *Dunlap v. Credit Prot.* Ass'n, L.P., 419 F.3d 1011, 1012 n.1 (9th Cir. 2005); *Owens v. Kaiser Found.* Health Plan, Inc., 244 F.3d 19 708, 713 (9th Cir. 2001)).

If the Court elects to convert Defendants' untimely motion to dismiss into a judgment on the pleadings, Def Motion should be denied on the merits.

## VII.   DEFENDANTS FAIL TO MEET THEIR BURDEN FOR DISMISSAL. THE PLAINTIFF SHOULD BE AFFORDED THE RIGHT TO FURTHER DEVELOP HER CLAIMS IN DISCOVERY

Importantly, Defendants did not claim to be "Christian" truth tellers, or "watchmen" in their Def Motion, or Declarations, as they publicly do whenever it suits them, because religious arguments do not apply in this case.  This is a straightforward case.

## CONCLUSION

The Plaintiff's pleadings have not only met, but, in most cases, exceeded the pleadings

threshold, and the Plaintiff has established standing. In the event the Court determines it lacks

jurisdiction in New York as circumstances have changed, this action may be transferred to be heard

in the alternative forum of Pennsylvania, and/or the Plaintiff will file a motion to transfer. The

Plaintiff has, accordingly, met her pleading burden particularly as no discovery has occurred.

     Thus, it would be premature at this stage of the proceeding to dismiss any causes of action

at this time. There can be little dispute that the Plaintiff is entitled to recover damages as a matter of

law in the event she prevails against the Defendants.

     For the reasons set forth herein, the Defendants' Motion should be denied. If the Court

finds Plaintiffs' pleading deficient in any way, the Plaintiff should be given leave to replead, and

requests an opportunity to remedy those issues, if any, by additional amendments to its pleadings

and/or limited discovery on those issues to more fully present factual evidence.

     Plaintiff declares under penalty of perjury under the laws of the United States, and pursuant

to the laws of the State of New York, that the foregoing is true and correct.

Dated: December 29, 2016

Respectfully submitted by:

Marinka Peschmann, Plaintiff *pro se*
P.O. Box 45094 Port Credit
Mississauga, Ontario, L5G 4S7, Canada
Telephone: 646-929-4132, Fax: 917-732-7754
Email: marinkapm@aol.com

cc: Counsel of record via ECF
Bruce S. Rosen
Jane W. Arnone

## CERTIFICATION OF SERVICE

I hereby certify that on December 29, 2016, copies of the foregoing Opposition to Defendants

Motion to Dismiss were sent overnight from Canada to the *Pro Se* Intake Unit, at Southern District

Court of New York, located at 500 Pearl Street, Room 200, New York, New York 10007, to be

served, via electronic mail, to the following counsel parties of record:


Representing Defendants Stephen Quayle and Douglas Hagmann

Bruce Steven Rosen
McCusker, Anselmi, Rosen, Carvelli, P.C.
805 Third Avenue, 12th Floor
New York, NY 10022  Email: brosen@marc-law.com

 Representing Defendants BLOGTALKRADIO, Inc. and CINCHCAST, Inc.

Jane W. Arnone (ja0450)
14 Pemberwick Road
Greenwich, CT 06831
Telephone: 203-550-6108
Email: janeweisbecker@gmail.com

Marinka Peschmann, Plaintiff *pro se,*
P.O. Box 45094 Port Credit
Mississauga, Ontario, L5G 4S7, Canada
Telephone: 646-929-4132
Fax: 917-732-7754
Email: marinkapm@aol.com

Press here to seal.

ORIGIN ID:YTOB          (646) 929-4132
M. PESCHMANN
M. PESCHMANN
P.O. BOX 45094 PORT CREDIT

MISSISSAUGA, ON L5G4S7
CANADA CA

SHIP DATE: 29DEC16
ACTWGT: 1.50 LB
CAD: 110205801/INCA3790

BILL SENDER

TO **SOUTHERN DISTRICT OF NEW YORK**
**PRO SE INTAKE UNIT**
**500 PEARL STREET ROOM 200**

**NEW YORK NY 10007**
(212) 805-0175          REF:
INV:
PO:                                DEPT:

**FedEx**
Express

**E**

TRK# **7780 6885 1484**
0430

10:30A
**INTL PRIORITY**

**NM PCTA**

NY-US  **EWR**

10007

12/29/2016



524817 IND 12/30 S13G1/D42F/55OC

**NM PCTA**

NY-US
**EWR**

**10007**
CLR

0A   INTL PRIORITY CLR

**FedEx**
TRK# **7780 6885 1484**
0430

FedEx Ship Manager - Print Your Label(s)

Extremely Urgent
Urgent

A. Pschmann
P.O. Box 45094 Port Credit
Mississauga, Ontario, L5G 4S7
Canada

Pro Se Intake Unit
United States District Court
Southern District of New York
500 Pearl Street, Room 200
New York, New York 10007
#212-805-0175

U.S.A.

#1 of