**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**
_____

|  |  |  |
|---|---|---|
| | : | |
| MARINKA PESCHMANN, | : | |
| | : | CIVIL ACTION NO.: |
| Plaintiff, | : | **1:17-CV-00259-CB-SPB** |
| | : | |
| -Against- | : | Plaintiff's Memorandum of Law |
| | : | in Opposition to Defendant Douglas |
| STEPHEN QUAYLE, DOUGLAS HAGMANN, | : | Hagmann's Motion to Dismiss the |
| DOES 1-20, | : | Action |
| Defendants. | : | |

_____ :


### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT DOUGLAS HAGMANN'S MOTION TO DISMISS

Plaintiff *pro se*, Marinka Peschmann ("Plaintiff"), hereby respectfully submits this memorandum of law in opposition to the motion of Defendant Douglas Hagmann ("Hagmann") to dismiss the First Amended Complaint ("FAC") pursuant to Fed. R. Civ. P. 12(b)(6) in accordance to Dkt. No. 86-87.

In addition, the Plaintiff respectfully requests, in the event, she improperly submitted exhibits for this Court to order her to remedy and re-file any deficiencies.

Respectfully submitted,

 /s/ Marinka Peschmann
Marinka Peschmann
PO Box 45094 Port Credit
Mississauga, Ontario  L5G 4S7 Canada
Email: marinkapm@aol.com,
Telephone: 646-929-4132, 905-891-0580
Fax: 917-732-7754
*Plaintiff pro se*

# TABLE OF CONTENTS

TABLE OF CONTENTS.....................................................................…………I

TABLE OF AUTHORITIES.................................................................................II

PRELIMINARY STATEMENT.................................................................................1

LEGAL ARGUMENT ............................................................................................3

I.      The Complaint Should Not Be Dismissed For Failure To State a Claim When
        Relief Can Be Granted.  A Motion to Dismiss Under Rule 12(B)(6) Merely
        Tests The Legal Feasibility of the Complaint. ...................................................4

II.     Jurisdiction ……………………………………………………………….………........5

III.    The Plaintiff Permissibly and Adequately Pleaded Her Eight Causes of Action...............7

   A.  Plaintiff's Claims Are Not Barred By the First Amendment (Count 1) …………………...7

            Plaintiff Properly Raises 42 Pa. C.S. §8343 (b) Before This Court ……….…….11
            Contrary to Def Motion Actual Malice Is Already Verifiable ………….………..12
            Plaintiff is Not An All Purpose Public Figure …………………………………..15

   B.  Fraudulent Misrepresentation (Count 2)…………………………….……..…….………..17
   C.  Intentional Infliction of Emotional Distress Claim (Count 3) ……………………………18
   D.  Equitable Estoppel (Count 4) ……………………………………………………………19
   E.  Injurious Falsehoods (Count 5) ……………………………………………..………..19
   F.  Civil Conspiracy (Defendants' self-admitted "Circle of Trust") & Aiding and Abetting
       (Count 6 & 7)……………………………………………………………………...19
   G.  Unjust Enrichment (Count 8) ……………………………………………………….23
   H.  Count of False Light is Applicable in this Action ……………………………………...23

VII.    Plaintiff Sought and Seeks Permanet Injunctive Relief. Defendants and Does 1-20 are
        Sincere Sounding, Malicious, and Dangerous Liars who Reach Millions of People ……...24

Conclusion.........................................................................................................25

Certification pursuant to Honorable Bissoon's Motions Practice ………………………………26

Certificate of Service...........................................................................................27

## <u>TABLE OF AUTHORITIES</u>

*Abacus Fed. Sav. Bank v. Lim*, 75 A.D.3d 472, 475 (1st Dep't 2010)..........................................21

*Acme Markets, Inc. v. Dunkirk Ice Cream Co.*, Feb. Term 2000, No. 1559, 2000 Phila. Ct. Com.  Pl. LEXIS 49 (C.C.P. Phila. Sept. 18, 2000) (Herron, J.) ..................................21

*Agriss v. Roadway Express. Inc.,* 483 A.2d 456 (Pa. Super. Ct. 1984) ..............................12

*Alharbi v. Beck et al,* U.S. District Court, District of Massachusetts, No. 14-11550 ............... 9

*Allstate Life Ins. Co. v. Linter Grp. Ltd.,* 782 F. Supp. 215, 220-222 & n.6 (SDNY 1992) ....22

*Altoona Clay Products, Inc. v. Dun Bradstreet, Inc.,* 367 F.2d 625 (3d Cir. 1966)............11, 12

*American Future Systems, sInc. v. Better Business Bureau,* 923 A.2d 389 (Pa. 2007)…………………………………………………………………………………...8, 14, 15, 16

*Anagnost et al v The Mortgage Specialists, Inc. and Gill.*  No. 216-2016-cv-277 (2017) ……….9

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) …………………………………………………….....3

*Atkinson v. Pa. Shipbuilding Co*., 473 F.3d 506, 514 (3d Cir. 2007) …………………………….5

*Babiarz v. Bell Atlantic-Pennsylvania. Inc.* Phila. Ct. Com. Pl. LEXIS 94 (2001) ……………..21

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 512, 554, 555 (2007) ………………………3, 4, 20, 21

*Bell v. Mayyiew State Hosp.,* 853 A.2d 1058, 1061 (Pa. Super. Ct. 2005) ……………………9

*Bilt-Rite Contractors, Inc. v. The Architectural Studio,* 866 A.2d 270, 277 (Pa. 2005) …………7

*Bockman v. First American Marketing Corp.*, 459 Fed.Appx. 157, 160 (3d Cir. 2012)………….5

*Brinich v. Jencka,* 757 A.2d 388, 397 (Pa. Super. Ct. 2000) …………………………...…10

*Burger King Corp. v. Rudzewicz.* No. 83-2097 (1985)., 471 U.S. at 475 ……………………5, 6

*Burton v. Bojazi,* April Term 2005, No. 03551, 2005 Phila. Ct. Com. Pl. LEXIS 284, 75 Pa. D. & C. 4th 403 (C.C.P. Phila. June 17, 2005) (Abramson, J.)  …………………………20

*Cain v. Esthetique*, No. 13 CIV. 7834 (JCF), 2016 WL 1599490, at *13-14 (S.D.N.Y. Apr. 20, 2016)…. …………………………………………………………………...…19

*Castellani v. Scranton Times* (2015) …………………………………………………………13

*Castro v. United States,* 540 U.S.  375, 381-82, 124 S. Ct. 786, 791-92, 157 L. Ed. 2d 778 (2003) ………………………………………………………………………………………..7

*Celle v. Filipino Reporter Enterprises Inc.*, 209 F.3d 163, 179-180 (2d Cir. 2000) ……….……9

*Clark v. Caln Twp*., No. 09-1551, 1990 WL 99123, at *5 (E.D. Pa. July 11, 1990) …………..18

*Clemente v. Espinosa,* 749 F. Supp. 672, 677  (E.D. Pa. 1990) (citing Restatement (Second) of Torts § 570 (1977)) …………………………………………………………………10

*Pappert v. TAP Pharm. Prods., Inc*., 885 A.2d 1127 (Pa. Commw. 2005) …………………...23

*Commonwealth ex rel. Pappert v. TAP Pharmaceutical Products, Inc.,* 868 A.2d 624, 628 (Pa. Cmwlth. 2005) (en banc) 868 A.2d at 629 ………….…………………….……..…6

*Conley v. Gibson*, 355 U.S. 41 (1957) .................................................................................3

*Constantino  v. Univ. of Pittsburgh,* 766 A.2d 1265, 1270 (Pa. Super. Ct. 2001) …………..10

*Devon Robotics v. Deviedma,* No. 09-cv-3552 *,* 2009 U.S. Dist. LEXIS 112077, at *24…......10

*Dimare v. Metlife Insurance Co.*, 369 Fed. App'x 324, at *329 (3d Cir. 2010) ………………...20

*Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003) …………………………………………7

*Elia v. Erie Ins. Exch.,* 634 A.2d 657, 660 (Pa. Super. Ct. 1993) ……………………….…...8

*Eramo v. Rolling Stone LLC et al* No. 3:15-cv-00023 U.S. District of Virginia ……………..…9

*Evans v. Phila. Transp. Co.,* 418 Pa. 567, 574, 212 A.2d 440, 443 (1965)) ……………….…14

*James v. Gannett Co.,* 40 N.Y. 2d 415, 423 (1976) …………………………………….…...15

*Fowler v. UPMC Shadyside,* 578 F.3d 203, 212 (3d Cir. 2009). …………………………..4

*Franklin Prescriptions, Inc. v. New York Times Co.,* 424 F.3d 336, 342 (3d Cir. 2005) ……….12

*Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) …………………………….20

*Frisk v. News Company,* 361 Pa.Super. 536, 523 A.2d 347 (1986) ……………………...…..13

*FTC v Kevin Trudeau et al* (2016) Case: 15-3472 …………………………………….....18

*Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342 (1974)  …………………………………...…16

*Grose v. P&G Paper Prods.*, 866 A.2d 437 (Pa. Super. 2005) ……………….………………..20

*Gruber v. Owens-Illinois Inc*., 899 F.2d 1366, 1369 (3d Cir.1990) …………………….……7

*Higgs v. Atty. Gen. of the United States*, 655 F.3d 333, 339 (3d Cir. 2011) ……………...….7

*Hedges v. 6 Musco,* 204 F.3d 109, 123 (3d Cir. 2000) (citation omitted) …………………..……6

*Hemispherx Biopharma. Inc. v. Asensio*, July Term 2000, No. 3970, 2002 Phila. Ct. Com. Pl. LEXIS 72 (C.C.P. Phila. Feb. 14, 2001) (Sheppard, J.)……………………………………………21

*Hoy v. Angelone,* 720 A.2d 745 (Pa. 1998) ……………………………………………............8

*Humanitarian Law Project v. United States Dept. of Justice*, 352 F.3d 382 …………....……16

*Innovative Biodefense, Inc. v. VSP Technologies, Inc.*, No. 12 Civ. 3710 (ER), 2016 WL 1301179, at *17 (S.D.N.Y. March 31, 2016) ……………………………………………..…17

*Joseph v. Scranton Times, L.P.,* 89 A.3d 251, 272 (Pa. Super. Ct. 2014) …………………….12

*Koch v. First Union Corp.*, May Term 2001, No. 0549, 2002 Phila. Ct. Com. Pl. LEXIS 82, (C.C.P. Phila. Jan. 10, 2002) (Herron, J.) …………..………………………………………21

*Krajewski v. Gusoff*, 53 A.3d 793 (Pa. Super. Ct. 2012) ………………………………………23

*Kurowski v. Burroughs,* 994 A.2d 611 (Pa. Super. 2010) ………………………………………14

*Kuzel v. Krause,* 658 A.2d 856 (Pa. Cmwlth. 1995) ……………………………………………14

*Lewis v. Phila. Newspapers, Inc.,* 833 A.2d 185, 191 (Pa. Super. Ct. 2003)) …………………..12

*Limbach v. City of Philadelphia*, 905 A.2d 567, 577 (Pa. Commw. 2006) ……………….……23

*Livingston v. Murray,* 612 A.2d 443 (Pa. Super. Ct. 1992) …………………………………...10

*Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004) ……………………………………3

*Maier v. Maretti,* 671 A.2d 701,704 (Pa. Super. Ct. 1995)) …………………………………10

*Malewicz v. Michael Baker Corp.*, December Term 2002, No. 1741, 2003 Phila. Ct. Com. Pl. LEXIS 49 (C.C.P. Phila. Aug. 6, 2003) (Jones, J.) ………………………………21

*Marcone v. Penthouse Intern, Ltd.*, 577 F. Supp. 318 (E.D. Pa. 1983) …………………..10, 11

*Martin v. Lancaster Battery Co.,* 606 A.2d 444, 448 (Pa. 1992)  ………………………….....17

*Maverick Steel Co. v. Dick Corp./Barton Malow, 2012* Pa. Super. 173, 173, 54 A.3d 352, 354 (Pa. Super. Ct. 2012) ……………………………………………………………………………19

*McCusker v. HIBU PLC et a*l cv-15-2659 (E.D. N.Y 2016) …………………………………....12

*McQueary v The Pennsylvania State University,* Docket:  2012-1804, (PA Comm 2016) ……..17

*Menefee v. Columbia Broadcasting System Inc.,* 458 Pa. 46, 329 A.2d 216 (1974) ………....…19

*Milkovich v. Lorain Journal Co*., 497 U.S. 1, 22, 110 S.Ct. 2695, 2708 (1990) …………………8

*Miller v. Santilli*, July Term 2006, No. 1225, 2007 Phila. Ct. Com. Pl. LEXIS 252 (C.C.P. Phila. Sept. 20, 2007) (Bernstein, J.) ……………………………………………………………………....21

*Moore v. Cobb-Nettleton,* 889 A.2d 1262, 1267 (Pa. Super. Ct. 2004) …………………………8

*Moor v. Texas & N. O. R. Co*., 297 U.S. 101, 105 (1936) ………………………………………....24

*Mzamane v. Winfrey,* 693 F.Supp.2d. 442 (E.D. Pa. 2010) ……………………………...……....14

*Myers-Macomber Engineers v. M.L.W. Construction Corp*., 271 Pa.Super. 484, 414 A.2d 357 (1979) …………………………………………………………………………………23

*Neish v. Beaver Newspapers, Inc.*, 581 A.2d 619, 624 (Pa. Super. 1990), *alloc.den.*, 593 A.2d 421 (Pa. 1991)  ………………………………………………………………………...…24

*Neurotron Inc., v. Medical Service Assocation of Pennsylvania, Inc.,* et al No.00-1516.  (3rd Circuit of Appeals, June 19, 2001) ……………………………………………………………...…19

*Norton v. Glenn*, 860 A.2d 48 (Pa. 2004) …………………………………………………………...8

*Novelty Knitting Mills, Inc. v. Siskind*, 500 Pa. 432, 436, 457 A.2d 502, 503-04 (1983) ……....19

*Obsidian Fin. Grp., LLC v. Cox,* 812 F. Supp. 2d 1220, 1232–34 (D. Or. 2011)…………......…17

*Parano v. O'Connor,* 641  A.2d 607,609 (Pa. Super. Ct. 1994) ………………………………10

*Pasqualini v. Mortgageit. Inc.*, 498 F. Supp. 2d 659,671-72 (S.D.N.Y. 2007) ………………....12

*Paul v. Davis,* 424 U.S. 693, 697, 96 S.Ct. 1155, 1159, 47 L.Ed.2d 405 (1976) ………………11

*Petruska v. Gannon Univ.*, 462 F.3d 294, 310 (3d Cir. 2006) ……………………………..…17

*Phillips v. County of Allegheny*, 515 F.3d 224, 2e4 (3d Cir.2008) ………………...……………21

*Phillips v. Selig,* 959 A.2d 420, 437 (Pa. Super. Ct. 2008) ……………………………..…………20

*Pilchesky v. Gatelli,* 12 A.3d 430 (Pa.Super.2011) …………………………………….………12

*Planned Parenthood v. American Coalition of Life Activists,* 290 F.3d 1058 (9th Cir. 2002) …..16

*Price v. Chevrolet Motor Div. of General Motors Corp.,* 2000 PA Super 410, 765 A.2d 800, 43 U.C.C. Rep. Serv. 2d 593 (2000) ……………………………………………………...……19

*Pro Golf Manufacturing, Inc. v. Tribune Review Newspaper Company,* 761 A.2d 553 (2000)...19

*Reedy v. Evanson*, 615 F.3d 24 197, 231 (3d Cir. 2010) ………………………………….………18

*Renk v. City of Pittsburgh,* 537 Pa. 68, 641 A.2d 289 (1994) …………………………....….14

*Rosenblatt v. Baer*, 383 U.S. 75, 86, 86 S.Ct. 669, 676 (1966) ………………………………...….8

*Rosenblum v. Rosenblum,* 320 Pa. 103, 108-09, 181 A. 583, 585 (1935) ………………………....20

*Santillo v. Reed,* 634 A.2d 264 (Pa. Super. 1993) …………………………………………………24

*Shedden v. Anadarko E. & P. Co., L.P, 136 A.3d 485 (Pa. 2016)* ………………….…………...19

*Sinclair v. Soniform, Inc.,* 935 F.2d 599, 603 (3d Cir. 1991) …………………………………….6

*Sparrow v. United Airlines, Inc.,* 216 F.3d 1111, 1115 (D.C. Cir. 2000) ……………….………3

*Stickney v. Chester County Communications, Ltd.,* 361 Pa.Super. 166, 522 A.2d 66 (1987) …..13

*Thompson Coal Co. v. Pike Coal Co.,* ……………………………………………….…………21

*Testa v. Janssen*, 482 F. Supp. 1195; 1980 U.S. Dist. LEXIS 9868 …………………………...….6

*Trump v. Tarpley,* Case No. 424492V (Md. Cir. Ct. Feb. 1, 2017)……………….……....…..9

*Unelko Corp. v. Rooney*, 912 F.2d 1049, 1056 (9th Cir.1990) ……………………………………15

*United Mine Workers v. Gibbs,* 383 U.S. 715, 725 (1966) ………………………………………6

*United States v. Rahman,* 1994 U.S. Dist. LEXIS 10151, S3 93 Cr. 181, 1994 WL 388927, at *1-2 (S.D.N.Y. July 22, 1994) …………………………………………………………… 22

*United States v. Rowlee II,* 899 F.2d 1275, 1278 (2d Cir. 1990) ……………………………… 16

*United States. v. White County Bridge Commission*, 275 F.2d 529, 534-35 (7th Cir. 1960) …...24

*Veno v. Meredith,* 515 A.2d at 575 …………………………………………………………...14

*Walker v. Grand Cent. Sanitation, Inc.,* (Pa. Super. Ct. 1993) …………………………………12

*Washington v. U. S. Suzuki Motor Corp.*, 257 Pa.Super. 482, 390 A.2d 1339, 1340 (1978)) ……6

*Weaver v. Franklin County,* 918 A.2d 194, 202 (Pa.Cmwlth. 2007) ……………………………20

*Weaver v. Lancaster Newspapers, Inc.*, 926 A.2d 899 (Pa. 2007) ………………...…………13

*Williams v. Guzzardi,* 875 F.2d 46 (3d Cir. 1989) ……………………………………………....18

*Wilson v. Am. Gen. Fin. Inc.,* Civil Action No.. 10-412 (W.D. Pa. Mar. 12, 2013) ……...……12

**Statues**
28 U.S.C. §1331 …………………………………………………………………….....6
28 U.S.C. §1391 ………………………………………………………………...…………..5
28 U.S.C. 1391 (c) …………………………………………………………………………6
28 U.S.C. § 1332 ………………………………………………………………….………6

**Federal Rules**
FED. R. CIV. P 12 (b)(6) ……………………………………………………………………3
FED. R. CIV. P 9 (b) …………………………………………………………………20
FED. R. CIV. P 8 (a)(2) …………………………………………………………………3
Communications Decency Action Section 230 ……………………………………...……5
Goldwater Rule ………………………………………………………………………24

**Rules**
42 Pa. C.S.A. § 5301………………………………………………………… *passim*
42 Pa.C.S.A § 5322 ……………………………………………………........……6
42 Pa. C.S. §5322(a)(1) …………………………………………………........6
42 Pa. C.S. § 5525(a)(4) ………………………………………..… *passim*
42 Pa. Cons. Stat. Ann. § 8343(a)(6) ……………………………………… *passim*
42 Pa. C.S. §8343 (b) …………………………………………………11
Restatement (Second) of Torts § 652E, comment c ………………………..…….… *passim*
Restatement (Second) of Torts § 569 ……………………………………..…………12
Section 8550 of the Tort Claims Act ……………………………………………14

**United States Constitution**
First Amendment ……………………………………………………...7, 16
Fourteenth Amendment ………………………………………………….........7
Due Process Clause …………………………………………….....…………..7

**Constitution of Commonwealth of Pennsylvania**
Article 1, Section 7 …………………………………………………...……7

**Other Authorities**

- "Tech Executives Are Contrite About [Russian] Election Meddling, but Make Few Promises on Capitol Hill," *New York Times,* October 31, 2017, https://www.nytimes.com/2017/10/31/us/politics/facebook-twitter-google-hearings-congress.html

- Kurtis Lee, "Some right-wing media sites under investigation for possible Russia ties," *Los Angeles Times,* March 21, 2017, http://www.latimes.com/politics/washington/la-na-essential-washington-updates-some-right-wing-sites-under-1490115530-htmlstory.html

- Tom O'Conner, "Alex Jones apologizes [and retracts] for "Pizzagate" Fake News," *Newsweek,* March 24, 2017, http://www.newsweek.com/alex-jones-apologize-pizzagate-fake-news-574025

- Christine Hauser, "Alex Jones Retracts Chobani Claims to Resolve Lawsuit," *New York Times*, May 17, 2017, https://www.nytimes.com/2017/05/17/us/alex-jones-chobani-lawsuit.html

- Alan Yuhas, 'Pizzagate' gunman pleads guilty as conspiracy theorist apologizes over case," *The Guardian,* March 25, 2017, https://www.theguardian.com/us-news/2017/mar/25/comet-ping-pong-alex-jones

- Derek Hawkins, "Sandy Hook hoaxer gets prison time for threatening 6-year-old victim's father," *Washington Post*, June 8, 2017, https://www.washingtonpost.com/news/morning-mix/wp/2017/06/08/sandy-hook-hoaxer-gets-prison-time-for-threatening-6-year-old-victims-father/?utm_term=.b8f52e4a912f;

- Michael Edison Hayden, "Fake News Story About Chuck Schumer Implodes After Pro-Trump Conspiracy Theorists Claim Source Went Dark," *Newsweek*,  December 13, 2017, http://www.newsweek.com/fake-news-story-chuck-schumer-implodes-747384, "We believe the individual responsible for forging the document should be prosecuted to the fullest extent of the law to prevent other malicious actors from doing the same."

- Amanda Robb,"Anatomy of a Fake News Scandal: Inside the web of conspiracy theorists, Russian operatives, Trump campaigners and Twitter bots who manufactured the 'news' that Hillary Clinton ran a pizza-restaurant child-sex ring," *Rolling Stones Magazine,* November 16, 2017,: http://www.rollingstone.com/politics/news/pizzagate-anatomy-of-a-fake-news-scandal-w511904

- "Former Fox News commentator sentenced to prison for faking CIA ties," *Reuters,* July 15, 2016, https://www.reuters.com/article/us-twenty-first-fox-crime-analyst/former-fox-news-commentator-sentenced-to-prison-for-faking-cia-ties-idUSKCN0ZV21Q

- Rachel Stockman, "Blogger Agrees to Pay Melania Trump 'Substantial Sum' to Settle 'Escort' Lawsuit," *LawNewz.com,* February 7, 2017, https://lawandcrime.com/high-profile/breaking-melania-trump-settles-escort-lawsuit-with-blogger-for-substantial-sum/

- "Jurors awards $3million in damages to U-Va. Administrator defamed by Rolling Stone," *USA Today,* November 7, 2016, https://www.usatoday.com/story/news/nation/2016/11/07/jurors-weigh-damages-rolling-stone-defamation-trial/93416190/

- "Judge adds $5M to Mike McQueary's $7M verdict against Penn State," November 30, 2016, *Associated Press,* http://www.chicagotribune.com/sports/college/ct-penn-state-abuse-spt-20161130-story.html

- Aaron Keller, "Record $274 Million Verdict Awarded Against Talk Show Host After Radio Rants," September 29, 2017, *LawandCrime.com,* https://lawandcrime.com/high-profile/record-274-million-verdict-awarded-against-talk-show-host-after-online-rants/

## Preliminary Statement

As leading alternative media stars, Defendants Stephen Quayle ("Quayle") and Douglas Hagmann ("Hagmann") (collectively "Defendants") appear as long-time trusted experts on Alex Jones *Infowars*.  In the United States Jones reportedly broadcasts on some 150 radio stations. His *Infowars* website reaches over 6 million unique U.S. users each month, and his YouTube channel has more than 2 million followers — numbers rivaling mainstream media outlets.[1] Prior to the 2016 elections, then candidate, President of the United States Donald J. Trump appeared on *Infowars*.

Likewise, the internet talk radio show *The Hagmann and Hagmann Report* ("H&H Report") has an impressive U.S. and international reach.  By Defendants' own accounts, in well over 70 countries (Plainitff decl § ex. 27).[2] Recently, Hagmann claimed "on just one platform alone," H&H Report was downloaded  "some 70 million" times in one year."[3] These platforms include BlogTalkRadio, YouTube, ITunes, SoundCloud, and Global Star Network.  Defendants publish virtually daily in the alternative media. Quayle appears on the televangelist's *The Jim Bakker Show*.

Defendants are purported investigative journalists, private investigators, experts, authors, and Christian watchmen. They claim they have high-level government and financial "insider" "sources," and provide the news the "corrupt" mainstream press will not report  Together, and separately, they have disseminated fear-based destabilizing conspiracies as real "news;" have date-set imminent claims of marital law that come and go; and scared people into believing an economic

---

[1] According to Quantcast.com, Alex Jones Infowars.com reaches over 14 million unique visitors worldwide, https://www.quantcast.com/infowars.com#/trafficCard. (FAC at 2-3)

[2] Accompanying and attached to this Opposition the Plaintiff has submitted a sworn declaration ("Plaintiff decl") dated February 5  2018 with 82 marked exhibits, three declarations, and one affivdit. The present pleadings consist of the Plaintiff's First Amended Complaint ("FAC") filed on January 12, 2016, attached to the Opposition as exhibits and incorporated therein.

[3] Since this lawsuit was filed, Hagmann has renamed *The Hagmann and Hagmann Report* to *The Hagmann Report*. Thus, interchangeable, "H&H Report," refers to both, and he started a morning radio show on BlogTalkRadio. *See:* "The Doug Hagmann Show*, BTR*, November 15, 2017, Timestamp:  [25:32], http://www.blogtalkradio.com/the-doug-hagmann-radio-show/2017/11/14/criminality-of-the-communist-progressives-censorship-of-the-truth-seekers

collapses will happen any day for years. It is not a fluke that Quayle, an admitted businessman, induces interstate and international commerce of precious metals, doomsday gear, books, etc. he sells on H&H Report (Def Motion § p.1) (FAC § 2, 21, 68, 118) (Quayle Decl Ex. A line 1299).

Hagmann's "news" and purported New York Police Department (NYPD) "source" made history.  In part, as *Rolling Stone Magazine* reported last November, Hagmann, among other individuals, including Alex Jones, in Defendants' self admitted conspiracy, they call their "Circle of Trust,"[4] inspired a North Carolina man into believing Hillary Clinton was running a child sex trafficking ring in a basement of a D.C. pizzeria with no basement.  This individual showed up at the D.C. pizzeria with a loaded AK-15 to "self investigate"; fired off shots, and is now in prison.

Thankfully, no one was killed. (Plaintiff decl § ex. 1-3, 53)

Indeed. Defendants are sincere sounding, dangerous liars.  Their "news" can be categorically false, distortions of reality, and like screaming "fire" in a crowded theater.

This is why it is, and was, so damaging and dangerous when they defamed and incited violence against the Plaintiff after she had corrected some of their false allegations made against United States government agencies she had been assigned to report.  History repeated itself.

From the get-go to its conclusion Hagmann's Motion to Dismiss ("Def Motion") is based upon a false narrative that is not in FAC because it is not true.

This may explain why Defendants, with experienced lawyers, submitted illegible exhibits from Plaintiff's website and a blurry copy of their February 10, 2015 Joint Statement from Southern District of New York ("SDNY") (Rosen Decl Ex. B-D). Plaintiff's exhibits are legible.

It appears Defendants have confused this court proceeding as one of their alternative media appearances, where anyone can pretend to be anything, and publish damaging and dangerous

---

[4] To avoid repetition, references herein to Defendants' self admitted conspiracy ("Circle of Trust"), also known as "inner circle" or "remnant," includes individuals who are presently in it, or were previously a part of it (FAC §74, 100-102, 110, 117, 144 , 228-235, 237-242, 244).

falsehoods with no accountability unless injured parties like the Plaintiff file a lawsuit.

Verifiable facts vs. provable falsities; journalism vs. pretend journalism; free speech vs. unprotected speech and a matter of law; and the weaponization of the Internet. This is this lawsuit in a nutshell. This lawsuit seeks to utilize the American justice system to recompense the Plaintiff, clear her name, and attempt to begin to restore some integrity and honesty in the online media.

## LEGAL ARUGMENT

### I. THE COMPLAINT SHOULD NOT BE DISMISSED WHEN RELIEF CAN BE GRANTED. A MOTION TO DISMISS UNDER RULE 12(B)(6) MERELY TESTS THE LEGAL FEASIBILITY AND SUFFICIENCY OF THE PLEADINGS.

In deciding a Rule 12(b)(6) motion to dismiss, courts must consider the complaint in its entirety, as well as "the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004). A motion to dismiss should be granted only if the complaint is unable to articulate "enough facts to state a claim to relief that is plausible on its face."*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

If the complaint contains sufficient "factual content" to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," the plaintiff has met its burden of stating a claim with "facial plausibility." *Iqbal*, 556 U.S. at 678.

In considering such a motion, federal courts require notice pleading. Rule 8(a)(2) provides that a complaint only needs to include "a short and plain statement of the claim showing that the pleader is entitled to relief" and that such a statement simply shall "give the Defendants fair notice of what the plaintiffs claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 512, 554, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see also Sparrow v. United Airlines, Inc.*, 216 F.3d 1111, 1115 (D.C. Cir. 2000), *appeal dismissed after remand*, 2001 WL 936257 (D.C. Cir. July 12, 2001) (allegation "I was turned down for a job because of my race" would be sufficient to survive a Rule 12(b)(6) motion).

This Court may not dismiss a Complaint because it appears unlikely or improbable that Plaintiff can prove the facts alleged or will ultimately prevail on the merits. *Twombly v Bell Atlantic Corp*, 550 U.S. at 563 n.8.  Instead, this Court must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements. *Id.* at 556. Generally speaking, a Complaint that provides adequate facts to establish "how, when, and where" will survive a Motion to Dismiss.  *Fowler v. UPMC Shadyside,* 578 F.3d 203, 212 (3d Cir. 2009).

Defendants have received fair notice and clearly know what has been alleged. Because the pleadings provide fair notice, there is no basis for a dismissal at this time.

The FAC contains Defendants' defamatory and *per se* defamatory statements against the Plaintiff, the statements where Defendants bullied, intimidated and incited violence against her (FAC § 87-90, 92, 94, 97-99), and identifies whether Defendants' made these statements in written form (libel) published in Defendants' February 10, 2015 Joint Statement, or in spoken form (slander) on the H&H Report and the motive (FAC§ 68-71, 75-77, 81-102, 105-119, 130-132, 171-189).  Plaintiff also included a list of *per se* defamatory statements, which enumerate and delineate the libel *per se* from the slander *per se* (FAC §140-144).  This was done as a convenience, and does not limit the factual assertions in the FAC.  A brief summary of this case which Defendants need this Court to ignore, and pretend does not exist, is at FAC § 68.

A review of the entire FAC demonstrates that FAC meets the requirements under the Federal Rules and does not rely upon legal conclusions, but contains a detailed factual account of Defendants' tortious practices. The FAC provides the motivation as to why Defendants caused this injury against the Plaintiff which also establishes their liability. FAC § 25- 26, 44- 48, 68, 125-129.

Def Motion makes stuff up, and claims Plaintiff admitted to facts she did not admit to. For *e.g.,*

(1) Def Motion § p. 4 para 2, distorts FAC and is not true, by conflating their government "insider" sources  with their NSA targeting allegation where they claimed the NSA was targeting them to find Hagmann's gov insider sources. Two different things. FAC§ 25 -38.

(2) The first time their NSA allegation and Hagmann's alleged sworn affidavit was published was when Plaintiff was assigned to report it for *CFP* (Plaintiff decl § ex 19-26). This may explain why Defendants submitted a hard to decipher copy from her website, and quoted part of the disclaimer while ignoring her other updates. (Def Motion § p. 4) (Rosen Decl § Ex. B)

(3) Def Motion (§ p. 9) asserts: "Plaintiff alleges that the harm occurred in New York, where she maintains a "transitory presence." FAC §16."" Plaintiff's pleadings typically state *inside and outside of New York,* thereby, also inside and outside of Pennsylvania, U.S., Canada, etc. (*e.g.* FAC§ 2-4, 13, 21-22, 68, 70, 72). For clarity sake, ultimately, Plaintiff did not maintain a New York transitory presence since she was never required to appear in court in New York, as she had anticipated was necessary when she filed FAC. FAC § 1.

For expediency sake, to not burden the Court, the Plaintiff expressly rejects each claim in Def Motion. While Defendants claimed deficiencies in "Plaintiff's "poorly articulated" pleadings (for *e.g.* Def Motion at p 2, 19) they failed to make any good faith attempts with the Plaintiff regarding curing them. Thus, Defendants failed to file the mandatory certification.[5]

## II. Jurisdiction

On September 22, 2017, the Honorable Paul G. Gardephe transferred this action (1:15-cv-09504) from the SDNY to the WDPA, where the Plaintiff could have initially filed this action after New York based Defendant corps were dismissed, immunized by the Communications Decency Act Section 230 (Rosen Decl Ex. E).[6] Where jurisdiction is based on diversity of citizenship a plaintiff may bring a case under 28 U.S.C. § 1391. *Bockman v. First American Marketing Corp.*, 459 Fed.Appx. 157, 160 (3d Cir. 2012).

In a factual attack, this Court must weigh the evidence relating to jurisdiction, with discretion to allow affidavits, documents, and even limited evidentiary hearings. *See, Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007).[7]

---

[5] Honorable Bissoon's Individual Rules of Practice § II Motions Practice, Motions to Dismiss (a) "Consistent with this rule, motions to dismiss must be accompanied by a certificate of the movant …Motions to dismiss that do not contain the required certification will be summarily denied."
[6] **Note:** It is likely a matter of time that an abused CDA Section 230 will be updated or repealed. *See for e.g.,* "Tech Executives [Google, Facebook, Twitter] Are Contrite About [Russian] Election Meddling, but Make Few Promises on Capitol Hill," *New York Times,* October 31, 2017.
[7] Should the Court have any doubts, to allay doubts, the Plaintiff requests an evidentially hearing to

This Federal Court has jurisdiction over this action and all parties, Does 1-20, pursuant to 28

U.S.C. § 1332 (diversity of citizenship) because the parties' citizenship is diverse. The amount in

controversy exceeds $75,000.00, exclusive of costs, and interest. Quayle has waived objections

with respect to personal jurisdiction of this Court (Def Motion p. 9, endnote 3).

The Pennsylvania long-arm statute, is codified as 42 Pa.C.S.A. § 5322. The act specifies that even a single act may be enough to satisfy the law that personal jurisdiction exists. *Testa v. Janssen*, 482 F. Supp. 1195; 1980 U.S. Dist. LEXIS 9868 (citing *Washington v. U. S. Suzuki Motor Corp.*, 257 Pa. Super. 482, 390 A.2d 1339, 1340 (1978))

[S]pecific jurisdiction arises out of the defendant's specific contacts with the forum state.

Here, in this case, Quayle with Douglas and his son, talk radio co-host, Joseph Hagmann.

42 Pa. C.S.§5322(a)(1), permits specific jurisdiction over a non-resident defendant "who acts directly or by an agent, as to a cause of action or other matter arising from such person . . . [t]ransacting any business in" Pennsylvania. Thus, "[s]pecific jurisdiction 'is focused upon the particular acts of the defendant that gave rise to the underlying cause of action.' *Commonwealth ex rel. Pappert v. TAP Pharmaceutical Products, Inc.*, 868 A.2d 624, 628 (Pa. Cmwlth. 2005) (*en banc*) 868 A.2d at 629 (citation omitted).

Federal courts may exercise supplemental jurisdiction over claims that share "a common nucleus of operative fact" with claims over which the district court has original jurisdiction. *Sinclair v. Soniform, Inc.*, 935 F.2d 599, 603 (3d Cir. 1991) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)). Further a district court may retain supplemental jurisdiction over any state-law claims in "considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Hedges v. 6 Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (citation omitted).

Thus, this venue and jurisdiction is proper for Quayle and Hagmann, as a common

nucleus of operative facts also lies within Pennsylvania (FAC § 68-74, 171-188, 196-246).

This Court has general and subject matter jurisdiction over this case by virtue of 28 U.S.C.

§1331 because this is a civil action arising under the laws of the United States, and/or treaties of

the United States, and venue pursuant to 28 U.S.C. 1391 (c).

By performing these acts [jointly] for pecuniary gain, defendant[s] purposefully availed [themselves] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp.*

play as many clips of Defendants' joint talk radio show appearances verifying FAC as permissible.

*v. Rudzewicz.* No. 83-2097 (1985)., 471 U.S. at 475.

Therefore, the exercise of jurisdiction in this Court has not offended the Due Process

Clause of the Fourteenth Amendment.  The connections and jurisdiction in the State of

Pennsylvania are irrefutable and relief can be granted.[8]  (*See also*, FAC § 3, 21, 40, 43, 45, 67,

68, 70, 72.)  Thereby,  Pennsylvania law governs the liability issues in this diversity action.

*Gruber v. Owens-Illinois Inc.*, 899 F.2d 1366, 1369 (3d Cir.1990) (citations omitted).

### III.  THE PLAINTIFF PERMISSIBLY AND ADEQUATELY PLEADED HER EIGHT CAUSES OF ACTION

Defendants offer several arguments contending Plaintiff failed to state a claim. Plaintiff, in

general, and specifically, has addressed this in FAC, and does not desire to burden the Court with a

repetition of those arguments. Thus, she is incorporating them herein, and summarizing the

applicable principles. For the reasons set forth herein, none of Defendants' arguments prevail.

In addition, based upon the pleadings, this Court may determine additional Counts are

applicable, such as Negligent Misrepresentation, False Light and Whistleblower protections.

> [I]t is well settled that this Court must construe a *pro se* litigant's pleadings liberally.
> *See Higgs v. Atty. Gen. of the United States*, 655 F.3d 333, 339 (3d Cir. 2011) ("The
> obligation to liberally construe a *pro se* litigant's pleadings is well-established.")
> (citing cases). *See also*: *Castro v. United States,* 540 U.S.  375, 381-82, 124 S. Ct.
> 786, 791-92, 157 L. Ed. 2d 778 (2003) (internal citations omitted); and *Dluhos v.
> Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003) (noting that courts must liberally
> construe pro se filings and "apply the applicable law, irrespective of whether the *pro
> se* litigant has mentioned it by name"). *See also: Bilt-Rite Contractors, Inc. v. The
> Architectural Studio,* 866 A.2d 270, 277 (Pa. 2005) (citation omitted).

### A.   PLAINTIFF'S CLAIMS ARE NOT BARRED BY THE FIRST AMENDMENT (COUNT I)

Attorneys predictably argue their client's remarks are never defamatory and file motions to

dismiss when no discovery has taken place, and freedom of speech is not the freedom to defame.

Pennsylvania's Constitution relegates free speech to a less-prominent position in Article

1, Section 7, and even then cautions the free speaker that he or she shall be "responsible

---

[8] **Note:** In brief, Plaintiff did not file this action in Toronto, Ontario, Canada, because she possesses evidence (arrests and police reports) that some Does 1-20 in Defendants' Circle of Trust in the alternative media and witnesses may be barred from entering Canada. (Plaintiff decl § ex. 13, 49)

for the abuse of that liberty." Thus, Pennsylvania law closely guards the ability of a person whose reputation has been injured by defamatory statements to obtain redress for such injury. In *American Future Systems v. Better Business Bureau*, 592 Pa. 66, 923 A.2d 389 (2007), the Court explained that the Pennsylvania Constitution "places reputational interests on the highest plane, that is, on the same level as those pertaining to life, liberty, and property." *Id*. at 77 n.7, 923 A.2d at 395 n.7; *see* Pa. Const. art. I § 1 ("All men have certain inherent and indefeasible rights, among which are those of enjoying and defending reputation."); *id.* § 11 ("[E]very man for an injury done him in his reputation shall have remedy by due course of law."); *Norton v. Glenn*, 580 Pa. 212, 22526, 860 A.2d 48, 56 (2004) ("The right of a man to the protection of his own reputation from unjustified invasion and wrongful hurt reflects no more than our basic concept of the essential dignity and worth of every human being," (quoting *Milkovich v. Lorain Journal Co*., 497 U.S. 1, 22, 110 S.Ct. 2695, 2708 (1990))). *See also Rosenblatt v. Baer*, 383 U.S. 75, 86, 86 S.Ct. 669, 676 (1966) (recognizing that "[s]ociety has a pervasive and strong interest in preventing and redressing attacks upon reputation").

This interest has urgently escalated given (1) the rise of the Internet, the alternative media, and social media; (2) the ongoing inquires into the alternative media post 2016 Presidential Election and the Russia probes of which Defendants and Does 1-20 are a part of;[9] (3) harmful consequences of fake news; (4) and coupled by criminal prosecutions of individuals who have acted upon false information they believed to be true published, disseminated, and/or echo chambered online by individuals like, and including Defendants, and others in their alternative media Circle of Trust.[10]

The Plaintiff alleged the Defendant intentionally, willfully and with actual malice, told false, and heinous statements regarding her to irreparably harm her reputation for the rest of her life which damaged her personally and professionally, to deter third persons from associating or dealing with her. *Moore v. Cobb-Nettleton,* 889 A.2d 1262, 1267 (Pa. Super. Ct. 2004) (quoting *Elia v. Erie Ins. Exch.,* 634 A.2d 657, 660 (Pa. Super. Ct. 1993)). The statements are not privileged, and were made without prior authorization upon which their trusting, loyal and Christian Conservative audiences would believe, resulting in both actual monetary damage

---

[9] Dkt. No. 66-68. There, Plaintiff notified SDNY when Hagmann acknowledged he and others in Defendants' Circle of Trust are among media outlets in the Russia probes, and inquires into the alternative media (*See also,* Plaintiff decl § ex 71); and Plaintiff had received a notice outside of proceedings from Quayle's insurance litigation adjuster.

[10] Plaintiff decl § ex. 1, 60, and 67. *See also,* "Sandy Hook hoaxer gets prison time for threatening 6-year-old victim's father," *Washington Post*, June 8, 2017.

("the loss of something having economic or pecuniary value") and an injury that "impugns the basic integrity or creditworthiness of a business." *Celle v. Filipino Reporter Enterprises Inc.*, 209 F.3d 163, 179-180 (2d Cir. 2000). *See also*, *Bell v. Mayyiew State Hosp.,* 853 A.2d 1058, 1061 (Pa. Super. Ct. 2005). Thus, no immunity exists. The jury can award damages.

Defendants claimed "Plaintiff Strikes First Blood," and "threw the first punch," using typical inflammatory language they use in the alternative media (Def Motion § p. 6, 10).  The Plaintiff did not provoke anyone. Defendants had months to retract and apologize. They did not. Hagmann continued to peddle their false NSA allegation as if it were true, among other falsities like "news" from Defendants' "sources" (FAC § 24-67, 125-126, 134). (Plaintiff decl § ex. 61)

Furthermore, even if any of the Defendants' claims were true, and they are not, they would be irrelevant. Unsurprisingly, Defendants are essentially arguing that journalists, (everyone, really), should look the other way, be complicit, ignore Defendants verifiable history of fear-porn-for-profit-conspiracy-peddling disguised as "news," and fraudulent sources for who they are—fraudulent, and thereby be culpable and exposed to potential liability of their wrongdoing.

Defendants' arguments fail, but are not surprising.  Most importantly, their arguments fail as a matter of law. The true context here is Plaintiff is morally, ethically and legally obligated to correct false allegations. *See* generally *Alharbi v. Beck et al*, MA Cir. No. 14-11550 (settled), *Eramo v. Rolling Stone LLC et al,* VA Cir. No. 3:15-cv-00023 U.S. (jury found defendants guilty of defamation with actual malice, awarded $3 million.); *Trump v. Tarpley,* Case No. 424492V (Md. Cir. Ct. Feb. 1, 2017) (settled with a blogger); and *Anagnost et al v The Mortgage Specialists, Inc. and Gill.* No. 216-2016-cv-277, NH Cir. 2017 ($272 million jury award against a talk radio host).[11]

Indeed. The mainstream and alternative media must conduct themselves lawfully. In all cases, defendants' motions to dismiss were denied, and the pleadings prevailed.  Here, it should be

---

[11] Plaintiff decl § ex. 52

the same. Without contrition, Defendants continue to demand she be complicit in their tortious conduct in the alternative media, which, in part, is destabilizing America, and wreaking havoc on countless lives.[12]

In Pennsylvania a claim for slander *per se* requires a defamatory statement, published by the defendant, applicable to the plaintiff, understood by the recipient to be defamatory, and imputing "(1) criminal offense, (2) loathsome disease, (3) business misconduct, or (4) serious sexual misconduct." *Clemente v. Espinosa*, 749 F. Supp. 672, 677 (E.D. Pa. 1990);  and *Brinich v. Jencka,* 757 A.2d 388, 397 (Pa.  Super. Ct. 2000).  In addition,

> In Pennsylvania "[a] communication is ... defamatory if it ascribes to another conduct, character or a condition that would adversely affect his fitness for the proper conduct of his proper business, trade or profession." *Constantino v. Univ. of Pittsburgh,* 766 A.2d 1265, 1270 (Pa. Super. Ct. 2001) (quoting *Maier v. Maretti*, 671 A.2d 701,704 (Pa. Super. Ct. 1995)).  In determining whether a communication is defamatory, the Court "must consider the effect the statement would fairly produce, or the impression it would naturally engender, in the minds of the average persons among whom it is intended to circulate." *Maier*, 671 A.2d at 704 (citation omitted). Judges and juries must give the words contained in the communication "the same significance that other people are likely to attribute to them." *Id*. (citing *Livingston v. Murray,* 612 A.2d 443 (Pa. Super. Ct. 1992)).  The "nature of the audience" to whom the communication is directed is a "critical factor" in determining  whether the communication is capable of defamatory meaning.  *Maier,* 671 A.2d at 704 (citations omitted).  While "personal annoyance and embarrassment ... are not the sorts of injury that will support a defamation claim," *Parano v. O'Connor,* 641 A.2d 607,609 (Pa. Super. Ct. 1994) (citation omitted), "no demonstration of any actual harm to reputation is necessary."  *Devon Robotics v. Deviedma,* No. 09-cv-3552, 2009 U.S. Dist. LEXIS 112077, at *24 (citing *Marcone v. Penthouse Int'l Magazine for Men,* 754 F.2d 1072, 1081 (3d Cir. 1985)). (Plaintiff's emphasis)

Plaintiff's pleadings repeatedly refer to Defendants trusting predominately Christian, Conservative audience—the "intended" audience, as do Defendants.  *See for e.g.* FAC § 68, 84, 101, 102, 103, 105, 112- 114, 204, 209.  It cannot be overstated how millions of individuals

---

[12] "Pizzagate' gunman pleads guilty as conspiracy theorist [Alex Jones] apologizes over case," *The Guardian,* March 25, 2017. While Alex Jones has retracted and apologized, Defendants have not. *See also:* Amanda Robb, "Anatomy of a Fake News Scandal," *Rolling Stone Magazine,* November 16, 2017 (Plaintiff decl § ex. 1-3, 53); and "Alex Jones Retracts Chobani Claims to Resolve Lawsuit," *New York Times*, May 17, 2017.

_literally_ believe the Defendants' are reporting the real "news," thereby, believed each and every

defamatory statement concerning the Plaintiff, no matter how "preposterous," including when they

twisted Bible scripture, claimed she "sleeps with the devil," and their Satanic talk (FAC § 86, 92-

95, 97-99, 101, 111-114) (Plaintiff decl. § ex. 33, 58, 62, 65, and Barbara J. Frieseman Declaration)

> Likewise, in the sister state of New York, in Pennsylvania,

>> The statement need not name the person explicitly if there is enough identifying
>> information that those who know the person will recognize the statement as
>> being about him or her," for it to be defamatory and/or threatening. [13]

**The Plaintiff Properly Raises 42 Pa. C.S. §8343 (b) of the Judicial Code Before This Court.**

Def Motion must also be denied so Defendant may comply with 42 Pa. C.S. §8343 (b) which states:

> In an action for defamation, the defendant has the burden of proving, when the
> issue is properly raised: (1) The truth of the defamatory communication. (2) The
> privileged character of the occasion on which it was published. (3) The character
> of the subject matter of defamatory comment as of public concern.

As the Plaintiff's pleadings repeatedly state, the Defendants provided no proof of their

claims against her as none exists. In fact, many are "preposterous," and "impossible to be true."

While Def Motion takes the pleadings out of context for obvious reasons, following is an _e.g._ of the

true context. Defendants' had falsely claimed the Plaintiff had committed indictable crimes (threats,

intimidation, stalking, harassment) against them and their families (FAC § 74, 83, 96, 97). This is

impossible to be true considering Plaintiff has never been to Montana or to Erie, Pennsylvania.

> In _Marcone v. Penthouse Intern, Ltd.,_ (E.D.Pa. 1983), 577 F. Supp. 318 (E. D. Pa. 1983),
> As… the Court stated in its earlier Memorandum, 533 F. Supp. at 358, 361, the
> defamatory statements at issue impute to the plaintiff the commission of an indictable
> crime, and they are therefore actionable as libel per se and do not require proof of special
> harm, that is, harm of a pecuniary nature. _See Paul v. Davis,_ 424 U.S. 693, 697, 96 S.Ct.
> 1155, 1159, 47 L.Ed.2d 405 (1976) ("Imputing criminal behavior to an individual is
> generally considered defamatory per se, and actionable without proof of special
> damages."); and _Altoonas Clay Products, Inc. v. Dun Bradstreet, Inc.,_ 367 F.2d 625, 628
> (3d Cir. 1966) (reserving the question whether all libels are actionable per se in PA).

---

[13] FAC 134, 137. Defendants' defame the Plaintiff's book on the Death of Vince Foster because she
does not peddle and disseminate debunked, scary murder conspiracies, as "news," like they do.
(FAC § 121). (_See for e.g,._ Plaintiff decl § ex. 45)

In *McCusker v. HIBU PLC et a*l cv-15-2659 (E.D. N.Y 2016), in an order denying

Defendants' motion to dismiss (citing Pennsylvania and New York case law), quotes, in part,

> *Pasqualini v. Mortgageit. Inc.*, 498 F. Supp. 2d 659,671-72 (S.D.N.Y. 2007) (sustaining Plaintiffs defamation claim in response to a motion to dismiss where an email sent regarding Plaintiff's termination described her as "disloyal and incompetent"); *see also Agriss v. Roadway Express. Inc.,* 483 A.2d 456 (Pa. Super. Ct. 1984) (finding statement published to employee's supervisor and co-workers concerning plaintiffs opening of company mail to be defamatory because it implied plaintiff had committed a crime).

In addition, *Wilson v. Am. Gen. Fin. Inc.,* Civil Action No.. 10-412 (W.D. Pa. Mar. 12,

2013) determined, "A publication imputing unworthiness of credit is libelous." *Altoona Clay*

*Prods., Inc. v. Dun & Bradstreet, Inc., 367 F.2d 625, 630-31 (3d Cir. 1966)…Words recognized*

*as injurious on their face are actionable per se.*

## Contrary to Def Motion (p. 21) Actual Malice Is Already Verifiable

[R]recent cases have permitted presumed damages in cases where actual malice was present. In *Franklin Prescriptions, Inc. v. New York Times Co.*, 424 F.3d 336, 342 (3d Cir. 2005), the Third Circuit stated that "[a]lthough *Walker v. Grand Cent. Sanitation, Inc.,* (Pa. Super. Ct. 1993) appears generally to foreclose presumed damages under Pennsylvania law, it is not entirely clear whether presumed damages remain available where the plaintiff proves actual malice… "The jury charge, while omitting the term "defamation per se," made clear that *Franklin Prescriptions* was not required to prove financial harm. The jury charge was explicit that "actual injury can include impairment of reputation," that *Franklin Prescriptions* should be compensated for "all harm it suffered," and that the jury could compensate for "the actual harm to the plaintiff's reputation." … The District Court accurately charged that the jury could award compensation based on harm to reputation alone."

* * *

Notably, a recent Pennsylvania Superior Court concluded that "presumed damages do indeed remain available upon a showing of actual malice."*Joseph v. Scranton Times, L.P.,* 89 A.3d 251, 272 (Pa. Super. Ct. 2014).  Actual malice is when a statement is made "with knowledge that [the statement] was false or with reckless disregard of whether it was false or not."  *Id. at 261 (quoting Lewis v. Phila. Newspapers, Inc.,* 833 A.2d 185, 191 (Pa. Super. Ct. 2003)).  Therefore, this Court is bound to conclude that Pennsylvania permits presumed damages in defamation *per se* claims when actual malice is pleaded and proven.  Consistent with Restatement (Second) of Torts § 569, Pennsylvania case law holds that proof of special harm, *i.e.*, monetary damages, is not a prerequisite to recovery in a defamation libel matter.  *See Pilchesky v. Gatelli,* 12 A.3d 430 (Pa.Super. 2011); and *Agriss,* 483 A.2d at 472–74.

Defendants' claims are not credible. They are malicious given Plaintiff's corrective reporting

was accurate and <u>prescient</u> (Plaintiff decl § ex. 1-3). Additionally, none of Defendants' fictitious

named "insider" sources (government, financial, and/or medical), she had identified in her articles

have appeared on H&H Report since 2014 which would not be the case had they been reputable.[14]

In addition, this Court may determine actual malice is already demonstrable given Defendants'

February 10, 2015 Joint statement was removed, altered, and republished on another one of

Hagmann's websites, since its initial publication. This may explain why Defendants filed a hard to

read copy (Rosen Decl Ex. A v. Plaintiff decl ex. 14-15 for legible copies). *Weaver v. Lancaster*

*Newspapers, Inc.*, 926 A.2d 899 (Pa. 2007)  held that republication of a defamatory statement is

relevant and admissible to prove the publisher's state of mind concerning actual malice in regard to

the initial publication.  Here, Defendants were put on notice twice (Plaintiff decl ex. 48), and again

in FAC. *See* also *Castellani v. Scranton Times* (2015).  In fact, <u>none</u> of Defendants' infringing

content has been removed (three years and counting), and is available to the public <u>worldwide</u>.

> Likewise, evidence of unexplained distortion or the absence of any factual basis to
> support an accusation may be considered in determining whether the record is
> sufficient to support a finding of "actual malice". *Stickney v. Chester County*
> *Communications, Ltd.,* 361 Pa.Super. 166, 522 A.2d 66 (1987).  *See also Frisk v.*
> *News Company,* 361 Pa.Super. 536, 523 A.2d 347 (1986) (clear departures from
> acceptable journalistic procedures, including the lack of adequate prepublication
> investigation; the use of wholly speculative accusations and accusatory inferences;
> and the failure to utilize or employ effective editorial review, were sufficient to
> support finding of reckless disregard for the falsity of the information).

Thus, here again, Plaintiff may already have crossed the actual malice threshold, given

Defendants stated in their February 10, 2015 Radio Broadcast and Joint Statement their factual

assertions were intentional and planned for a "lengthy period" of time with "the counsel of"

others.  (Rosen Decl § Ex. A or Plaintiff decl § ex. 14-15 for legible copies)

> **FEBRUARY 10, 2015 JOINT STATEMENT:** "We issue this joint statement as
> obedient watchmen as referenced in chapter six of the Book of Jeremiah to
> address very slanderous and libelous public accusations that have been made

---

[14] This includes: "W," a.k.a. Wayne Willott, "V," a.k.a. Viji Varghese of New York, Defendants'
purported "Financial Insider," and "Dr. S." *See also* Kirk Michael McLeod Declaration

against us by two individuals, Kirk McLeod, using the fictitious name Michael Erevna, and Marinka Peschmann. <u>Our statement is not made out of haste, but only after a lengthy period of abundant prayerful consideration.</u>" (Emphasis Plaintiff)

*See*: February10, 2015 Radio Broadcast, Quayle Decl. Exhibit A, line 189-191, 445-449.  FAC 74

> **STEPHEN QUAYLE:** "But  I  want to... Before, I want to lay the stage for what we're  going to talk about tonight. <u>This is critical. Doug and I have both sought Godly counsel. I have sought counsel from intercessors. I have sought counsel from Pastor, uh, uh, (forgive me) David Lankford. I've  prayed.  I've  agonized….</u>"

> **DOUGLAS HAGMANN:** "The  3,000 word article, response, that Steve and I crafted, and <u>we agonized. And when Steve says we agonize, we agonized. And we sought, we sought counsel.  Wise  counsel.  Scripture  counsel.  Divine...  we prayed.  We  prayed  together.  We prayed individually. We brought our families into this.</u> Because our families have been threatened, have been directly uh involved in this, to a degree folks that you will never know because we will never disclose it. And when Steve says death threats, house on the Internet, yes, he's  not lying." (Emphasis Plaintiff)

Thus, Defendants have negated their own arguments and purported defenses. *See also*:

> Section 8550 of the Tort Claims Act, "willful misconduct" means "willful misconduct aforethought" and is synonymous with "intentional tort." R.H.S., 936 A.2d at 1230 (citing *Renk v. City of Pittsburgh*, 537 Pa. 68, 641 A.2d 289 (1994); *Kuzel v. Krause*, 658 A.2d 856 (Pa. Cmwlth. 1995)). Willful misconduct means the actor "desired to bring about the result that followed, or at least that he was aware that it was substantially certain to ensue." *Id.* (citing *Evans v. Phila. Transp. Co.,* 418 Pa. 567, 574, 212 A.2d 440, 443 (1965)).  " … defendant made a false and defamatory statement with actual malice, *Am. Future Sys., Inc. v. Better Bus. Bureau of E. Pennsylvania*, 923 A.2d 389, 400 (Pa. 2007).

Here, none of the Defendants' statements can be construed as opinion or hyperbole. They can be proven false. Courts have also held the issue of whether Defendants "expressions constitute opinion is one for discovery." *See Mzamane v. Winfrey,* 693 F.Supp.2d. 442 (E.D. Pa. 2010) (interpreting Pennsylvania law); and *Kurowski v. Burroughs,* 994 A.2d 611 (Pa. Super. 2010).

Moreover, a statement in the form of an opinion may be actionable if it "may reasonably be understood to imply the existence of *undisclosed* defamatory facts justifying the opinion." *Veno v. Meredith,* 515 A.2d at 575 (citation omitted) (emphasis in original).

Here, Defendants, echo-chambering each other, stated they had an additional "9,000 words" about the Plaintiff and Kirk McLeod and were releasing "just enough …" (Quayle Del § Ex. A, line

14

455-465, line 470-471, FAC § 87), thus negating Def Motion once again.

Defaming and inciting violence against the Plaintiff was not done in the public's interests. At minimum, it was done for Defendants' pecuniary interests. The Plaintiff's corrective reporting (FAC § 63-65)(Plaintiff decl § ex. 16-18, 48) , did and does involve a matter of public concern and is newsworthy. The Defendants were not acting in self defense. They have no defense. *See:*

> *American Future Sys. v. Better Business Bureau of Eastern Pa*., 872 A.2d 1202, 1210-11 (Pa.Super. 2005).   Accordingly, the Superior Court panel found no error in the trial court's jury charge.  *Cf. Unelko Corp. v. Rooney*, 912 F.2d 1049, 1056 (9th Cir.1990) (finding that a statement concerning the effectiveness of a consumer product addressed a matter of public concern…)

**Plaintiff is Not An All Purpose Public Figure**

At best, the Plaintiff might be a limited public figure. Def Motion erroneously, be it purposefully or in error, cited, *James v. Gannett Co., 40 N.Y. 2d 415, 423 (1976)* (Because, "by her purposeful activity, [Plaintiff] thrust herself into the public spotlight and sought a continuing public interest in her activities." (Def Motion at p. 21).  Def Motion is wrong. The opposite is true. That case law applies to the Defendants, who appear almost daily in the alternative media, not the Plaintiff.  She did not "thrust herself" anywhere. She was writing for *CFP,* and was assigned their NSA targeting allegation which she has since proven was false. She has not entered the public arena in the mainstream or alternative media since October 2014 or sought a continuing public interest in her activities for several reasons, including for her safety. Plaintiff desires this case be handled in a Court of law, not in the Court of public opinion with a weaponized Internet. The majority of her writing career has been offline working on other people's projects (FAC at 1).

Unlike Defendants' heavily trafficked websites, her personal website, is not a media outlet with contributor content, updated regularly, or a news aggregator. It is an author website where she had done some original reporting since she stopped writing for *CFP*.  She does not promote her website, thus it garners little traffic.  She does send out retraction notices and DMCA

takedown requests, like other people have had to do in an increasingly lawless, hostile Internet.

Def Motion attempts to create false equivalences between the parties which cannot exist (Def Motion § p. 12 "pedal various wares"). To compare Plaintiff's author website (with six-year + old books, and a satire T-shirt) to Defendants and their Circle of Trusts' multiple websites, and platforms where they reach millions of people and induce interstate and international commerce of precious metals, doomsday gear, legacy sculptures, books and DVDs, Defendants sell, market and cross promote online, based upon their "news," is absurd and fallacious.[15] *See:*

> *Am. Future Sys., Inc. v. Better Bus. Bureau of E. Pa.*, 923 A.2d 389, 395 (Pa. 2007) (additional citation omitted), citing, *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342 (1974) *Gertz* as follows. "We would not lightly assume that a citizen's participation in community and professional affairs rendered him a public figure for all purposes. Absent clear evidence of general fame or notoriety in the community, and pervasive involvement in the affairs of society, an individual should not be deemed a public personality for all aspects of his life." *Id.* at 14 - 15, quoting *Gertz*, supra at 352… *Gertz v Welch*, 418 U.S. at 344, 94 S.Ct. at 3009 ("Public officials and public figures usually enjoy significantly greater access to the channels of effective communication and hence have a more realistic opportunity to counteract false statements than private individuals normally enjoy.").

Thus, Plaintiff is not an all purpose public figure. (*See for e.g.* Plaintiff decl ex. 4, 7, 8)

In addition, in *Planned Parenthood v. American Coalition of Life Activists,* 290 F.3d 1058, 1079-82  (9th Cir. 2002) (the "Nuremburg Files" case), the Ninth Circuit held, in an en banc decision, that threats and intimidation may be actionable without violating the First Amendment, and that there is no freedom of association for the purpose of making such threats and intimidation (FAC § 87-90, 92, 94, 97-99, 133).[16]  *See*, also: *United States v. Rowlee II,* 899 F.2d 1275, 1278 (2d Cir. 1990) ("It rarely has been suggested that the constitutional freedom for speech …extends its immunity to speech or writing used as an integral part of conduct in violation of a valid

---

[15] Plaintiff decl § ex 4-8, 63, 69.  *See also*: Quayle Decl Ex A § line 390-395. Quayle claims he receives 300-400 emails daily from his audiences. Plaintiff does not.

[16] To guard against a "chilling effect," the Court has the power to set guidelines for proof and evidence and to issue jury instructions to mitigate any concerns over unnecessary encroachment on free speech or association. *See, Humanitarian Law Project v. United States Dept. of Justice,* 352 F.3d 382 (statute construed to have an element of *mens rea* to preserve constitutionality).  As this case is at the pleading stage, this need not be addressed, at this time.

…statute").[17] The Ninth Circuit held in *Obsidian Fin. Grp., LLC v. Cox,* 812 F. Supp. 2d 1220,

1232–34 (D. Or. 2011), a December 25, 2010 blog post on bankruptcycorruption.com made "fairly

specific allegations [that] a reasonable reader could understand . . . to imply a provable fact

assertion.[18]

Lastly, in *McQueary v The Pennsylvania State University,* Dkt: 2012-1804, (PA Comm 2016),

the "Judge added $5M to [whistleblower] Mike McQueary's $7M jury verdict against Penn State,"

in part, for being defamed and misrepresented *for doing what was right* (Plaintiff decl § ex 51).

Here too, Plaintiff blew the whistle on Defendants' false allegations and their fraudulent

"sources" in the alternative media.  Therefore, Def Motion should be denied in its entirety.

### A.  FRAUDULENT MISREPRESENTATION (COUNT 2)

Def Motion claims Plaintiff "couched" counts. She disagrees (FAC § 25-26, 33-38, 41, 45-50,

53, 55, 57-62, 68, 127-129, 134-136,189-195, 216-222).  As Def Motion demonstrates, Quayle and

Hagmann fraudulently misrepresent, spoil with evidence, and bear false witness to each other.[19]

Meanwhile, like a badge of honor, Hagmann publicly brags at his skills to deceive:

> As an investigator and in particular, when [Doug Hagmann] was working as an
> operational asset for the FBI in the 1990s, I was particularly good at securing covert video
> like that captured by the Center for Medical Progress of Planned Parenthood.  In fact, I
> was used because I could convincingly present myself to the subjects of investigation as
> someone I was not, and secure the needed evidence that served as the basis for immediate
> raids, arrests and sometimes later, as courtroom exhibits for a jury to see.[20]

FAC describes Hagmann's failure to follow through with his representations (FAC § 218-

220).  *Petruska v. Gannon Univ.*, 462 F.3d 294, 310 (3d Cir. 2006) (quoting *Martin v. Lancaster*

---

[17] The standards for First Amendment protection are higher in a criminal case. This is a civil case.
It does not chill free speech, if anything; it would "chill" only the Defendants specific behavior.
[18] "The district judge therefore allowed that single defamation claim to proceed to a jury trial. The
jury found in favor of Padrick and Obsidian, awarding the former $1.5 million and the latter $1
million…" (Emphasis Plaintiff)
[19] *See* Plaintiff's Rejection Notice Dkt. No. 56-59 for further discussion; Plaintiff decl.§ ex. 2, 19-20
[20] The veracity of Hagmann's bona fides cannot be determined until discovery. *See,* "Planned
Parenthood, unequal justice and dark forces," *CFP*, August 3, 2015. (Plaintiff decl § ex. 47)

*Battery Co.*, 606 A.2d 444, 448 (Pa. 1992)); and *Innovative Biodefense, Inc. v. VSP Technologies, Inc.*, No. 12 Civ. 3710 (ER), 2016 WL 1301179, at *17 (S.D.N.Y. March 31, 2016).[21]

**B.**      **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (COUNT 3)**

Plaintiff sufficiently pleaded intentional infliction of emotional distress ("IIED") (FAC §

133, 139, and 196-213) (*See* Declaration of Dr. Sharif and Plaintiff decl § ex. 82)  The Third

Circuit has allowed recovery for IIED. *Williams v. Guzzardi,* 875 F.2d 46 (3d Cir. 1989).

> The Supreme Court of Pennsylvania has held that in order to sustain a claim for
> intentional infliction of emotional distress, a plaintiff must allege that the
> defendant "has acted with intent which is tortious or even criminal,[22] or that he
> had intended to inflict emotional distress, or even that his conduct has been
> characterized by `malice,' or a degree of aggravation that would entitle the plaintiff
> to punitive damages for another tort." *Hoy v. Angelone,* 720 A.2d 745 (Pa. 1998).

Plaintiff, with existing back problems, alleged she suffered physical harm due to Defendants'

outrageous and tortious conduct (FAC § 212), and provided competent medical evidence.  *Reedy v.*

*Evanson*, 615 F.3d 24 197, 231 (3d Cir. 2010) (citation omitted). Def Motion also fails as it is well-

settled a defendant's reasonable pursuit of their legal rights cannot constitute extreme and

outrageous conduct for purposes of establishing IIED.

> *Clark v. Caln Twp*., No. 09-1551, 1990 WL 99123, at *5 (E.D. Pa. July 11, 1990)
> ("When an individual does no more than insist on his legal rights in a permissible
> way, he will not be held liable for intentional infliction of emotional distress, even
> though he is aware that such insistence will cause emotional distress.")

Here, it was not in the Defendants' legal right, in part, to defame, threaten, bully and incite

violence against the Plaintiff, instead of retracting and apologizing, when she would not be

complicit to their tortious schemes, to irreparably harm her for the rest of her life (Plaintiff was 46-

---

[21] Plaintiff decl § ex.19-24. **Note:** Since Plaintiff filed this action other journalists have been targeted for fraud which could result in criminal prosecutions. *See*, "Fake News Story About Chuck Schumer Implodes After Pro-Trump Conspiracy Theorists Claim Source Went Dark," *Newsweek*, December 13, 2017, "We believe the individual responsible for forging the document should be prosecuted to the fullest extent of the law to prevent other malicious actors from doing the same."
[22] FAC § 24-29, 34, 56-62, 68, 128-129. *See potential e.g.*: "Former Fox News commentator sentenced to prison for faking CIA ties," *Reuters,* July 15, 2016;  *FTC v Kevin Trudeau et al* (2016) Case: 15-3472; and ongoing Russia probes.

years old in 2015).  A simple google search of Plaintiff's unusual name brings up their falsehoods.

**B.   EQUITABLE ESTOPPELS (COUNT 4)**

Plaintiff sufficiently pleaded Equitable Estoppels (FAC § 29-41, 52, 55-62, 214-223).

*See* generally, *Price v. Chevrolet Motor Div. of General Motors Corp*., 2000 PA Super 410, 765 A.2d 800, 43 U.C.C. Rep. Serv. 2d 593 (2000).  Further, the Pennsylvania *Supreme* Court has reaffirmed and applied the doctrine of estoppel *by deed* in the case of *Shedden v. Anadarko E. & P. Co*., *L.P*, 136 *A.*3d 485 *(*Pa*.* 2016*)* and distinguished it from the doctrine of equitable estoppel. Thus, the Plaintiff's pleading have been sufficiently pled.  *Novelty Knitting Mills, Inc. v. Siskind*, 500 Pa. 432, 436, 457 A.2d 502, 503-04 (1983). (internal citations omitted).

**C.   INJURIOUS FALSEHOODS (COUNT 5)**

Defendants argue that Plaintiff impermissibly couched other counts.  Def Motion is again mistaken (FAC § 85-86, 92-94, 224-226).  *Cain v. Esthetique*, No. 13 CIV. 7834 (JCF), 2016 WL 1599490, at *13-14 (S.D.N.Y. Apr. 20, 2016).  While the tort of injurious falsehood does not exist under Pennsylvania law, it is akin to commercial disparagement.

> To recover for the tort of disparagement, a plaintiff must prove a direct pecuniary loss as a result of the disparagement. *Menefee v. Columbia Broadcasting System Inc.,* 458 Pa. 46, 329 A.2d 216 (1974).  *See also*: *Neurotron Inc., v. Medical Service Assocation of Pennsylvania, Inc.,* et al No.00-1516.  (3rd Circuit of Appeals, June 19, 2001) (citing *Pro Golf Manufacturing, Inc. v. Tribune Review Newspaper Company,* 761 A.2d 553 (2000)), "[T]he "General Principle" set forth in S 623A of the Restatement (Second) of Torts is subject to the following two "caveats..."

Here in this case, the caveats are applicable. Defendants' statements denigrated and demeaned the Plaintiff personally and professionally, including as a journalist, writer, ghostwriter and an author.  The Plaintiff has adequately pleaded the Defendants ill-will motivation which caused her injury, and thereby has satisfied the elements. *See* generally *Maverick Steel Co. v. Dick Corp./Barton Malow, 2012* Pa. Super. 173, 173, 54 A.3d 352, 354 (Pa. Super. Ct. 2012).

**E.   CIVIL CONSPIRACY AND AIDING AND ABETTING (COUNT 6 &7)**

The count of civil conspiracy and aiding and abetting are applicable to both Defendants (FAC §24, 26, 30- 41, 43-44,46-64, 51, 54-57, 59-63, 67-75, 81-83, 87-90,  98-99, 101, 108-111, 117, 119, 126-129, 131, 133, 135, 139, 144, 227-235, 236-242, and 244).  If that were not true, Defendants' February 10, 2015 Joint Statement and Joint Radio Broadcast would not exist.

Contrary to Def Motion, Plaintiff did not "strike first blood." For instance, she did not name Quayle in her first correction article (Plaintiff decl § ex 16). Quayle, as his pattern, injected himself in this matter when he tried to bully and intimidate the Plaintiff to cover up for Hagmann, and their alternative media Circle of Trust's multi-million dollar enterprise (Plaintiff decl § ex 68).  In his apparent zeal, Quayle handed her more evidence their NSA allegation was false prompting her to write more correction  articles (FAC § 219).  No one should be bullied into complicity.

> "Civil conspiracy occurs when two or more persons combine or agree intending to commit an unlawful act or do an otherwise lawful act by unlawful means."  *Weaver v. Franklin County*, 918 A.2d 194, 202 (Pa.Cmwlth. 2007). (citing *Grose v. P&G Paper Prods.*, 866 A.2d 437 (Pa. Super. 2005);  *see also* "… an overt act done in pursuance of the common purpose …" *Phillips v. Selig,* 959 A.2d 420, 437 (Pa. Super. Ct. 2008). (Plaintiff emphasis).

The Plaintiff's pleadings meet the *Rosenblum v. Rosenblum,* 320 Pa. 103, 108-09, 181 A. 583, 585 (1935) test.  Instead of retracting and apologizing (not just to the Plaintiff, but to their audiences), Defendants' acted solely with the purpose to injure Plaintiff.  FAC identifies the "who," the "what," the "how," and the "when," and the "where" of Defendants' tortious conduct, and includes dates, times and locations. Thus, FAC avoids the extremes of 'bare bones' or 'implausibility.' *Twombly,* 2005 U.S. App. LEXIS at *27-34.  The Third Circuit has held that to satisfy Rule 9(b), a plaintiff must "state the circumstances of the alleged fraud with sufficient particularity to place a defendant on notice of the 'precise misconduct with which [it is] charged.'" *Dimare v. Metlife Insurance Co.*, 369 Fed. App'x 324, at *329 (3d Cir. 2010) (quoting *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (alteration in original).[23]  Further,  *see:*

---

[23] Notwithstanding, *see*: *Burton v. Bojazi,* April Term 2005, No. 03551, 2005 Phila. Ct. Com. Pl.

*Hemispherx Biopharma. Inc. v. Asensio*, July Term 2000, No. 3970, 2002 Phila. Ct. Com. Pl. LEXIS 72 (C.C.P. Phila. Feb. 14, 2001) (Sheppard, J.)  Here, "the Court denied a preliminary objection where the plaintiff had alleged a conspiracy between the named defendant and several John Doe defendants". "The Court upheld the sufficiency of a claim for civil conspiracy where only one of the parties to the conspiracy was identified in the pleadings. The Court concluded that provided the identity of the "John Doe" defendants could either be easily ascertained or discovered after the initial filing, the pleading was sufficient…"  Further, in part, in *Acme Markets, Inc. v. Dunkirk Ice Cream Co.*, Feb. Term 2000, No. 1559, 2000 Phila. Ct. Com. Pl. LEXIS 49 (C.C.P. Phila. Sept. 18, 2000) (Herron, J.) ("the Court required an amended complaint to be filed where substantial questions existed as to the identity of the parties to the alleged conspiracy and the degree of knowledge possessed by one of the defendants…")…

* * *

*See: Malewicz v. Michael Baker Corp.*, December Term 2002, No. 1741, 2003 Phila. Ct. Com. Pl. LEXIS 49 (C.C.P. Phila. Aug. 6, 2003) (Jones, J.) Here, "the Court denied preliminary objections to the conspiracy count of the complaint finding that a letter and a lawsuit were the combined action of the defendants and thus stated a claim for conspiracy". *See also*: *Koch v. First Union Corp.*, May Term 2001, No. 0549, 2002 Phila. Ct. Com. Pl. LEXIS 82, (C.C.P. Phila. Jan. 10, 2002) (Herron, J.) "The Court held that malice and intent in a claim for civil conspiracy can be generally inferred for pleading purposes;" *Miller v. Santilli*, July Term 2006, No. 1225, 2007 Phila. Ct. Com. Pl. LEXIS 252 (C.C.P. Phila. Sept. 20, 2007) (Bernstein, J.) "The Court held that a sufficient allegation of aiding and abetting fraud necessarily results in a sufficient pleading of civil conspiracy.  Rather than separately considering the conspiracy claim, however, the Court stated that – for pleading purposes – aiding and abetting and conspiracy were one and the same and there was no need for any further inquiry. The Court adopted the definition from *Thompson Coal Co. v. Pike Coal Co.*, which provides that a plaintiff must show that "two or more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means."  The 'plausibly suggesting' threshold for a conspiracy complaint remains considerably less than the 'tends to rule out the possibility' standard for summary judgment."). And  *Phillips v. County of Allegheny*, 515 F.3d 224, 2e4 (3d Cir.2008)(quoting *Twombly*, 550 U.S. at 556).

In keeping with those principles, it is reasonable to assume more defendants will

be named. In fact, since filing this action, the Plaintiff has learned the identify of another co-

conspirator  in Ohio and will seek to have these related cases consolidated.[24]

As *Abacus Fed. Sav. Bank v. Lim*, 75 A.D.3d 472, 475 (1st Dep't 2010) reminds,"[a] claim

---

LEXIS 284, 75 Pa. D. & C. 4th 403 (C.C.P. Phila. June 17, 2005) (Abramson, J.). There ("the Court overruled the preliminary objection to the conspiracy count of the complaint finding sufficient allegations of intent and no need to specifically plead the dates, time or place of the conspiracy"), and *Babiarz v. Bell Atlantic-Pennsylvania. Inc.* Phila. Ct. Com. Pl. LEXIS 94 (2001).

[24] *See,* Plaintiff decl § ex.72  *Peschmann v. James Schifrin* grew out of this Action. To economize judicial resources, as the parties, Does 1-20, claims, underlying facts, motives, and evidence in these cases are the same Plainitff will move to have them consolidated after this Court ruling. Only additional *per se* libel statements would be incorporated, and defendant(s) to the applicable counts.

for civil conspiracy 'is merely the string whereby the plaintiff seeks to tie together those who, acting in concert, may be held responsible in damages for any overt act or acts."

Fairly read, the pleadings allege the Defendants knowingly collaborated, assisted one another, and engaged in, and used other individuals as false witnesses against the Plaintiff, while attempting to manipulate U.S. legal systems, and silence journalists from doing what journalists do—expose corruption and correct false allegations, thereby hampering freedom of speech, journalists' ability to do their job, governmental efforts, engaging in propaganda and defamation, and otherwise who provide material support in furtherance of the conspiracy.

The Defendants attack on the Plaintiff, and the deceitful information they published and disseminated on the Internet was not an isolated incident, but the coordinated effort of an organization, who has engaged in this type of unlawful conduct for years, before and after, the Plaintiff filed this lawsuit, by utilizing the alternative media on the worldwide Internet. (Plaintiff decl § ex. 1, 29, 32- 33, 35, 39-44, etc. and Broadcast Transcripts § ex. 57-71)

The Defendants, who conspired with each other, knew, or should have known, their actions in furtherance of their conspiracy to profit off of trusting audiences, (and potentially for more nefarious purposes, such as for the Russians, wittingly or unwittingly (Plainitff decl § ex. 1, 9-12), by exploiting and deceiving the Plaintiff, by making false allegations against the United States, U.S. governmental agencies, and its citizens would result in the damage against her and others.

The First Amendment lends no protection to participation in a conspiracy, even if such participation is through speech. *United States v. Rahman*, 1994 U.S. Dist. LEXIS 10151, S3 93 Cr. 181, 1994 WL 388927, at *1-2 (S.D.N.Y. July 22, 1994) (internal citation omitted).

> By joining a conspiracy, knowing that acts in furtherance of the conspiracy have taken place or will take place within the United States, the Defendants assumes liability, for both jurisdictional and substantive purposes. *See: Allstate Life Ins. Co. v. Linter Grp. Ltd.,* 782 F. Supp. 215, 220-222 & n.6 (S.D.N.Y. 1992).

Defendants speak out of both sides of their mouths. It is tedious and revealing. One minute,

they claimed the Plaintiff was guilty of "betrayal," as if she had been a part of their conspiracy (Circle of Trust) (FAC § 74, 82); the next minute, in Def Motion, they claim the Plaintiff reported their NSA allegation on her own which was already public (it was not) (Plaintiff decl § ex 19-26).

The truth is simple. Defendants, and others in their Circle of Trust, like Wayne Willott, who actively pursues other journalists and individuals who publish online to feed disinformation to, failed to enlist her into their Circle of Trust. Defendants need this Court to ignore the underlying evidence. Their history of making false and fear-based allegations on the Internet as "news."

**D.   UNJUST ENRICHMENT (COUNT 8)**  (FAC § 22, 40-43, 51-54, 66- 68, 81-82, 118, 239-241, 243-246).

> [R]estitution for unjust enrichment is not predicated on a promise, but on the restoration of an unfair gain**.** The doctrine of promissory estoppel can sometimes be used to enforce a promise that induced justifiable reliance even where there is not consideration. Similarly, the concept of unjust enrichment serves the purpose of allowing for the enforcement of obligations that may not qualify as contractual. *Myers-Macomber Engineers v. M.L.W. Construction Corp.*, 271 Pa.Super. 484, 414 A.2d 357 (1979).

Here, the Plaintiff has met the elements. She has alleged there was a "benefit conferred on Defendants" by Plaintiff.  Defendants began unjustly enriching themselves and others in their Circle of Trust (passively and intentionally), in June 2013, at her expense, which would be unconscionable for them to retain. *See, Com. ex. rel. Pappert v. TAP Pharm. Prods., Inc.,* 885 A.2d 1127 (Pa. Commw. 2005).  "The polestar of the unjust enrichment inquiry is whether the defendant has been unjustly enriched; the intent of the parties is irrelevant." *Limbach v. City of Philadelphia*, 905 A.2d 567, 577 (Pa. Commw. 2006).[25] (Plaintiff decl § ex. 27, 57)

**H.  Count of False Light is Applicable in this Action**

The Plaintiff submits her pleadings are sufficient for False Light to be applicable in this action.

> [U]nlike defamation, "false light invasion of privacy offers redress not merely for the publication of matters that are provably false, but also for those that, although true, are selectively publicized in a manner creating a false impression. *Krajewski*

---

[25] **Note:** Plaintiff will not be able to ascertain Defendants' commissions and/or cuts until discovery for inducing precious metals, prepper doomsday gear, books, etc. interstate and international commerce and seeking "tithes" and "offerings" to send to Hagmann's Pennsylvania corporation.

*v. Gusoff*, 53 A.3d 793 (Pa. Super. Ct. 2012).

The Plaintiff has shown Defendants with knowledge or in reckless disregard of the falsity published highly offensive, false statements concerning her, purposely creating a false impression. *See*: *Santillo v. Reed, 634 A.2d 264 (Pa. Super. 1993)* citing, *Neish v. Beaver Newspapers, Inc., 581 A.2d 619, 624 (Pa. Super. 1990), alloc. den., 593 A.2d 421 (Pa. 1991).*"

Had the Plaintiff been a criminal; unchaste; had mental problems (*Goldwater Rule*); and/or was an incompetent, bad writer / journalist /individual who was desperate to be in Defendants' Circle of Trust,  she would have; (i) started her own talk radio show on BTR and YouTube and joined them, instead of exposing their false allegations and malignant, fraudulent sources; (ii) aided and abetted them, been complicit, and not noticed or cared when they made more false allegations against United States persons and agencies and echo-chambered them online as if real "news."

**VII.  PLAINTIFF SOUGHT AND SEEKS PERMANENT INJUNCTIVE RELIEF. DEFENDANTS & DOES 1-20 ARE SINCERE SOUNDING, MALICIOUS, AND DANGEROUS LIARS WHO REACH MILLIONS OF PEOPLE**

As supported and stated earlier, individuals who have believed and acted upon Defendants' and their Circle of Trust's "news" are, in part, serving time in prison, (*see also*, Plaintiff decl § ex. 1,-3, 60, 67, 72). Thus, Plaintiff  seeks the injunction relief she sought at FAC § p. 71 at no.7.

> [I]t is enough to note that the ability to award mandatory injunctions is well within this Court's discretion. *See*, *Moor v. Texas & N. O. R. Co.*, 297 U.S. 101, 105 (1936). It is well settled that where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done." (footnotes omitted)); *U.S. v. White County Bridge Commission*, 275 F.2d 529, 534-35 (7th Cir. 1960) (A district court has the power to grant injunctive relief to which a party is entitled even if it has not been specifically requested).

> **STEPHEN QUAYLE:**  When someone says [referring to the Plaintiff], 'I am going to destroy you.' Let me tell you this, in the real world that is what they make 45s for, and I'm not exaggerating. That's when they make time out of the brethren more important.  That's when your training takes over."[26]

---

[26] FAC § 88, Quayle Decl Exhibit A § line: 1291-1294.  Quayle incited and directed Defendants' armed followers to shoot the Plaintiff. That's what 45s are for.

## CONCLUSION

The importance of the issues at stake in this litigation are far greater than in other civil lawsuits which typically affect the parties' private interests.  Defendants, Does 1-20, and witnesses in this action, are also a part of the Russia probes and inquires into the alternative media. Thus, it is unsurprising that Defendants *et al*, publicly call the Russia probes a witch hunt; want Special Prosecutor Robert Mueller fired, and attack this lawsuit in the alternative media. The Plaintiff's correction articles, written in distress, (and could use a copy edit), were, and are, prescient.

The Plaintiff has established standing, and met her pleading threshold, particularly as no discovery has occurred.  Thus, it would be premature to dismiss any causes of action. As the pleadings were filed in New York the Plaintiff has addressed deficiencies herein, and drafted a proposed second amended complaint. The Plaintiff awaits direction from the Court on how to proceed; if more deficiencies need to be remedied; and/or if the Court agrees additional counts and defendants are applicable before filing it. Plaintiff thanks the Court for the opportunity to amend.

The Plaintiff has submitted evidence of her career experience in the public domain (Plaintiff decl § ex 74-81).  As a ghostwriter, she is bound by confidentiality and privacy issues, and requests she be permitted to file redacted documentation under seal to show her prior earnings capacity, and the loss of income to her future earnings (for the next (30) thirty + years), as a result of Defendants and their co-conspirators' tortious conduct against her on the worldwide Internet.

 For the reasons set forth herein, Hagmann's Motion should be denied in its entirety.

Plaintiff declares under penalty of perjury under the laws of the United States, and pursuant to the laws of the State of Pennsylvania that the foregoing is true and correct.

**Dated:** February 5, 2018                    Respectfully submitted by:

                                                                 /s/ Marinka Peschmann
cc: Counsel of record via ECF                Marinka Peschmann, Plaintiff *pro se,* P.O. Box 45094
   Bruce S. Rosen (for Quayle)            Port Credit, Mississauga, Ontario L5G 4S7, Canada
   Michael A. Agresti (for Hagmann)       (tele) 646-929-4132,  (email) marinkapm@aol.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

```
----------------------------------------------------------------x
                                       :      Civil Action No.:
MARINKA PESCHMANN,                     :      1:17-CV-00259-CB-SPB
                                       :
                      Plaintiff,       :      Certification pursuant
                                       :      to Honorable Bissoon's
       -against-                       :      Motions Practice
                                       :
STEPHEN QUAYLE, DOUGLAS HAGMANN,       :
AND DOES 1-20,                         :
                      Defendants.      :
                                       :
----------------------------------------------------------------x
```

**<u>Certification pursuant to Honorable Bissoon's Motions Practice</u>**

I am Plaintiff *pro se* Marinka Peschmann ("Plaintiff') in the above-referenced action.

Pursuant to Honorable Cathy Bissoon's Individual Rules of Practice § II <u>Motions Practice,</u>

Motions to Dismiss (a) which reads as follows:

    "Consistent with this rule, motions to dismiss must be accompanied by a certificate of the movant, stating that the moving party has made good faith efforts to confer with the nonmovant(s) to determine whether the identified pleading deficiencies properly may be cured by amendment. Motions to dismiss that do not contain the required certification will be summarily denied."

I hereby certify Defendant Douglas Hagmann <u>did not make</u> any good faith attempts to

confer with me, the Plaintiff, regarding any pleading deficiencies he claimed existed in his Motion

to Dismiss which may be properly cured by amendment. Thus, Douglas Hagmann's motion to

dismiss failed to contain the required certification.

Date:  Febuary 5, 2018         Respectfully submitted by:

cc: Counsel of record via ECF          <u>  /s/ Marinka Peschmann  </u>
    Bruce S. Rosen (for Quayle)     Marinka Peschmann, Plaintiff *pro se*
    Michael A. Agresti (for Hagmann)  P.O. Box 45094 Port Credit
                               Mississauga, Ontario, L5G 4S7, Canada
                               Telephone: 646-929-4132, 905-891-0580
                               Fax: 917-732-7754
                               Email: [marinkapm@aol.com](mailto:marinkapm@aol.com)

## CERTIFICATE OF SERVICE


I hereby certify that on February 5, 2018 copies of the foregoing Opposition to Defendants

Motion to Dismiss, and Certification pursuant to Honorable Cathy Bissoon's Motions practice were

filed in the Western District of Pennsylvania and served via ECF to the following counsel parties of

record:

Representing Defendant Stephen Quayle

Bruce Steven Rosen
McCusker, Anselmi, Rosen, Carvelli, P.C.
805 Third Avenue, 12th Floor
New York, NY 10022
Email: brosen@marc-law.com

Representing Defendant Douglas Hagmann

Michael A. Agresti
Marsh Spaeder Baur Spaeder & Schaaf, LLP
300 State Street, Suite 300
Erie, PA 16507
MAgresti@marshlaw.com

                                  __/s/ Marinka Peschmann_____
                                  Marinka Peschmann, Plaintiff *pro se,*
                                  P.O. Box 45094 Port Credit
                                  Mississauga, Ontario, L5G 4S7, Canada
                                  Telephone: 646-929-4132, 905-891-0580
                                  Fax: 917-732-7754
                                  Email: marinkapm@aol.com