**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**
―――――――――――――――――――――――――

|  |  |  |
|---|---|---|
| MARINKA PESCHMANN, | : |  |
|  | : | CIVIL ACTION NO.: |
| Plaintiff, | : | **1:17-CV-00259-SPB-RAL** |
|  | : |  |
| -Against- | : | Plaintiff's Memorandum of Law |
|  | : | in Opposition to Defendant Stephen |
| STEPHEN QUAYLE, DOUGLAS HAGMANN, | : | Quayle's Motion to Dismiss the Action |
| DOES 1-20, | : |  |
| Defendants. | : |  |
―――――――――――――――――――――――――:

### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT STEPHEN QUAYLE'S MOTION TO DISMISS

Plaintiff *pro se*, Marinka Peschmann ("Plaintiff"), hereby respectfully submits this memorandum of law in opposition to the motion of Defendant Stephen Quayle ("Quayle") to dismiss the Second Amended Complaint ("SAC") pursuant to Fed. R. Civ. P. 12(b)(6) in accordance with Dkt. No. 110.

To conserve the Court's time, and prevent duplication, her oppositions to both Defendants are the same, as if they had jointly filed, as was the case when they initially filed their motion to dismiss in Southern District of New York in October 2016. Here the difference is Defendant Quayle was not named for the Count of Fraudulent Misrepresentation. Plaintiff's Opposition is the standard 25-pages in length. Defendants are lengthier. In addition, the Plaintiff respectfully requests, in the event, she improperly submitted exhibits for this Court to order her to remedy and re-file any deficiencies.

Respectfully submitted,

  /s/Marinka Peschmann_____
Marinka Peschmann, *Plaintiff pro se*
PO Box 45094 Port Credit
Mississauga, Ontario  L5G 4S7 Canada
Email: marinkapm@aol.com,
Telephone: 646-929-4132,

# TABLE OF CONTENTS

TABLE OF CONTENTS.............................................................................………..I

TABLE OF AUTHORITIES...........................................................................................I

PRELIMINARY STATEMENT........................................................................................1

LEGAL ARGUMENT ..................................................................................................3

I.      Defendant's Motion to Dismiss Forgot FRCP 9 (b) and Incorrectly Claims SAC Violates
        FRCP Rule 8(a) and is not plausible under *Twombly* and *Iqbal*. The Complaint Should
        Not Be Dismissed For Failure To State a Claim When  Relief Can Be Granted.  A Motion
        to Dismiss Under Rule 12(B)(6) Tests The Legal Feasibility of the Complaint.................3

II.     The Plaintiff Permissibly and Adequately Pleaded Her Causes of Action.........................6

   A.  Plaintiff's Claims Are Not Barred By the First Amendment (Count 1) .......................7

                   Contrary to Def Motion Actual Malice Is Already Verifiable .....................11
                   Plaintiff is a Private Citizen and was Not an All Purpose Public Figure ...........14

   B.  Fraudulent Misrepresentation (Count 2)……………………..……..…………….......17
   C.  Negligent Misrepresentation (Count 3) ……………………………………………...18
   D.  Intentional and Negligent Infliction of Emotional Distress Claim (Count 4) ………..…19
   E.  Equitable Estoppel (Count 5) ……………………………………………….………...20
   F.  Civil Conspiracy (Defendants' self-admitted "Circle of Trust") & Aiding and Abetting
       (Count 6 & 7)………………………………………………………………………...20
   G.  Unjust Enrichment (Count 8) ……………………………………………………….23
   H.  False Light  (Count 9)………………………………………………………………...24

Conclusion...............................................................................................................24

Certificate of Service...............................................................................................26

## **TABLE OF AUTHORITIES**

*Acme Markets, Inc. v. Dunkirk Ice Cream Co.*, Feb. Term 2000, No. 1559, 2000 Phila. Ct. Com.  Pl. LEXIS 49 (C.C.P. Phila. Sept. 18, 2000) (Herron, J.) ……………………………21

*Agriss v. Roadway Express. Inc.,* 483 A.2d 456 (Pa. Super. Ct. 1984) …………………………11

*Alharbi v. Beck et al*, U.S. District Court, District of Massachusetts, No. 14-11550 ……………9

*Altoona Clay Products, Inc. v. Dun Bradstreet, Inc.,* 367 F.2d 625 (3d Cir. 1966)……………..…11

*American Future Systems, Inc. v. Better Business Bureau,* 923 A.2d 389 (Pa. 2007) ……..………7

*Anagnost et al v The Mortgage Specialists, Inc. and Gill.*  No. 216-2016-cv-277 (2017) ……….9

*Angelastro v. Prudential- Bache Securities, Inc.,* 764 F.2d 939, 944 (3d Cir. 1985 …………….3

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)  …………………………………………………….….. 3, 4

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 512, 554, 555 (2007) ………………………3, 4, 21, 22

*Bell v. Mayyiew State Hosp.,* 853 A.2d 1058, 1061 (Pa. Super. Ct. 2005) ……………………8

*Bilt-Rite Contractors, Inc. v. The Architectural Studio,* 866 A.2d 270, 277 (Pa. 2005) …….18, 19

*Bortz v. Noon,* 556 Pa. 489, 729 A.2d 555, 561 (1999) ……………………………………....18

*Breeden v. Richmond Cmty. Coll.*, 171 F.R.D. 189, 195 (M.D.N.C. 1997) ……………………4

*Brinich v. Jencka,* 757 A.2d 388, 397 (Pa. Super. Ct. 2000) …………………………….....10

*Castellani v. Scranton Times* (2015) ………………………….………………………………12

*Castro v. United States,* 540 U.S.  375, 381-82, 124 S. Ct. 786, 791-92, 157 L. Ed. 2d 778 (2003) …………………………………………………………………………………………..6

*Celle v. Filipino Reporter Enterprises Inc.*, 209 F.3d 163, 179-180 (2d Cir. 2000) ………..…..8

*Clark v. Caln Twp*., No. 09-1551, 1990 WL 99123, at *5 (E.D. Pa. July 11, 1990) ……………20

*Clemente v. Espinosa,* 749 F. Supp. 672, 677  (E.D. Pa. 1990) (citing Restatement (Second) of Torts § 570 (1977)) …………………………………………………………………10

*Commonwealth ex rel. Pappert v. TAP Pharmaceutical Products, Inc.,* 868 A.2d 624, 628 (Pa. Cmwlth. 2005) (en banc) 868 A.2d at 629 ………….……………………….……23

*Conley v. Gibson*, 355 U.S. 41 (1957) ..............................................................................4

*Constantino  v. Univ. of Pittsburgh*, 766 A.2d 1265, 1270 (Pa. Super. Ct. 2001) ...............10

*De Lage Landen Fin. Servs., Inc. v. Rasa Floors, LP,* 792 F. Supp. 2d 812, 837
(E.D. Pa. 2011) ………………………………………………………………………..…17

*Devon Robotics v. Deviedma,* No. 09-cv-3552 , 2009 U.S. Dist. LEXIS 112077, at *24…......10

*Dimare v. Metlife Insurance Co.*, 369 Fed. App'x 324, at *329 (3d Cir. 2010) ………………...4

*Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003) …………………………………………6

*Eigen v. Textron Lycoming Reciprocating Engine Div.*, 874 A.2d 1179, 1185 (Pa.
Super. Ct. 2005) …………………………………………………………………………17

*Elia v. Erie Ins. Exch.,* 634 A.2d 657, 660 (Pa. Super. Ct. 1993) ………………………………17

*Eramo v. Rolling Stone LLC et al* No. 3:15-cv-00023 U.S. District of Virginia ………….…..…9

*Evans v. Phila. Transp. Co.,* 418 Pa. 567, 574, 212 A.2d 440, 443 (1965)) ………………...…13

*Firstrust Bank v. DiDio, March Term 2005,* No. 200, 2005 Phila. Ct. Com. Pl. LEXIS 376
(C.C.P. Phila. July 29, 2005) (Jones, J.) ………………………………………...……………22

*Fowler v. UPMC Shadyside,* 578 F.3d 203, 212 (3d Cir. 2009). …………………………………4

*Franklin Prescriptions, Inc. v. New York Times Co.,* 424 F.3d 336, 342 (3d Cir. 2005) ……….11

*Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) ………………………………...4, 5

*Frisk v. News Company,* 361 Pa.Super. 536, 523 A.2d 347 (1986) ……………………...……13

*Federal Trade Commission v. World Patent Marketing, Inc. et a*l, SDFL 1:2017-cv-20848 …18

*FTC v Kevin Trudeau et al* (2016) Case: 15-3472 …………………………….……………...20

*FTC v Clickbooth.com et al*, No. 1:2012cv09087 (N.D. Ill. 2012) ………………………….20

*Fulton Bank, N.A. v. Sandquist,* Pa. Superior Court No. 2306 EDA 2016 …………………...19

*Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342 (1974)  ……………………………………14, 16

*Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa.1994) ......................................................................17, 18

*Grose v. P&G Paper Prods.*, 866 A.2d 437 (Pa. Super. 2005) …………….……………..21

*Higgs v. Atty. Gen. of the United States*, 655 F.3d 333, 339 (3d Cir. 2011) ……………...…6

*Hemispherx Biopharma. Inc. v. Asensio*, July Term 2000, No. 3970, 2002 Phila. Ct. Com. Pl. LEXIS 72 (C.C.P. Phila. Feb. 14, 2001) (Sheppard, J.)…………………………………………21

*Hoy v. Angelone,* 720 A.2d 745 (Pa. 1998) …………………………………………..........20

*Humanitarian Law Project v. United States Dept. of Justice*, 352 F.3d 382 ……………...……16

*Joseph v. Scranton Times, L.P.,* 89 A.3d 251, 272 (Pa. Super. Ct. 2014) …………………….…11

*Koch v. First Union Corp.*, May Term 2001, No. 0549, 2002 Phila. Ct. Com. Pl. LEXIS 82, (C.C.P. Phila. Jan. 10, 2002) (Herron, J.) …………..…………………………………………22

*Krajewski v. Gusoff*, 53 A.3d 793 (Pa. Super. Ct. 2012) …………………………………….24

*Kurowski v. Burroughs,* 994 A.2d 611 (Pa. Super. 2010) ………………………………………13

*Kuzel v. Krause,* 658 A.2d 856 (Pa. Cmwlth. 1995) ……………………………………………13

*Lewis v. Phila. Newspapers, Inc.,* 833 A.2d 185, 191 (Pa. Super. Ct. 2003)) …………………..12

*Limbach v. City of Philadelphia*, 905 A.2d 567, 577 (Pa. Commw. 2006) ……………………..23

*Livingston v. Murray,* 612 A.2d 443 (Pa. Super. Ct. 1992) …………………………………...10

*Maier v. Maretti,* 671 A.2d 701,704 (Pa. Super. Ct. 1995)) …………………………………10

*Malewicz v. Michael Baker Corp.*, December Term 2002, No. 1741, 2003 Phila. Ct. Com. Pl. LEXIS 49 (C.C.P. Phila. Aug. 6, 2003) (Jones, J.) …………………………………..22

*Marcone v. Penthouse Intern, Ltd.*, 577 F. Supp. 318 (E.D. Pa. 1983) ……………………..10, 11

*Martin v. Lancaster Battery Co., 606 A.2d 444, 448 (Pa. 1992)* …………………………....18

*McCusker v. HIBU PLC et a*l cv-15-2659 (E.D. N.Y 2016) …………………………………...11

*McQueary v The Pennsylvania State University,* Docket: 2012-1804, (PA Comm 2016) ……..17

*Mellon Bank Corp. v. First Union Real Estate Equity & Mortg. Investments*, 951 F.2d 1399, 1409 (3d Cir. 1991) ……………………………………………………………..…………18

*Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 22, 110 S.Ct. 2695, 2708 (1990) …………………7

*Miller v. Santilli*, July Term 2006, No. 1225, 2007 Phila. Ct. Com. Pl. LEXIS 252 (C.C.P. Phila. Sept. 20, 2007) (Bernstein, J.) …………………………………….………………...…22

*Moore v. Cobb-Nettleton,* 889 A.2d 1262, 1267 (Pa. Super. Ct. 2004) ………………………8.

*Mzamane v. Winfrey,* 693 F.Supp.2d. 442 (E.D. Pa. 2010) ……………………………...……....13

*Myers-Macomber Engineers v. M.L.W. Construction Corp.*, 271 Pa.Super. 484, 414 A.2d 357 (1979) …………………………………………………………………………………23

*Neish v. Beaver Newspapers, Inc.*, 581 A.2d 619, 624 (Pa. Super. 1990), *alloc.den.*, 593 A.2d 421 (Pa. 1991) ……………………………………………………………….…24

*Norton v. Glenn*, 860 A.2d 48 (Pa. 2004) ……………………………………………………...…7

*Novelty Knitting Mills, Inc. v. Siskind*, 500 Pa. 432, 436, 457 A.2d 502, 503-04 (1983) ……....20

*Obsidian Fin. Grp., LLC v. Cox*, 812 F. Supp. 2d 1220, 1232–34 (D. Or. 2011)……………....…17

*Pappert v. TAP Pharm. Prods., Inc.*, 885 A.2d 1127 (Pa. Commw. 2005) ………………….....23

*Parano v. O'Connor,* 641 A.2d 607,609 (Pa. Super. Ct. 1994) ………………………………10

*Partners Coffee [Co., LLC v. Oceana Servs. & Prods. Co*], 700 F. Supp. 2d at [720,] 734 [(W.D. Pa. 2010) …………………………………………………………………………………..18

*Pasqualini v. Mortgageit. Inc.*, 498 F. Supp. 2d 659,671-72 (S.D.N.Y. 2007) ……………....11

*Paul v. Davis,* 424 U.S. 693, 697, 96 S.Ct. 1155, 1159, 47 L.Ed.2d 405 (1976) ………………11

*Petruska v. Gannon Univ.*, 462 F.3d 294, 310 (3d Cir. 2006) …………………………….…18

*Phillips v. County of Allegheny*, 515 F.3d 224, 2e4 (3d Cir.2008) …………...……………4, 22

*Phillips v. Selig,* 959 A.2d 420, 437 (Pa. Super. Ct. 2008) ……………………….…………21

*Pilchesky v. Gatelli,* 12 A.3d 430 (Pa.Super.2011) …………………………….…………12

*Pinkerton v. United States*, 328 U.S. 640, 646-647 1946 …………………………………22

*Planned Parenthood v. American Coalition of Life Activists,* 290 F.3d 1058 (9th Cir. 2002) …..16

*Price v. Chevrolet Motor Div. of General Motors Corp.*, 2000 PA Super 410, 765 A.2d 800, 43 U.C.C. Rep. Serv. 2d 593 (2000) …………………………………………………...…..20

*Reedy v. Evanson*, 615 F.3d 24 197, 231 (3d Cir. 2010) …………………………...………19

*Renk v. City of Pittsburgh*, 537 Pa. 68, 641 A.2d 289 (1994) …………………………….....13

*Rosenblatt v. Baer*, 383 U.S. 75, 86, 86 S.Ct. 669, 676 (1966) ……………………………..21

*Rosenblum v. Rosenblum,* 320 Pa. 103, 108-09, 181 A. 583, 585 (1935) ………………….....21

*Santillo v. Reed,* 634 A.2d 264 (Pa. Super. 1993) ……………………………………………24

*Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974) …………………………………………………3

*Sevast v. Kakouras* 915 A.2d 1147, 1153 (Pa. 2007) ……………………………………...…24

*Shedden v. Anadarko E. & P. Co., L.P, 136* A.*3d 485 (Pa. 2016)* ……………………………...20

*Sprague v. Philadelphia Newspapers, Inc* ……………………………………………………...16, 17

*State College Area Sch. Dist. v. Royal Bank of Canada,* 825 F. Supp. 2d 573, 584 (M.D. Pa. 2011) ……………………………………………………………………………18

*Stickney v. Chester County Communications, Ltd.,* 361 Pa.Super. 166, 522 A.2d 66 (1987) …..13

*Strickland v. Univ. of Scranton* …………………………………………………………… 22

*Thompson Coal Co. v. Pike Coal Co.,* …………………………………………...…22

*Trump v. Tarpley,* Case No. 424492V (Md. Cir. Ct. Feb. 1, 2017)………………..…….........9

*Unelko Corp. v. Rooney*, 912 F.2d 1049, 1056 (9th Cir.1990) …………………………….14

*United States v. Rowlee II,* 899 F.2d 1275, 1278 (2d Cir. 1990) …………………………..…16

*United States v. Williams*, 553 U.S. 285, 298 (2008) ……………………………………...22

*Veno v. Meredith,* 515 A.2d at 575 ……………………………………………………...13

*Walker v. Grand Cent. Sanitation, Inc.,* (Pa. Super. Ct. 1993) …………………………….11

*Weaver v. Franklin County,* 918 A.2d 194, 202 (Pa.Cmwlth. 2007) …………………………... 21

*Weaver v. Lancaster Newspapers, Inc.*, 926 A.2d 899 (Pa. 2007) ………………..…………12

*Williams v. Guzzardi,* 875 F.2d 46 (3d Cir. 1989) …………………………………………...19

*Wilson v. Am. Gen. Fin. Inc.,* Civil Action No.. 10-412 (W.D. Pa. Mar. 12, 2013) ………..…11

**Federal Rules**

FED. R. CIV. P 12 (b)(6) …………………………………………………………3
FED. R. CIV. P 9 (b) …………………………………………………..…………… 4
FED. R. CIV. P 8 (a)(2) …………………………………………………….……3
FED R. CIV. P 12(e) …………………………………………………………...6

**Rules**

42 Pa. C.S. §8343 (b) ……………………………………………………………10
Restatement (Second) of Torts § 652E, comment b and c …………….…..…….…………24
Restatement (Second) of Torts § 552 ……………………………………………18
Restatement (Second) of Torts § 569 ………………………….…...………………………12
Restatement (Second) of Torts §876 (1979) ……………………………………22

**United States Constitution**

First Amendment …………………………………………….…………….……6, 14, 16

**Constitution of Commonwealth of Pennsylvania**

Article 1, Section 7 …………………………………………………………...……7

## Other Authorities

- Kurtis Lee, "Some right-wing media sites under investigation for possible Russia ties," *Los Angeles Times,* March 21, 2017, http://www.latimes.com/politics/washington/la-na-essential-washington-updates-some-right-wing-sites-under-1490115530-htmlstory.html

- Tom O'Conner, "Alex Jones apologizes [and retracts] for "Pizzagate" Fake News," *Newsweek,* March 24, 2017, http://www.newsweek.com/alex-jones-apologize-pizzagate-fake-news-574025

- Alan Yuhas, 'Pizzagate' gunman pleads guilty as conspiracy theorist apologizes over case," *The Guardian,* March 25, 2017, https://www.theguardian.com/us-news/2017/mar/25/comet-ping-pong-alex-jones

- Derek Hawkins, "Sandy Hook hoaxer gets prison time for threatening 6-year-old victim's father," *Washington Post*, June 8, 2017, https://www.washingtonpost.com/news/morning-mix/wp/2017/06/08/sandy-hook-hoaxer-gets-prison-time-for-threatening-6-year-old-victims-father/?utm_term=.b8f52e4a912f;

- Michael Edison Hayden, "Fake News Story About Chuck Schumer Implodes After Pro-Trump Conspiracy Theorists Claim Source Went Dark," *Newsweek*,  December 13, 2017, http://www.newsweek.com/fake-news-story-chuck-schumer-implodes-747384, "We believe the individual responsible for forging the document should be prosecuted to the fullest extent of the law to prevent other malicious actors from doing the same."

- Amanda Robb,"Anatomy of a Fake News Scandal: Inside the web of conspiracy theorists, Russian operatives, Trump campaigners and Twitter bots who manufactured the 'news' that Hillary Clinton ran a pizza-restaurant child-sex ring," *Rolling Stones Magazine,* November 16, 2017, http://www.rollingstone.com/politics/news/pizzagate-anatomy-of-a-fake-news-scandal-w511904

- Tim Mak, "'Pizzagate' Gunman Liked Alex Jones: A gunman took a rifle, and apparently a bizarre online conspiracy, into a kid-friendly D.C. restaurant Sunday," *The Daily Beast,* December 4, 2016, https://www.thedailybeast.com/pizzagate-gunman-liked-alex-jones?ref=scroll

- "Former Fox News commentator sentenced to prison for faking CIA ties," *Reuters,* July 15, 2016, https://www.reuters.com/article/us-twenty-first-fox-crime-analyst/former-fox-news-commentator-sentenced-to-prison-for-faking-cia-ties-idUSKCN0ZV21Q

- Rachel Stockman, "Blogger Agrees to Pay Melania Trump 'Substantial Sum' to Settle 'Escort' Lawsuit," *LawNewz.com,* February 7, 2017, https://lawandcrime.com/high-profile/breaking-melania-trump-settles-escort-lawsuit-with-blogger-for-substantial-sum/

- "Jurors awards $3million in damages to U-Va. Administrator defamed by Rolling Stone," *USA Today,* November 7, 2016, https://www.usatoday.com/story/news/nation/2016/11/07/jurors-weigh-damages-rolling-stone-defamation-trial/93416190/

- "Judge adds $5M to Mike McQueary's $7M verdict against Penn State," November 30, 2016, *Associated Press,* http://www.chicagotribune.com/sports/college/ct-penn-state-abuse-spt-20161130-story.html

- Aaron Keller, "Record $274 Million Verdict Awarded Against Talk Show Host After Radio Rants," September 29, 2017, *LawandCrime.com,* https://lawandcrime.com/high-profile/record-274-million-verdict-awarded-against-talk-show-host-after-online-rants/

- Jon Levine, "Houston Chronicle Retracts 8 Stories After Fraud Investigation: 'We Apologize to Our Readers:'  "This investigation points to an egregious breach of that trust that is an offense to readers and journalists alike," says executive editor Nancy Barnes," *The Wrap*, November 9, 2018, https://www.thewrap.com/houston-chronicle-retracts-8-stories-after-fraud-investigation-we-apologize-to-our-readers/

- David Wood, "Following investigation, Houston Chronicle retracts eight stories: Action follows external review of former staff reporter accused of fabricating sources," *Houston Chronicle,* November 8, 2018, https://www.houstonchronicle.com/local/article/Following-investigation-Houston-Chronicle-13375132.php

- Steve Gorman, "Bundy follower gets 68 years for role in armed Nevada standoff," *Reuters,* July 26, 2017, https://www.reuters.com/article/us-nevada-militia-idUSKBN1AB2XF

- Guillermo Contreras, "Bond appeal denied for conspiracy theorist accused of harassing grieving Sutherland Springs," *MySanAntonio Express News*, June 26, 2018, https://www.mysanantonio.com/. "In denying the request for bond, Judge Garcia said Ussery is free to believe any conspiracy theory he chooses, but "he is not free to disturb the peace and tranquility of Sutherland Springs."

- John Haltiwanger, "FBI director shoots down mail bomber conspiracy theories: 'These are not hoax devices,"*Business Insider,* October 26, 2018, https://nordic.businessinsider.com/fbi-director-mail-bomber-conspiracy-theories-not-hoax-devices-2018-10/. "FBI Director Christopher Wray shot down "false flag" conspiracy theories about a series of attempted mail bombings of high-profile Democrats and other public figures this week."

- Jane Coaston and Andrew Prokop, "Jerome Corsi, the conspiracy theorist now entangled in the Mueller investigation, explained: What ties WikiLeaks, Jerome Corsi, and Roger Stone together? Mueller's team is trying to find out," *Vox,* Nov 28, 2018, https://www.vox.com/policy-and-politics/2018/11/28/18112717/jerome-corsi-mueller-roger-stone-donald-trump-wikileaks

- "Annapolis Shooting Suspect Wanted to 'Kill Every Person' in Newsroom, Letter States," *New York Times,* July 2, 2018, https://www.nytimes.com/2018/07/02/us/annapolis-shooting-woman-harassed.html

- Jason Wilson, "The far right: Doxxing, assault, death threats: the new dangers facing US journalists covering extremism: As violent street protests between the far right and anti-fascists become standard fare, rightwingers see the press as a threat – and aren't shy to act on it," *The Guardian,* June 14, 2018, https://www.theguardian.com/world/2018/jun/14/doxxing-assault-death-threats-the-new-dangers-facing-us-journalists-covering-extremism

- Nikki Battiste, "Man charged with making death threats against journalists over Trump editorials," *CBS News,* August 30, 2018, https://www.cbsnews.com/news/robert-chain-charged-death-threats-boston-globe-journalists-editorials/

- Adam B. Ellick and Adam Westbrook, "Operation Infektion: Russian Disinformation: From Cold War to Kanye," *New York Times,* Opinion Video Series, November 12, 2018, https://www.nytimes.com/2018/11/12/opinion/russia-meddling-disinformation-fake-news-elections.html  "WATCH: This is a three-part film series. ..Russia's meddling in the United States' elections is not a hoax. It's the culmination of Moscow's decades-long campaign to tear the West apart. "Operation InfeKtion" reveals the ways in which one of the Soviets' central tactics — the promulgation of lies about America — continues today, from Pizzagate to George Soros conspiracies."

- Kelly Weill, "How YouTube Pulled These Men Down a Vortex of Far-Right Hate: The algorithm that keeps people watching more and more videos has a dark side: It's being used to radicalize young people." *The Daily Beast,* December 17, 2018,

https://www.thedailybeast.com/how-youtube-pulled-these-men-down-a-vortex-of-far-right-hate.  "On Dec. 4, 2016, Edgar Welch fired an AR-15 rifle in a popular Washington, D.C. pizza restaurant. Welch believed Democrats were conducting child sex-trafficking through the pizzeria basement, a conspiracy theory called "Pizzagate."

Like many modern conspiracy theories, Pizzagate proliferated on YouTube and those videos appeared to influence Welch, who sent them to others. Three days before the shooting, Welch texted a friend about the conspiracy. "Watch 'PIZZAGATE: The bigger Picture' on YouTube," he wrote. Other YouTube-fed conspiracy theories have similarly resulted in threats of gun violence. A man who was heavily involved in conspiracy theory communities on YouTube allegedly threatened a massacre at YouTube headquarters this summer, after he came to believe a different conspiracy theory about video censorship."

**Note:** Defendants also falsely, and dangerously claim Plaintiff is a part of an operation to censor them (SAC § 350,  358, 363).

- Laignee Barron, "The U.S. Has Been Named as One of the Deadliest Places in the World for Journalists," *Time Magazine,*  December 19, 2018, http://time.com/5483773/us-deadliest-countries-journalists-deaths-2018/?utm_medium=social&utm_source=twitter.com&utm_campaign=time&xid=time_social flow_twitter

- David A. Anderson, *Is Libel Law Worth Reforming?*, 140 U. PA. L. Rev. 487, 490 (1991)

- *Burton v. Bojazi,* April Term 2005, No. 03551, 2005 Phila. Ct. Com. Pl. LEXIS 284, 75 Pa. D. & C. 4th 403 (C.C.P. Phila. June 17, 2005) (Abramson, J.)

- "Spiegel to file criminal complaint against cheating reporter [who reportedly made up stories , sources, and raised donations purportedly for orphaned Syrian children living in Turkey]" *AFP*, December 23, 2018, https://www.france24.com/en/20181223-spiegel-file-criminal-complaint-against-cheating-reporter

**Preliminary Statement**

As leading alternative media stars, Defendants Stephen Quayle ("Quayle") and Douglas Hagmann ("Hagmann") (collectively "Defendants") appear as long-time trusted experts on Alex Jones *Infowars.com*. Hagmann's popular talk radio show *The Hagmann and Hagmann Report* ("H&H Report"), where Quayle regularly appears, has an impressive U.S. and international reach, rivaling mainstream press outlets. By their accounts, in well over 70 countries.[1] Hagmann claimed on "one platform alone," H&H Report was downloaded "some 70 million" times in one year."[2] These platforms include *BlogTalkRadio, YouTube, SoundCloud.com, ITunes,* and *Global Star Network.* Defendants, public figures, publish and appear virtually daily in the media. Quayle has appeared on televangelist's *The Jim Bakker Show.*

Defendants are purported investigative journalists, private investigators, experts, authors, and Christian watchmen. They claim they have high-level government and financial "insider" "sources," and provide the news the "corrupt" mainstream press will not. Together, and separately, they have disseminated fear-based conspiracies as real "news;" have date-set imminent claims of marital law that come and go; and scared people into believing an economic collapses will happen any day for years. It is not a fluke that Quayle, a rarely admitted businessman, induces interstate and international commerce of precious metals, doomsday gear etc. they sell on H&H Report (SAC§ Exhibit18 § line 1299)–induced by their "news."[3]

Hagmann's "news," (Quayle echo chambered), and purported New York Police

---

[1] Accompanying and attached to this Opposition the Plaintiff has submitted a sworn declaration ("Plaintiff decl") dated December 31, 2018 with 93 marked exhibits, and three declarations. The present pleadings consist of the Plaintiff's Second Amended Complaint ("SAC") filed on October 1, 2018, attached to the Opposition as exhibits and incorporated therein.

[2] *See:* "The *Doug Hagmann Show, BTR*, November 15, 2017, Timestamp:  [25:32], http://www.blogtalkradio.com/the-doug-hagmann-radio-show/2017/11/14/criminality-of-the-communist-progressives-censorship-of-the-truth-seekers

[3] Plaintiff decl § ex 1-2 (Quayle's description. Excerpts from Hagmann's P.I. book (Sac § 7)

Department (NYPD) "source" made history. In part, as *Rolling Stone Magazine* reported in November 2017, Hagmann, among other individuals, in Defendants' self admitted conspiracy, they call their "Circle of Trust,"[4] inspired a North Carolina man into believing Hillary Clinton was running a child sex trafficking ring in a basement of a D.C. pizzeria with no basement. Mr. Edgar Maddison Welsh showed up at a D.C. pizzeria with a loaded AK-15 to "self investigate"; fired off shots, and is now in prison. Thankfully, no one was killed. (SAC § Exhibit 31)

Indeed. Defendants are sincere sounding, dangerous liars.  Their "news" can be categorically false, distortions of reality, and like screaming "fire" in a crowded theater.

This is why it is, and was, so damaging and dangerous when they defamed, and incited violence against the Plaintiff after she had corrected some of their false allegations made against U.S. government agencies *she had been assigned to report*—that according to a U.S. Intelligence Community's Report falls under *Russian propaganda.* (SAC § 325) History repeated itself.

From the get-go to its conclusion Defendants' Motion to Dismiss ("Def Motion") is based upon false narratives, omissions, and distortions of the pleadings that are not in SAC because they are not true. While Def Motion mischaracterizes SAC as being about  "playground-like name calling," "non –actionable" "hyperbole," and "opinion" (§ p.2, 4, 16 ),  in reality, Defendants' trusting audiences show the opposite is true*,* given they buy precious metals, doomsday gear, books, etc., from them (Defendants keep selling), send  them "tithes" and donations (or Defendants would stop seeking them), and some have showed up with guns who have acted on their non-hyperbolic statements and "news." (SAC § 108, 115, 336, 343, 413)

It appears the Defendants have confused this Court proceeding as one of their alternative

---

[4] To avoid repetition, references herein to Defendants' self admitted conspiracy ("Circle of Trust"), also known as "inner circle" or "remnant," includes individuals who are presently in it, and/or were previously a part of it. *See,* **Plaintiff decl § ex 77** where Quayle talks about his Russian friends.

media appearances, where anyone can pretend to be anything, and publish damaging and dangerous falsehoods with no accountability unless injured parties like the Plaintiff file a lawsuit.

Verifiable facts vs. provable falsities; journalism vs. pretend journalism; free speech vs. unprotected speech and a matter of law; and the weaponization of the Internet. This is this lawsuit in a nutshell. This lawsuit seeks to utilize the justice system to recompense the Plaintiff, clear her name, and attempt to begin to restore some honesty and integrity in the alternative media which is wrecking havoc, not just on the Plaintiff, but upon innocent U.S. citizens.

## LEGAL ARUGMENT

### I. A MOTION TO DISMISS UNDER RULE 12(B)(6) TESTS THE LEGAL FEASIBILITY AND SUFFICIENCY OF THE PLEADINGS—FRCP RULES 8 AND 9(B), TWOMBLY & IQBAL

The focus in ruling on a Motion to Dismiss is not on resolving the merits of the dispute. The Court must accept as true all allegations set out in the Complaint, and view all reasonable factual inferences in the light most favorable to the non-moving party. *Angelastro v. Prudential-Bache Securities, Inc.,* 764 F.2d 939, 944 (3d Cir. 1985). A claim will not be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) so long as it alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1974 (2007). "The issue is not whether a plaintiff will ultimately prevail but whether [it] is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). A motion to dismiss should be granted only if the complaint is unable to articulate "enough facts to state a claim to relief that is plausible on its face.*"Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). If the complaint contains sufficient "factual content" to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," the plaintiff has met its burden of stating a claim with "facial plausibility." *Iqbal*, 556 U.S. at 678. In considering such a motion, federal courts require notice pleading. Rule 8(a)(2)

provides that a complaint only needs to include "a short and plain statement of the claim showing that the pleader is entitled to relief." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 512, 554, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Def Motion (§ p.14) incorrectly claims SAC violates Rule 8(a) and is not plausible under *Twombly* and *Iqbal*.

> As the [U.S. Supreme] Court held in Twombly [citation omitted], the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. [Citation omitted]. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do [citation omitted]." Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."   129 S. Ct. at 1949.

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210-11 (3d Cir. 2009) (citing *Phillips v. County of Allegheny,* 515 F.3d 224, 234-35 (3d Cir. 2008)).

> This Court may not dismiss a Complaint because it appears unlikely or improbable that Plaintiff can prove the facts alleged or will ultimately prevail on the merits. *Twombly v Bell Atlantic Corp*, 550 U.S. at 563 n.8.  Instead, this Court must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements. *Twombly v Bell Atlantic Corp*, 550 U.S. at 556.  Generally speaking, a Complaint that provides adequate facts to establish "how, when, and where" will survive a Motion to Dismiss.  *Fowler v. UPMC Shadyside,* 578 F.3d 203, 212 (3d Cir. 2009).

> "Federal Rule of Civil Procedure 9(b) requires plaintiffs to plead claims of fraud or mistake with particularity." As courts typically look to the "circumstances constituting fraud," factors such as "time, place, contents of the false representation, the person making it, and what was obtained from it must be stated with specificity." This is a sensible formulation for affirmative misrepresentations because they "are discrete, observable events which can be particularized."[5] Just because a claim is not technically referred to as "fraud" does not mean it is automatically exempt from the heightened standard.[6]

> Further, the Third Circuit has held that to satisfy Rule 9(b), [as is required here], a plaintiff must "state the circumstances of the alleged fraud with sufficient particularity to place a defendant on notice of the 'precise misconduct with which [it is] charged.'" *Dimare v. Metlife Insurance Co.*, 369 Fed. App'x 324, at *329 (3d Cir. 2010) (quoting *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (alteration in original).

---

[5] 135. *Breeden v. Richmond Cmty. Coll.*, 171 F.R.D. 189, 195 (M.D.N.C. 1997) ("An affirmative misrepresentation involves a specific statement made at a specific place and time and involves specific persons.").

[6] *See Fairman,* supra note 100, at 1005 ("[I]f the claim is 'fraud-like,' specificity is required.").

No discovery has taken place. Thereby, Defendants' factual allegations must play no role. Moreover, such 'facts' are mere untested, allegations. Defendants received fair notice and know what has been alleged. Because the pleadings provide fair notice, there is no basis for a dismissal.

The SAC contains Defendants' defamatory and *per se* defamatory statements against the Plaintiff, the statements where Defendants bullied, intimidated and incited violence against her (SAC § 151, 348 ), and identifies whether Defendants' made these pre-planned, intentional false statements of facts in written form (libel) in Defendants' Feb 10, 2015 Joint Statement, or in spoken form (slander) on the H&H Report and the motive (SAC§ 120, 150, 207, 336-338, 445).

Plaintiff also included a list of statements which enumerate and delineate the libel *per se* from the slander *per se* (SAC §380-383).  This was done as a convenience, and does not limit the factual assertions in SAC.  A brief summary of this case which Def Motion needs this Court to pretend does not exist is at SAC § 118-120. A review of the entire SAC demonstrates that SAC meets the requirements under the Federal Rules and contains a detailed factual account of Defendants' ongoing tortious practices. SAC provides the motivation as to why Defendants caused this injury against her which establishes their liability, thus relief can be granted. Quayle has confirmed this, in part, when he published a precious metals "buy-back program" since this Action was filed. Indeed. Defendants' "sources" were fraudulent. (SAC § 150, 337-338).

Def Motion makes stuff up, distorts, omits, misleads, cherry picks, and claims Plaintiff admitted to things she did not admit to and misrepresents her pleadings. For *e.g.,*

(1)    Def Motion mocks and condemns Plaintiff for SAC's length (§ p. 2). In reality, SAC is lengthy, in part, as Defendants are prolific, serial defamers and Alex Jones, and other individuals injected themselves in this matter since this case was filed in 2015--to the Plaintiff's horror. (SAC § 277, 301, 337) They will not stop without judicial intervention. Further, she has been notifying Counsel all along. To feign surprise or outrage is absurd.

(2)    Def Motion claims (§ p 31) Plaintiff "struck back yet again with a 31-page single-spaced diatribe against Defendants on her website, which she fails to mention in her Complaint—" **False.** Her retraction and demand notice is cited (*See,* SAC § 259, Plaintiff decl § ex 47).

5

(3)     Def Motion § p. 1, 2 misrepresents why Plaintiff was ordered to amend; and disregarded what was said during our 8/9/18 conference call with the Honorable Susan Baxter, prior to Judge Baxter's Order §  (Dkt. 99) (Def Motion § p.25).

(4)     Def Motion § p 5 fraudulently misrepresents and omits how Plaintiff's article and disclaimer/updates, in reality, really ends. *See,* Plaintiff decl § ex § 56-57

(5)     Def Motion needs this Court to also ignore the spoliation and removal of evidence. Further, since filing SAC Defendants have removed yet another website with relevant evidence— the opposite of what innocent people do.  (SAC § 368-378, Plaintiff decl § ex § 5-8)

On one hand Defendants claimed deficiencies in "Plaintiff's "difficult to decipher" pleadings (for *e.g.* § p 12), on the other hand they failed to make any good faith attempts regarding curing them. They did not specify any statement(s) that they consider to be defective, and did not file a motion for a more definitive statement pursuant to Fed R. Civ. Proc. 12(e).

For expediency sake, to not burden the Court, the Plaintiff expressly rejects each claim, misrepresentation, falsity, false motive, and distortion of the pleadings in Def Motion.

## II.  Plaintiff Permissibly and Adequately Pleaded Her  Causes of Action

Defendants offer several arguments contending Plaintiff failed to state a claim. Defendants are wrong, and their motion fails on its merits. Plaintiff, in general, and specifically, has addressed this in SAC, and does not desire to burden the Court with a repetition of those arguments. Thus, she is incorporating them herein, and summarizing the applicable principles. In addition this Court may determine additional Counts are applicable.

[I]t is well settled that this Court must construe a *pro se* litigant's pleadings liberally. *See Higgs v. Atty. Gen. of the United States*, 655 F.3d 333, 339 (3d Cir. 2011) ("The obligation to liberally construe a *pro se* litigant's pleadings is well-established.") (citing cases). *See also*: *Castro v. United States,* 540 U.S.  375, 381-82, 124 S. Ct. 786, 791-92, 157 L. Ed. 2d 778 (2003) (internal citations omitted); and *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003) (noting that courts must liberally construe pro se filings and "apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name").

## A.  Plaintiff's claims are Not Barred by the First Amendment (Count I)

Attorneys predictably argue their client's remarks are never defamatory and file motions to dismiss when no discovery has taken place, and freedom of speech is not the freedom to defame *or to defraud* or incite violence. Here in this case, it was not lawful for Defendants to have exploited Plaintiff, *per se* defamed, incited violence against her when she would not be complicit in any potential funny business or aid and abet it. (SAC § 95-102, 118-120, 224-239, 265). Moreover, without defamation law, public discourse "would have no necessary anchor in truth." David A. Anderson, *Is Libel Law Worth Reforming?*, 140 U. PA. L. Rev. 487, 490 (1991).

> Pennsylvania's Constitution relegates free speech to a less-prominent position in Article 1, Section 7, and even then cautions the free speaker that he or she shall be "responsible for the abuse of that liberty." Thus, Pennsylvania law closely guards the ability of a person whose reputation has been injured by defamatory statements to obtain redress for such injury. In *American Future Systems v. Better Business Bureau*, 592 Pa. 66, 923 A.2d 389 (2007), the Court explained that the Pennsylvania Constitution "places reputational interests on the highest plane, that is, on the same level as those pertaining to life, liberty, and property." *Id*. at 77 n.7, 923 A.2d at 395 n.7; *see* Pa. Const. art. I § 1 ("All men have certain inherent and indefeasible rights, among which are those of enjoying and defending reputation."); *id*. § 11 ("[E]very man for an injury done him in his reputation shall have remedy by due course of law."); *Norton v. Glenn*, 580 Pa. 212, 22526, 860 A.2d 48, 56 (2004) ("The right of a man to the protection of his own reputation from unjustified invasion and wrongful hurt reflects no more than our basic concept of the essential dignity and worth of every human being," (quoting *Milkovich v. Lorain Journal Co*., 497 U.S. 1, 22, 110 S.Ct. 2695, 2708 (1990))). *See also Rosenblatt v. Baer*, 383 U.S. 75, 86, 86 S.Ct. 669, 676 (1966) (recognizing that "[s]ociety has a pervasive and strong interest in preventing and redressing attacks upon reputation").

This interest has urgently escalated given (1) the rise of the Internet, the alternative media, and social media; (2) the ongoing inquires into the alternative media post the 2016 Presidential Election and the Russia probes;[7] (3) harmful real world consequences of fake news; (4) coupled by criminal prosecutions of individuals who have acted upon false information they believed to be true published, disseminated, and/or echo chambered online by individuals like, and including

---

[7] Dkt. No. 66-68. Plaintiff notified SDNY when Hagmann acknowledged he and others in Defendants' Circle of Trust are among media outlets in the Russia probes.

Defendants and others in their Circle of Trust.[8]

The Plaintiff alleged the Defendant intentionally, willfully and with actual malice, told false, and heinous statements regarding her to irreparably harm her reputation for the rest of her life which damaged her personally and professionally, to deter third persons from associating or dealing with her. *Moore v. Cobb-Nettleton,* 889 A.2d 1262, 1267 (Pa. Super. Ct. 2004) (quoting *Elia v. Erie Ins. Exch.,* 634 A.2d 657, 660 (Pa. Super. Ct. 1993)). The statements are not privileged, and were made without prior authorization upon which their trusting, loyal and Christian Conservative audiences would believe, resulting in both actual monetary damage ("the loss of something having economic or pecuniary value") and an injury that "impugns the basic integrity or creditworthiness of a business." *Celle v. Filipino Reporter Enterprises Inc.*, 209 F.3d 163, 179-180 (2d Cir. 2000). *See also*, *Bell v. Mayyiew State Hosp.,* 853 A.2d 1058, 1061 (Pa. Super. Ct. 2005). Thus, no immunity exists. The jury can award damages.

Def Motions recklessly attempts to redefine journalism and claims "Plaintiff Strikes First Blood," "threw the first punch," in a "war of words," using typical inflammatory language they use in the alternative media (§ p. 7, 21). Plaintiff did not provoke anyone. She was assigned their false NSA targeting allegation—at Hagmann's request (SAC§ 35). She did not seek it or them out. Defendants failed to co-opt her into their Circle of Trust and had months to retract and apologize. They did not. Hagmann continued to peddle their false NSA allegation as if it were true, among other falsities like "news" from Defendants' <u>fraudulent</u> "sources" (SAC § 72, 172, 263, 301-331). Both continue to defame and intimidate her.[9]   Moreover, contrary to Def Motion,

---

[8] *See,* "Sandy Hook hoaxer gets prison time for threatening 6-year-old victim's father," *Washington Post*, June 8, 2017.  *See also, for e.g.,* Plaintiff decl § ex 72
[9] Plaintiff decl § ex 78-83, 85-86. *See also:* Jon Levine, "Houston Chronicle Retracts 8 Stories After Fraud Investigation: 'We Apologize to Our Readers:'  "This investigation points to an egregious breach of that trust that is an offense to readers and journalists alike," says executive

Defendants are staunch advocates of defamation lawsuits—if they file them and/or individuals like Sheriff Joe Arpaio file them. (Plaintiff decl.§ **ex 10-14** ) Thus, Def Motion is folly.

Even if any of Def Motions' claims were true and in context, and they are not, they would be irrelevant. Unsurprisingly, Defendants are essentially arguing that journalists, (everyone, really), should look the other way, be complicit, ignore Defendants verifiable history of fear-porn-for profit-conspiracy-peddling disguised as "news," and fraudulent sources for who they are—fraudulent, and thereby be culpable and exposed to potential liability of their wrongdoing. Defendants' arguments fail, but are not surprising. Most importantly, their arguments fail as a matter of law. The true context here is Plaintiff is morally, ethically and legally obligated to correct false allegations and update her reporting. *See* generally *Alharbi v. Beck et al*, MA Cir. No. 14-11550 (settled), *Eramo v. Rolling Stone LLC et al,* VA Cir. No. 3:15-cv-00023 U.S. (jury found defendants guilty of defamation with actual malice, awarded $3 million.); *Trump v. Tarpley,* Case No. 424492V (Md. Cir. Ct. Feb. 1, 2017) (settled with a blogger); and *Anagnost et al v The Mortgage Specialists, Inc. and Gill.* No. 216-2016-cv-277, NH Cir. 2017 ($272 million jury award against a talk radio host).

Indeed. The mainstream and alternative media must conduct themselves lawfully. In all cases, defendants' motions to dismiss were denied. Here, it should be the same. Without contrition, Defendants continue to demand she be complicit in their tortious online conduct.[10]

In Pennsylvania a claim for slander *per se* requires a defamatory statement, published by the defendant, applicable to the plaintiff, understood by the recipient to be defamatory, and imputing "(1) criminal offense, (2) loathsome disease, (3) business misconduct, or (4)

---

editor Nancy Barnes," *The Wrap*, November 9, 2018, https://www.thewrap.com/houston-chronicle-retracts-8-stories-after-fraud-investigation-we-apologize-to-our-readers/,
[10] "Pizzagate' gunman pleads guilty as conspiracy theorist [Alex Jones] apologizes over case," *The Guardian,* March 25, 2017.

serious sexual misconduct." *Clemente v. Espinosa*, 749 F. Supp. 672, 677 (E.D. Pa. 1990);

and *Brinich v. Jencka,* 757 A.2d 388, 397 (Pa. Super. Ct. 2000). In addition,

> In Pennsylvania "[a] communication is ... defamatory if it ascribes to another conduct, character or a condition that would adversely affect his fitness for the proper conduct of his proper business, trade or profession." *Constantino v. Univ. of Pittsburgh,* 766 A.2d 1265, 1270 (Pa. Super. Ct. 2001) (quoting *Maier v. Maretti,* 671 A.2d 701,704 (Pa. Super. Ct. 1995)). In determining whether a communication is defamatory, the Court "must consider the effect the statement would fairly produce, or the impression it would naturally engender, in the minds of the average persons among whom <u>it is intended to circulate."</u> *Maier,* 671 A.2d at 704 (citation omitted). Judges and juries must give the words contained in the communication "<u>the same significance that other people are likely to attribute to them."</u> *Id.* (citing *Livingston v. Murray,* 612 A.2d 443 (Pa. Super. Ct. 1992)). The "<u>nature of the audience" to whom the communication is directed is a "critical factor" in determining whether the communication is capable of defamatory meaning.</u> *Maier,* 671 A.2d at 704 (citations omitted). While "personal annoyance and embarrassment ... are not the sorts of injury that will support a defamation claim," *Parano v. O'Connor,* 641 A.2d 607,609 (Pa. Super. Ct. 1994) (citation omitted), "no demonstration of any actual harm to reputation is necessary." *Devon Robotics v. Deviedma,* No. 09-cv-3552*,* 2009 U.S. Dist. LEXIS 112077, at *24 (citing *Marcone v. Penthouse Int'l Magazine for Men,* 754 F.2d 1072, 1081 (3d Cir. 1985)). (Plaintiff emphasis)

Plaintiff's pleadings repeatedly refer to Defendants' trusting Christian, Conservative audience—the "intended" audience, as do Defendants. *See ,for e.g*., SAC § 73, 89, 99, 115, 120, 135, 140, 155, 159, 189, 309, 311. It cannot be overstated how millions of people *literally* believe Defendants' are reporting the real "news," thereby, believed each and every defamatory statement concerning the Plaintiff including when they twisted Bible scripture, claimed she "sleeps with the devil," and their Satanic talk (SAC §159) (Plaintiff decl. § ex.3, 73, 77, 79).

Def Motion must also be denied so Defendants may comply with 42 Pa. C.S. §8343 (b) (SAC § 387). As Plaintiff's pleadings repeatedly state, they provided no proof of their claims as none exists—they are "impossible to be true," thus were made with actual malice. While Def Motions takes the pleadings out of context for obvious reasons, following is an *e.g.* of the true context. Defendants' had claimed Plaintiff had committed crimes (threats, intimidation, stalking, harassment) against them and their families (SAC §136, 146, 380). These actionable, non-

10

hyperbolic statements are <u>impossible to be true</u>. She has never been to Montana or Erie..

In *Marcone v. Penthouse Intern, Ltd.,* (E.D.Pa. 1983), 577 F. Supp. 318 (E.D. Pa. 1983), As… the Court stated in its earlier Memorandum, 533 F. Supp. at 358, 361, the defamatory statements at issue impute to the plaintiff the commission of an indictable crime, and they are therefore actionable as libel per se and do not require proof of special harm, that is, harm of a pecuniary nature. *See, Paul v. Davis,* 424 U.S. 693, 697, 96 S.Ct. 1155, 1159, 47 L.Ed.2d 405 (1976) ("Imputing criminal behavior to an individual is generally considered defamatory per se, and actionable without proof of special damages."); and *Altoonas Clay Products, Inc. v. Dun Bradstreet, Inc.*, 367 F.2d 625, 628 (3d Cir. 1966) (reserving the question whether all libels are actionable per se in PA).

In *McCusker v. HIBU PLC et a*l cv-15-2659 (E.D. N.Y 2016), in an order denying

defendants' motion to dismiss (citing Pennsylvania and New York case law), quotes, in part,

*Pasqualini v. Mortgageit. Inc.*, 498 F. Supp. 2d 659,671-72 (S.D.N.Y. 2007) (sustaining Plaintiffs defamation claim in response to a motion to dismiss where an email sent regarding Plaintiff's termination described her as "disloyal and incompetent"); *see also Agriss v. Roadway Express. Inc.,* 483 A.2d 456 (Pa. Super. Ct. 1984) (finding statement published to employee's supervisor and co-workers concerning plaintiffs opening of company mail to be defamatory because it implied plaintiff had committed a crime).

In addition, *Wilson v. Am. Gen. Fin. Inc.,* Civil Action No.. 10-412 (W.D. Pa. Mar. 12,

2013) determined, "A publication imputing unworthiness of credit is libelous." *Altoona Clay*

*Prods., Inc. v. Dun & Bradstreet, Inc., 367 F.2d 625, 630-31 (3d Cir. 1966)...Words*

*recognized as injurious on their face are actionable per se.*

## Actual Malice Is Already Verifiable

[R]recent cases have permitted presumed damages in cases where actual malice was present. In *Franklin Prescriptions, Inc. v. New York Times Co.*, 424 F.3d 336, 342 (3d Cir. 2005), the Third Circuit stated that "[a]lthough *Walker v. Grand Cent. Sanitation, Inc.,* (Pa. Super. Ct. 1993) appears generally to foreclose presumed damages under Pennsylvania law, it is not entirely clear whether presumed damages remain available where the plaintiff proves actual malice… "The jury charge, while omitting the term "defamation per se," made clear that *Franklin Prescriptions* was not required to prove financial harm. The jury charge was explicit that "actual injury can include impairment of reputation," that *Franklin Prescriptions* should be compensated for "all harm it suffered," and that the jury could compensate for "the actual harm to the plaintiff's reputation." … The District Court accurately charged that the jury could award compensation based on harm to reputation alone."

* * *

Notably, a recent Pennsylvania Superior Court concluded that "presumed damages do indeed remain available upon a showing of actual malice."*Joseph v. Scranton Times, L.P.,* 89 A.3d

251, 272 (Pa. Super. Ct. 2014).  Actual malice is when a statement is made "with knowledge that [the statement] was false or with reckless disregard of whether it was false or not."  *Id. at 261 (quoting Lewis v. Phila. Newspapers, Inc.,* 833 A.2d 185, 191 (Pa. Super. Ct. 2003)). Therefore, this Court is bound to conclude that Pennsylvania permits presumed damages in defamation *per se* claims when actual malice is pleaded and proven.  Consistent with Restatement (Second) of Torts § 569, Pennsylvania case law holds that proof of special harm, *i.e.*, monetary damages, is not a prerequisite to recovery in a defamation libel matter.  *See Pilchesky v. Gatelli,* 12 A.3d 430 (Pa.Super. 2011); and *Agriss,* 483 A.2d at 472–74.

Defendants' claims are not credible. They are malicious and actionable given Plaintiff's corrective reporting about them was *true* (not defamatory), legally necessary, <u>prescient</u>— not "payback." Further, as Counsel knows none of Defendants "sources" she had identified have appeared on H&H Report again –as they are not reputable (SAC§ 92-96, 118-120, 224-239).

In addition, this Court may determine actual malice is already demonstrable given Defendants' February 10, 2015 Joint statement was removed, altered, and republished on another one of Hagmann's websites, *twice* since its initial publication (SAC §126-130).

> *Weaver v. Lancaster Newspapers, Inc.*, 926 A.2d 899 (Pa. 2007) held that republication of a defamatory statement is relevant and admissible to prove the publisher's state of mind concerning actual malice in regard to the initial publication. Moreover, in *Weaver v Lanscaster,* the <u>Pennsylvania Supreme Court indicated that, in a defamation case in Pennsylvania, the most minimal evidence of actual malice will defeat a motion for summary judgment.</u> The court held that evidence of Brownstein's republication of the letter was relevant because Brownstein's willingness to republish the defamatory statements, even after Weaver filed suit alleging that they were false, could possibly indicate that Brownstein's original publication was made with disregard for the truth. (emphasis Plaintiff)

*See* also *Castellani v. Scranton Times* (2015).  In fact, <u>none</u> of Defendants' infringing content has been removed (nearly <u>four years and counting)</u>, and remains available to the public <u>worldwide</u>. When Counsel resubmitted Defendants' Feb 10 2015 Joint Statement for "convenience," the original version, they failed to address the republished, altered versions. (Rosen Decl § Ex B v. SAC § 126-130 Ex 19-21) Also, Defendants' Feb 10 transcript is not fully legible  (Rosen Decl § Ex A). Plaintiff's transcript exhibit is legible (SAC § Ex 18).

Likewise, evidence of unexplained distortion or the absence of any factual basis to

support an accusation may be considered in determining whether the record is sufficient to support a finding of "actual malice". *Stickney v. Chester County Communications, Ltd.,* 361 Pa.Super. 166, 522 A.2d 66 (1987).  *See also Frisk v. News Company,* 361 Pa.Super. 536, 523 A.2d 347 (1986) (clear departures from acceptable journalistic procedures, including the lack of adequate prepublication investigation; the use of wholly speculative accusations and accusatory inferences; and the failure to utilize or employ effective editorial review, were sufficient to support finding of reckless disregard for the falsity of the information).

Here again, it appears Plaintiff may already have crossed the actual malice threshold, given Defendants stated in their Feb 10, 2015 Radio Broadcast and Joint Statement their factual assertions were intentional and planned for a "lengthy period" of time with "the counsel of" others.  (SAC§ 132, 136, 153)  While Counsel disingenuously tries to convince this Court Defendants defamatory statements against the Plaintiff are "non-actionable" in reality, they are and were premeditated, intentional, malicious false factual statements. Thus, Defendants have negated their own arguments and purported defenses again. *See also*:

Section 8550 of the Tort Claims Act, "willful misconduct" means "willful misconduct aforethought" and is synonymous with "intentional tort." R.H.S., 936 A.2d at 1230 (citing *Renk v. City of Pittsburgh*, 537 Pa. 68, 641 A.2d 289 (1994); *Kuzel v. Krause,* 658 A.2d 856 (Pa. Cmwlth. 1995)). Willful misconduct means the actor "desired to bring about the result that followed, or at least that he was aware that it was substantially certain to ensue." *Id.* (citing *Evans v. Phila. Transp. Co.,* 418 Pa. 567, 574, 212 A.2d 440, 443 (1965)).  " … defendant made a false and defamatory statement with actual malice, *Am. Future Sys., Inc. v. Better Bus. Bureau of E. Pennsylvania*, 923 A.2d 389, 400 (Pa. 2007).

Here, none of the Defendants' statements can be construed as opinion or hyperbole. They can be proven false. Courts have also held the issue of whether Defendants "expressions constitute opinion is one for discovery." *See Mzamane v. Winfrey,* 693 F.Supp.2d. 442 (E.D. Pa. 2010) (interpreting Pennsylvania law); and *Kurowski v. Burroughs,* 994 A.2d 611 (Pa. Super. 2010).

Moreover, a statement in the form of an opinion may be actionable if it "may reasonably be understood to imply the existence of *undisclosed* defamatory facts justifying the opinion." *Veno v. Meredith,* 515 A.2d at 575 (citation omitted) (emphasis in original). Here, Defendants, echo-

chambering each other, stated they had an additional "9,000 words" about the Plaintiff and Kirk McLeod and were releasing "just enough …" (SAC §153 ), thus negating Def Motion <u>again.</u>

Defaming and inciting violence against the Plaintiff was not done in the public's interests. At minimum, it was done for Defendants' pecuniary interests. Plaintiff's corrective reporting (SAC §110, 112)(Plaintiff decl § ex 28-30), did, and does involve a matter of public concern, and is newsworthy. The Defendants were not acting in self defense. They have no defense. *See:*

> *American Future Sys. v. Better Business Bureau of Eastern Pa.*, 872 A.2d 1202, 1210-11 (Pa.Super. 2005).   Accordingly, the Superior Court panel found no error in the trial court's jury charge.  *Cf. Unelko Corp. v. Rooney*, 912 F.2d 1049, 1056 (9th Cir.1990) (finding that a statement concerning the effectiveness of a consumer product addressed a matter of public concern…)

**Plaintiff is a Private Citizen and Was Not an All Purpose Public Figure**

In *New York Times Co. v. Sullivan*, the Supreme Court held that when the press publishes a defamatory statement about a public official, the publication is protected by the First Amendment unless the official proves that the press published the statement with actual malice. 376 U.S. 254, 281 (1964). This rule applies not only to public officials but to any public figure. *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 342 (1974). Defendants are public figures. Plaintiff arguably is not. She was *assigned their* false NSA targeting allegation, and she corrected it as is proper, *and lawful.* Thus, Plaintiff was only a tangential participant in the controversy. She is not a limited public figure. Should the Court, disagree, as demonstrated above, she has already met the actual malice standard. Further, as a direct result of this incident, a weaponized Internet, and for her safety, Plaintiff has not entered the public arena in the mainstream or alternative media or actively sought publicity in this controversy. Thus, all subsequent false, and intimidating statements fall under private figure status (SAC §343-359). The majority of Plaintiff's career has been offline working on other people's projects (SAC §1,

Plaintiff decl § ex -87-93).

Plaintiff wants this matter tried in a Court of Law. This is in contrast to Defendants who seemingly live online (SAC § 344-346), and have been prejudicing this case in the court of public opinion. Unlike Defendants' heavily trafficked websites, her website, is not a media outlet with contributor content, updated regularly, or a news aggregator. It is an author website. She does not promote her website. It garners little traffic.  She sends out retraction notices and DMCA takedown requests, like others must do in an increasingly lawless, hostile Internet. Def Motion also attempts to create false equivalences between the parties which cannot exist. *E.g.:*

i.  To compare Plaintiff with Defendants who manufacture bona fides and "evidence," and echo chamber each other for years, with her, who does not, is obscene. (SAC § 232, 270)

ii.  To compare Plaintiff, who represents herself, shines a light on potential funny business, corrects errors she unwittingly might've made on her own volition, who will not be complicit, with Defendants, who do not correct falsehoods, defame, bully, threaten, gaslight, incite people, and hire lawyers to try to give this known conduct a free pass is obscene.

iii.  To compare Plaintiff who did not defame or incite violence against Defendants (Def Motion § p.9, 10, 20, 21, 22) with Defendants, who do over and over again for years is obscene.

iv.  To compare Plaintiff who understands and adheres to the basic concept of "Thou shall not bear false witness" with Defendants who do not is obscene.  (Def Motion p.1, 34)

v.  To compare Plaintiff who does not pick the pockets of the elderly (or any age), with Defendants who do repeatedly for years is obscene. (*See also:* Plaintiff decl § ex 79-83)

vi.  To compare, private citizen, Plaintiff's dusty, dormant author website which always had low traffic, she maintains, in part, because of this ongoing litigation, to Defendants (who removed two (2) websites from the Internet with relevant evidence) and their Circle of Trusts' multiple websites, and platforms, who appear publicly virtually daily, where before, during and after these incidents as detailed in SAC, they reach millions of people and induce multimillion dollar interstate and international commerce of wares they sell, market and cross promote online, based upon their (non-hyperbolic) "news" is obscene.[11]

vii.  To compare Plaintiff who cannot and did not  publish a precious metals "buy back" program (because she does not sell precious metals or any expensive wares and never has),

---

[11]*See*: SAC § Exhibit 18 § line 390-395. Quayle claims he receives 300-400 emails daily from his audiences. Hagmann claims he has thousands of emails. *See,* Hagmann's "America Take Note: Dr. Jerome Corsi is NOT Sucidal," *CFP,* December 2, 2018, https://canadafreepress.com/article/america-take-note-dr.-jerome-corsi-is-not-suicidal.

with Defendants who did and do after she substantiated this Action on February 5, 2018 is obscene. Def Motion is fallacious and knowing false. *See:*

*Am. Future Sys., Inc. v. Better Bus. Bureau of E. Pa*., 923 A.2d 389, 395 (Pa. 2007) (additional citation omitted), citing, *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342 (1974) *Gertz* as follows. "We would not lightly assume that a citizen's participation in community and professional affairs rendered him a public figure for all purposes. Absent clear evidence of general fame or notoriety in the community, and pervasive involvement in the affairs of society, an individual should not be deemed a public personality for all aspects of his life." *Id.* at 14 - 15, quoting *Gertz*, supra at 352… *Gertz v Welch*, 418 U.S. at 344, 94 S.Ct. at 3009 ("Public officials and public figures usually enjoy significantly greater access to the channels of effective communication and hence have a more realistic opportunity to counteract false statements than private individuals normally enjoy.").

Plaintiff is horrified, appalled and deeply concerned by Defendants' longstanding conduct, and what they tried to co-opt her into and/or to be potentially complicit in. Others have noticed too and are reporting on them (*for e.g.* SAC § Exhibit 31, Plaintiff decl § ex 3).[12]

In *Planned Parenthood v. American Coalition of Life Activists,* 290 F.3d 1058, 1079-82 (9th Cir. 2002) (the "Nuremburg Files" case), the Ninth Circuit held, in an en banc decision, that threats and intimidation may be actionable without violating the First Amendment, and that there is no freedom of association for the purpose of making such threats and intimidation.[13] *See*, also: *United States v. Rowlee II,* 899 F.2d 1275, 1278 (2d Cir. 1990) ("It rarely has been suggested that the constitutional freedom for speech …extends its immunity to speech or writing used as an integral part of conduct in violation of a valid …statute").[14] *See, also: Sprague v. Philadelphia*

---

[12] *See also:* Seth Abramson, "Proof of Collusion: How Trump Betrayed America," *Simon and Schuster,* November 2018, p. 208-214

[13] To guard against a "chilling effect," the Court has the power to set guidelines for proof and evidence and to issue jury instructions to mitigate any concerns over unnecessary encroachment on free speech or association. *See, Humanitarian Law Project v. United States Dept. of Justice*, 352 F.3d 382 (statute construed to have an element of *mens rea* to preserve constitutionality). As this case is at the pleading stage, this need not be addressed, at this time.

[14] The standards for First Amendment protection are higher in a criminal case. This is a civil case. It does not chill free speech, if anything; it would "chill" Defendants specific behavior.

*Newspapers, Inc.* "Judge issues opinion affirming $34 million libel award."[15]

Lastly, in *McQueary v The Pennsylvania State University,* Dkt: 2012-1804, (PA Comm 2016), the "Judge added $5M to [whistleblower] Mike McQueary's $7M jury verdict against Penn State," in part, for being defamed and misrepresented *for doing what was right* (Plaintiff decl § ex 51). Here too, Plaintiff blew the whistle on Defendants' false allegations and their fraudulent "sources" beginning in 2014.  Therefore, Def Motion should be denied in its entirety.

## B.  Fraudulent Misrepresentation (count 2) – (*See also* SAC § 172, 301)

Def Motion (§ p. 14, 25, 26)  claims Plaintiff's counts are "couched" in defamation. Def Motion is wrong." Excerpts from Hagmann's book "Tactical Surveillance: The Investigator's Bible," also verifies this, and why Def Motion must be denied. Defendants, longtime friends, associates, like "brothers," knew what they were doing, and have been doing, was wrong, but they did it and do it anyways. The longer this case goes, the worse it seems to be. (Plaintiff decl § ex 1-2).[16] (*for e.g.,* SAC § 7, 23, 36-39, 42, 49, 118-120, 172, 224, 422-423)

Under Pennsylvania law, the elements of fraud include: "(1) a representation; (2) material to the transaction; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another to rely on the misrepresentation; (5) justifiable reliance on the misrepresentation; and (6) injury proximately caused by the reliance on the misrepresentation." *Gibbs v. Ernst,* 647 A.2d 882, 889 (Pa.1994); *Eigen v. Textron Lycoming Reciprocating Engine Div.*, 874 A.2d 1179, 1185 (Pa. Super. Ct. 2005) (applying the same standard to a fraudulent inducement claim). Although a party alleging fraudulent inducement must "point to a specific statement that caused a particular harm," *De Lage Landen Fin. Servs., Inc. v. Rasa Floors, LP,* 792 F. Supp. 2d 812, 837 (E.D. Pa. 2011), "[a] statement

---

[15] https://www.rcfp.org/browse-media-law-resources/news/judge-issues-opinion-affirming-34-million-libel-award; *See also,* The Ninth Circuit held in *Obsidian Fin. Grp., LLC v. Cox,* 812 F. Supp. 2d 1220, 1232–34 (D. Or. 2011), a December 25, 2010 blog post on bankruptcycorruption.com made "fairly specific allegations [that] a reasonable reader could understand . . . to imply a provable fact assertion. "The district judge therefore allowed that single defamation claim to proceed to a jury trial. The jury found in favor of Padrick and Obsidian, awarding the former $1.5 million and the latter $1 million…" (Emphasis Plaintiff) https://www.rcfp.org/browse-media-law-resources/news/judge-issues-opinion-affirming-34-million-libel-award
[16]*See also,* Plaintiff's Rejection Notice Dkt. No. 56-59 for further discussion.

of present intention which is false when uttered may constitute a fraudulent misrepresentation of fact." *Mellon Bank Corp. v. First Union Real Estate Equity & Mortg. Investments*, 951 F.2d 1399, 1409 (3d Cir. 1991). In other words, "[a] representation of the maker's own intention to do or not to do a particular thing is fraudulent if he does not have that intention." *Id.* at 1410.

Def Motion reminds the Plaintiff of the fairy tale "The Emperor Has No Clothes." SAC also describes Hagmann's failure to follow through with his representations. *Petruska v. Gannon Univ.*, 462 F.3d 294, 310 (3d Cir. 2006) (quoting *Martin v. Lancaster Battery Co.*, 606 A.2d 444, 448 (Pa. 1992)).[17]  (SAC § 36, 39, 40-42, 253, 263, 326-327)

## C.  Negligent Misrepresentation (Count 3)  (*See also* SAC § 436) [18]

Pennsylvania has adopted the Restatement (Second) of Torts § 552 governing negligent misrepresentation. *See Gibbs v. Ernst, 538 Pa. 193, 647 A.2d 882, 890 (1994)* (discussing and adopting § 552). That section provides that liability exists for negligent misrepresentation where: (1) the defendant, in the course of his business or in a transaction in which he has a pecuniary interest, supplied false information with respect to that transaction or business; (2) the plaintiff justifiably relied on the false information in making a decision; and (3) the defendant was negligent in failing to exercise the reasonable care necessary in providing the information, that is, he either knew or should have known the truth or falsity of his representation. Pennsylvania courts have determined that a lack of privity is not necessarily fatal to a party's negligent misrepresentation claim where it is shown that the defendant knew or should have known that a non-client may rely on his representations. *See Bilt–Rite Contractors v. Architectural Studio,* 581 Pa. 454, 866 A.2d 270, 285 (2005) ("[T]here is no requirement of privity in order to recover under § 552."). Negligent misrepresentation can be distinguished from intentional misrepresentation in that, to find liability for the former, the defendant need not necessarily have known that his words, when spoken, were untrue; it is sufficient to find liability that the defendant "failed to make reasonable investigation of the truth of those words." *Gibbs,* 647 A.2d at 890. Importantly, "[a] negligent misrepresentation claim requires an actual misrepresentation as opposed to assumptions on the part of the recipient." *Partners Coffee [Co., LLC v. Oceana Servs. & Prods. Co]*, 700 F. Supp. 2d at [720,] 734 [(W.D. Pa. 2010)] (citing *Bortz v. Noon*, 556 Pa. 489, 729 A.2d 555, 561 (1999)). *State College Area Sch. Dist. v. Royal Bank of Canada,* 825 F. Supp. 2d 573, 584 (M.D. Pa. 2011) (some citations omitted).

---

[17] **Note:** Since Plaintiff filed this Action other journalists have been targeted for fraud. *See*, "Fake News Story About Chuck Schumer Implodes After Pro-Trump Conspiracy Theorists Claim Source Went Dark," *Newsweek*,  December 13, 2017, "We believe the individual responsible for forging the document should be prosecuted to the fullest extent of the law to prevent other malicious actors from doing the same." Yes. So does the Plaintiff.
[18] *See also, FTC v. World Patent Marketing, Inc. et al*, SDFL, 1:2017-cv-20848

Pennsylvania's intermediate appellate court has expanded the scope of liability for negligent misrepresentation to include a class of potential defendants far beyond those expressly exposed under a prior ruling. The September 27, 2017, decision by the Pennsylvania Superior Court in *Fulton Bank, N.A. v. Sandquist,* Pa. Superior Court No. 2306 EDA 2016, emphatically rejects the notion that the liability recognized by the Pennsylvania Supreme Court in *Bilt-Rite Contractors, Inc. v. The Architectural Studio,* 581 Pa. 454, 866 A. 2d 266 (Pa. 2005), is limited to the facts of that case.

> The trial court in Fulton Bank held that *Bilt-Rite* applied only to architects and design professionals in their interactions with contractors, and dismissed the bank's claim. However, the Superior Court disagreed. Determining that the "*such as an architect or design professional"* language in the *Bilt-Rite* decision was intended to be illustrative rather than restrictive, the court concluded that "*Bilt-Rite* can be applied to other factual scenarios where a party is providing professional information that is designed to be relied upon by a third party," *Fulton Bank*, 2306 EDA 2016 at p. 7.

As such, Plaintiff's pleadings are sufficient.

**D.   INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS (COUNT 4)**

According to the Restatement (Second) of Torts, "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."[19]   Plaintiff, with existing back problems, alleged she suffered physical harm due to Defendants' outrageous and tortious conduct (SAC § 459), and provided competent medical evidence.  *Reedy v. Evanson*, 615 F.3d 24 197, 231 (3d Cir. 2010) (citation omitted). (*See* Declaration of Dr. Sharif).Thus, Plaintiff's pleadings are sufficient.  Further, the Third Circuit has allowed recovery for IIED. *Williams v. Guzzardi,* 875 F.2d 46 (3d Cir. 1989).

> The Supreme Court of Pennsylvania has held that in order to sustain a claim for intentional infliction of emotional distress, a plaintiff must allege that the

---

[19] Restatement (Second) Of Torts § 46(1) (1965)

defendant "has acted with intent which is tortious or even criminal,[20] or that he had intended to inflict emotional distress, or even that his conduct has been characterized by `malice,' or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort." *Hoy v. Angelone,* 720 A.2d 745 (Pa. 1998).

Def Motion also fails as it is well-settled a defendant's reasonable pursuit of their legal rights cannot constitute extreme and outrageous conduct for purposes of establishing IIED.

*Clark v. Caln Twp*., No. 09-1551, 1990 WL 99123, at *5 (E.D. Pa. July 11, 1990) ("When an individual does no more than insist on his legal rights in a permissible way, he will not be held liable for intentional infliction of emotional distress, even though he is aware that such insistence will cause emotional distress.")

Here, it was not in Defendants' legal right, in part, to defame, threaten, bully and incite violence against the Plaintiff (for years), instead of retracting and apologizing, when she would not be complicit in their tortious online schemes, to irreparably harm her for the rest of her life and harm her future thirty + years of earnings potential (Plaintiff was 46-years old in 2015).

## E.  EQUITABLE ESTOPPELS (COUNT 5)  *(See for e.g.,* SAC § 474-479)

Plaintiff sufficiently pleaded Equitable Estoppels. *See* generally, *Price v. Chevrolet Motor Div. of General Motors Corp*., 2000 PA Super 410, 765 A.2d 800, 43 U.C.C. Rep. Serv. 2d 593 (2000). Further, the *Pennsylvania Supreme Court* has reaffirmed and applied the doctrine of *estoppel by deed* in the case of *Shedden v. Anadarko E. & P. Co., L.P, 136 A.3d 485 (Pa. 2016)* and distinguished it from the doctrine of *equitable estoppel.* Thus, the Plaintiff's pleading have been sufficiently pled.  *See also*: *Novelty Knitting Mills, Inc. v. Siskind*, 500 Pa. 432, 436, 457 A.2d 502, 503-04 (1983). (internal citations omitted).

## F.    CIVIL CONSPIRACY AND AIDING AND ABETTING (COUNT 6 &7)

This lawsuit was filed because of Defendants persistent, longstanding illegality against the Plaintiff.  Thus, the count of civil conspiracy and aiding and abetting are applicable to both

---

[20] *See also*: "Former Fox News commentator sentenced to prison for faking CIA ties," *Reuters,* July 15, 2016. FTC has won lawsuits against purveyors of "fake news" and "hoax news," *See: FTC v Kevin Trudeau et al* (2016) Case: 15-3472; *FTC v Clickbooth.com* et al, No.1:2012cv09087

Defendants as clearly evidenced by their Feb 10, 2015 <u>Joint</u> Statement and <u>Joint</u> Radio

Broadcast(s) ongoing intimidation and false statements concerning her and fundraising.

 Contrary to Def Motion's purported innocence of Quayle, Quayle was a part of

Hagmann's original false allegation and then held a fundraiser (SAC§ Ex. 1, 6). Still, Plaintiff

gave him the benefit of the doubt, then Quayle, injected himself in this matter when he tried to

bully the Plaintiff to cover up for Hagmann to maintain their Circle of Trust's multi-million

dollar online enterprise. In his apparent zeal, Quayle handed her more evidence their NSA

allegation was false prompting her to write follow up articles as is proper.

> "Civil conspiracy occurs when two or more persons combine or agree intending to commit an unlawful act or do an otherwise lawful act by unlawful means." *Weaver v. Franklin County*, 918 A.2d 194, 202 (Pa.Cmwlth. 2007). (citing *Grose v. P&G Paper Prods.*, 866 A.2d 437 (Pa. Super. 2005); *see also* "… an overt act done in <u>pursuance of the common purpose</u> …" *Phillips v. Selig,* 959 A.2d 420, 437 (Pa. Super. Ct. 2008). (Plaintiff emphasis).

 The Plaintiff's pleadings meet the *Rosenblum v. Rosenblum,* 320 Pa. 103, 108-09, 181 A.

583, 585 (1935) test.  Instead of retracting and apologizing (not just to the Plaintiff, but to their

audiences), Defendants' acted solely with the purpose to injure Plaintiff.  SAC identifies the

"who," the "what," the "how," and the "when," and the "where" of Defendants' tortious conduct,

and includes dates, times and locations. Thus, SAC avoids the extremes of 'bare bones' or

'implausibility.' *Twombly,* 2005 U.S. App. LEXIS at *27-34.  Further, *see*:

> *Hemispherx Biopharma. Inc. v. Asensio*, July Term 2000, No. 3970, 2002 Phila. Ct. Com. Pl. LEXIS 72 (C.C.P. Phila. Feb. 14, 2001) (Sheppard, J.)  Here, "the Court denied a preliminary objection where the plaintiff had alleged a conspiracy between the named defendant and several John Doe defendants". "The Court upheld the sufficiency of a claim for civil conspiracy where only one of the parties to the conspiracy was identified in the pleadings. The Court concluded that provided the identity of the "John Doe" defendants could either be easily ascertained or discovered after the initial filing, the pleading was sufficient…"  Further, in part, in *Acme Markets, Inc. v. Dunkirk Ice Cream Co.*, Feb. Term 2000, No. 1559, 2000 Phila. Ct. Com. Pl. LEXIS 49 (C.C.P. Phila. Sept. 18, 2000) (Herron, J.) ("the Court required an amended complaint to be filed where substantial questions existed as to the identity of the parties to the alleged conspiracy and the degree of knowledge possessed by one of the defendants…")…

* * *

*See: Malewicz v. Michael Baker Corp.*, December Term 2002, No. 1741, 2003 Phila. Ct. Com. Pl. LEXIS 49 (C.C.P. Phila. Aug. 6, 2003) (Jones, J.) Here, "the Court denied preliminary objections to the conspiracy count of the complaint finding that a letter and a lawsuit were the combined action of the defendants and thus stated a claim for conspiracy". *See also*: *Koch v. First Union Corp.*, May Term 2001, No. 0549, 2002 Phila. Ct. Com. Pl. LEXIS 82, (C.C.P. Phila. Jan. 10, 2002) (Herron, J.) "The Court held that malice and intent in a claim for civil conspiracy can be generally inferred for pleading purposes;" *Miller v. Santilli*, July Term 2006, No. 1225, 2007 Phila. Ct. Com. Pl. LEXIS 252 (C.C.P. Phila. Sept. 20, 2007) (Bernstein, J.) "The Court held that a sufficient allegation of aiding and abetting fraud necessarily results in a sufficient pleading of civil conspiracy. Rather than separately considering the conspiracy claim, however, the Court stated that – for pleading purposes – aiding and abetting and conspiracy were one and the same and there was no need for any further inquiry. The Court adopted the definition from *Thompson Coal Co. v. Pike Coal Co.*, which provides that a plaintiff must show that "two or more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means." The 'plausibly suggesting' threshold for a conspiracy complaint remains considerably less than the 'tends to rule out the possibility' standard for summary judgment."). And *Phillips v. County of Allegheny*, 515 F.3d 224, 2e4 (3d Cir.2008)(quoting *Twombly*, 550 U.S. at 556).

In keeping with those principles, it is reasonable to assume more defendants will be named. As *Firstrust Bank v. DiDio, March Term 2005,* No. 200, 2005 Phila. Ct. Com. Pl. LEXIS 376 (C.C.P. Phila. July 29, 2005) (Jones, J.) reminds the Court and noted that because the complaint alleged that the defendants worked together and/or with others to commit fraud, [negligent misrepresentation] … the Court found that the claim of civil conspiracy was sufficiently pled, relying on the decision in *Strickland v. Univ. of Scranton*.[21]

While this is a civil case, it is noteworthy that the United States Supreme Court has held that punishing a criminal conspiracy does not violate the Free Speech Clause. This is because conspiracies are "intended to induce or commence illegal activities." *United States v. Williams*, 553 U.S. 285, 298 (2008).

Defendants speak out of both sides of their mouths. It is tedious and revealing. One minute, they claimed the Plaintiff was guilty of "betrayal," as if she had been a part of their

---

[21] 700 A. 2d 979, 987-88 (Pa. Super. 1997). *See also:* Restatement (Second) of Torts §876 (1979); and *Pinkerton v. United States*, 328 U.S. 640, 646-647 1946

conspiracy (Circle of Trust) (SAC § 104, 174-177, 196, 205, 208); the next minute, in Def

Motion, they claim their premeditated, intentional false statements of facts are "hyperbole."

The truth is simple. Defendants, and others in their Circle of Trust, like Wayne Willott,

who actively pursues other journalists and individuals who publish online to feed disinformation

to, failed to enlist her into their odious Circle of Trust (*See* Plaintiff decl § ex 84). Defendants

need this Court to ignore the underlying evidence. Their history of making false and fear-based

destabilizing allegations on the Internet as "news," which as of this filing has not abated.

### G. UNJUST ENRICHMENT (COUNT 8)  (SAC § 49-53, 72, 117, 323, 356).

[R]estitution for unjust enrichment is not predicated on a promise, but on the restoration of an unfair gain**.** The doctrine of promissory estoppel can sometimes be used to enforce a promise that induced justifiable reliance even where there is not consideration.  Similarly, the concept of unjust enrichment serves the purpose of allowing for the enforcement of obligations that may not qualify as contractual.  *Myers-Macomber Engineers v. M.L.W. Construction Corp*., 271 Pa.Super. 484, 414 A.2d 357 (1979).

In addition:

To sustain a claim of unjust enrichment, a claimant must show that the party against whom recovery is sought *either wrongfully secured or passively received a benefit* that it would be unconscionable for her to retain.  In order to recover, there must be both (1) an enrichment, and (2) an injustice resulting if recovery for the enrichment is denied.  *A showing of knowledge or wrongful intent on the part of the benefited party is not necessary in order to show unjust enrichment*.  Rather, the focus is on the resultant unjust enrichment, not on the party's intention.

*Torchia ex rel. Torchia v. Torchia*, 499 A.2d 581, 582-83 (Pa. Super. 1985) (internal citations and punctuation omitted) (emphasis added).

Here, the Plaintiff has met the elements. She has also alleged there was a "benefit conferred

on Defendants" by Plaintiff.  Defendants began unjustly enriching themselves and others (DOES

1-20) in their Circle of Trust (passively and intentionally), in June 2013, at her expense, which

would be unconscionable for them to retain. They have for over 5 years now.  *See,*

*Com. ex. rel. Pappert v. TAP Pharm. Prods., Inc.,* 885 A.2d 1127 (Pa. Commw. 2005). "The polestar of the unjust enrichment inquiry is whether the defendant has been unjustly enriched; the intent of the parties is irrelevant." *Limbach v. City of*

*Philadelphia*, 905 A.2d 567, 577 (Pa. Commw. 2006). (Plaintiff decl § ex. XY) *See also, Sevast v. Kakouras*, 915 A.2d 1147, 1153 (Pa. 2007).

## H. FALSE LIGHT (COUNT 9)  (*FOR, E.G.* SAC § 190, 193, 199)

Plaintiff has shown Defendants with knowledge or in reckless disregard of the falsity published highly offensive, false statements concerning her, purposely creating a false impression. Thus, Plaintiff's pleadings have sufficiently met the elements of False Light.

> [U]nlike defamation, "false light invasion of privacy offers redress not merely for the publication of matters that are provably false, but also for those that, although true, are selectively publicized in a manner creating a false impression. *Krajewski v. Gusoff*, 53 A.3d 793 (Pa. Super. Ct. 2012).

*See*: *Santillo v. Reed, 634 A.2d 264 (Pa. Super. 1993)* citing, *Neish v. Beaver Newspapers, Inc., 581 A.2d 619, 624 (Pa. Super. 1990), alloc. den., 593 A.2d 421 (Pa. 1991)*." *See also:* Pennsylvania Courts have relied upon the Restatement (Second) of Torts § 652E for distinguishing a false light claim from a defamation claim. *See* Comment "b" and "c."

## CONCLUSION

When Plaintiff filed this Action on November 9, 2015, Counsel was not counsel for individuals disseminating Pizzagate (one who manufactured "evidence" *again),* (SAC § Exhibit 1-2, 31-34) and affected a Presidential Election, but now they are. Plaintiff blew the whistle. Thereby, the importance of the issues at stake in this litigation are far greater than in other civil lawsuits which typically affect the parties' private interests.  Defendants, Does 1-20, and witnesses in this action, are also a part of the Russia probes and inquires and lawsuits into the alternative media (*for e.g*. Sandy Hook families v, Alex Jones). Thus, it is unsurprising that Defendants *et al*, publicly call the Russia probes a "witch hunt;" want Special Prosecutor Robert Mueller fired, and continue to defame the Plaintiff and publicly attack this lawsuit. Plaintiff's correction articles, written in distress, (and could use a copy edit), were, and are, prescient. As the Court may see Defendants can effortlessly tell 2-4 falsities per statement.

. Defendants fail to meet their burden for dismissal. Thus, Plaintiff should be afforded the

right to further develop her claims in discovery. Plaintiff's pleadings have not only met, but, exceeded the pleadings threshold, particularly as no discovery has occurred, and she has established standing. Thereby, it would be premature to dismiss any causes of action.

Plaintiff has submitted evidence of her career experience in the public domain (SAC§ 1, Plaintiff decl § ex -87-93).  As a ghostwriter, she is bound by confidentiality issues, and requests she be permitted to file redacted documentation under seal to show her prior earnings capacity, and the loss of income to her future earnings (for the next (30) thirty + years), as a result of Defendants and their co-conspirators' long standing and ongoing tortious conduct against her.

For the reasons set forth herein and in SAC, Stephen Quayle's Motion should be denied and the Continuing Violations Doctrine, as a Count (not as a doctrine) made in *pro se* error should be stricken. Plaintiff respectfully requests with urgency that the Court will grant her a permanent injunction against Defendants —as SAC's length verifies is necessary, and the dangers are real with Defendants like this in a weaponized Internet. More people are acting upon other conspiracies Defendants are disseminating, as "news," and falsely conflating the Plaintiff with. (*See,* TOC § Other Authorities and SAC§ 359-361, 363)

If the Court finds Plaintiff's pleadings deficient, she requests an opportunity to replead to remedy those issues, if any, by additional amendments and/or limited discovery on those issues to more fully present evidence.

Plaintiff declares under penalty of perjury under the laws of the United States, and pursuant to the laws of the State of Pennsylvania that the foregoing is true and correct.

**Dated:** December 31, 2018                  Respectfully submitted by:

                                                                  /s/ Marinka Peschmann
cc: Counsel of record via ECF        Marinka Peschmann, Plaintiff *pro se,* P.O. Box 45094
    Bruce S. Rosen (for Quayle)       Port Credit, Mississauga, Ontario L5G 4S7, Canada
    Michael A. Agresti (Hagmann)     646-929-4132, (email) marinkapm@aol.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 31, 2018 copies of the foregoing Opposition to Defendants

Motion to Dismiss were filed in the Western District of Pennsylvania and served via ECF to the

following counsel parties of record:

Representing Defendant Stephen Quayle

Bruce Steven Rosen
McCusker, Anselmi, Rosen, Carvelli, P.C.
805 Third Avenue, 12th Floor
New York, NY 10022
Email: brosen@marc-law.com

Representing Defendant Douglas Hagmann

Michael A. Agresti
Marsh Spaeder Baur Spaeder & Schaaf, LLP
300 State Street, Suite 300
Erie, PA 16507
MAgresti@marshlaw.com

   /s/ Marinka Peschmann
Marinka Peschmann, Plaintiff *pro se,*
P.O. Box 45094 Port Credit
Mississauga, Ontario, L5G 4S7, Canada
Telephone: 646-929-4132
Email: marinkapm@aol.com