**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

_____
                                  :

MARINKA PESCHMANN,            :

            :     CIVIL ACTION NO.:

     Plaintifff,           :     **1:17-CV-00259-SPB-RAL**

            :

     vs.               :     Plaintiff's Objections to Magistrate

            :     Judge's Report and

STEPHEN QUAYLE, DOUGLAS     :     Recommendation on Defendants'

       HAGMANN, DOES 1-20,     :     Motions to Dismiss

            :

     Defendants.          :

_____:

**PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION ON DEFENDANTS' MOTIONS TO DISMISS**

Plaintiff *pro se*, Marinka Peschmann ("Plaintiff"), hereby respectfully submits these

Objections to Magistrate Judge Richard Lanzillo's Magistrate's Report and Recommendation on

Defendant Stephen Quayle's and Defendant Douglas Hagmann Motions to Dismiss pursuant to

28 U.S.C. § 636(b)(l) and Local Civil Rule 72(C)(2) in accordance with Dkt. No. 124.

Respectfully submitted,

  /s/Marinka Peschmann_____
Marinka Peschmann, *Plaintiff pro se*
PO Box 45094 Port Credit
Mississauga, Ontario  L5G 4S7 Canada
Email: marinkapm@aol.com,
Telephone: 646-929-4132

# TABLE OF CONTENTS

Table of Contents.....................................................................…………… i

Table of Authorities............................................................................ i i, iii

Introduction............................................................................................. 1

I.     Standard of Review ............................................................................ 2

II.    Legal Arguments …………………………………………………………..….. 3

    A.  Defendant Quayle Imputed Plaintiff with Crimes. Thus, Report and Recommendations for Count 1 Defamation/Defamation *per se* Against Him Should be Rejected ................ 3

    B.  But for the Mischaracterization of Defendants' Provable False Statements Against the Plaintiff as Insults, Rhetorical Hyperbole, Opinion, and/or Protected, the Magistrate Judge Would Have Found More Statements Capable of Defamatory Meaning………... 7

    C.  Objection to Dismissing Defendants' February 10, 2015 Joint Statement. In Pennsylvania Replication Goes to Actual Malice …………………………………………………... 9

    D.  How to Remedy Report and Recommendations Concerning Plaintiff's Pleadings— Plaintiff's First Amended Complaint  "FAC"…………………………………..…… 12

    E.  Report and Recommendations Did Not issue Recommendations of the Republication of Defendants Joint Statement Against the Plaintiff, Spoilation, and the Removal of Evidence During Ongoing Proceedings……………………………..…………...………16

    F.  In the Event Defendants Attempt to File More Provable False Statements of Facts Against the Plaintiff in this Action, Plaintiff Respectfully Requests a Telephone Conference with this Honorable Court and Defendants' Counsel ………………………..19

III.   Conclusion................................................................................................... 20

Certificate of Service.................................................................................... 21

## <u>TABLE OF AUTHORITIES</u>

*Angelastro v. Prudential-Bache Sec., Inc.*, 764 F.2d 939, 944 (3rd Cir. 1985) …………………2

*Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1974 (2007) …………………….…….…… 12

*Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)  ………………… 2, 3

*Brandenburg v. Ohio*…………………………………………………………………………….. 6

*Chaplinsky v. New Hampshire*, 315 U.S. 568, 572,62 S.Ct. 766, 86 L.Ed. 1031 (1942) ……... 12

*Cheney v. Daily News L.P.*, No. 15-2251 (3d Cir. 2016) …………………………….…….. 10, 11

*Dimare v. Metlife Insurance Co.*, 369 Fed. App'x 324, at *329 (3d Cir. 2010) ……….…… 14

*Edwards v. Hearst Comm'ns*, 15-CV-9279, 2017 WL 6458612 (S.D.N.Y. Dec. 18, 2017)…….18

*Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007 ………………….……………. 14

*Gertz V. Robert Welch, Inc.*. 418 U.S. 323,338, 94 S.Ct. 2997,41 L.Ed.2d 789 (1974) ……..… 11

*Hustler Magazine v. Falwell*, 485 U.S. 46, 51, 108 S.Ct. 876,99 L.Ed.2d 41 (1988) ………11, 12

*Manson v. Southeastern Transp. Auth.*, 767 A.2d 1, 5 (Pa. 2001) ………………………………18

*Milkovich v. Lorain J. Co.,* 497 U.S. 1, 17 (1990)……………………………………...….… 7

*New York Times Co. v. Sullivan,* 376 U.S. at 265, 84 S.Ct. 710. ……………………….…… 11

*Pension Ben. Guar. Corp. v. White Consol. Industries, Inc.*,
998 F.2d 1192, 1196 (3d Cir. 1993) ……………………………………………………..……. 2

*Pryor v. National Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002)
(quoting 62 Fed. Proc., L. Ed. § 62:520) …………………………………………………… 2

*Sample v. Diecks*, 885 F.2d 1099, 1106 n. 3 (3d Cir. 1989) …………………………………...1

*Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974) ………………………………………………..12

*Schmid v. Milwaukee Electric Tool Corp.,* 13 F.3d 76 (3d Cir. 1994) ………………….…… 18

*Schroeder v. Com. Dept. Of Transp.,* 551 Pa. 243, 710 a.2d 23 (1998) ………………….… 18

*Walker v. Grant Cent. Sanitation, Inc,* 634 A.2d at 241……………………………………….9

*Weaver v. Lancaster Newspapers, Inc.*, 926 A.2d 899 (Pa. 2007) …………………………… 9

*United States v. Zuckerman,* 88 F. Supp.2d 9, 11-12 (E.D.N.Y. 2000) ………………………... 19

**Federal Rules**
Fed. R. Civ. P. 8 ………………………………………………….…… 12, 14, 17, 18
Fed. R. Civ. P. 9 (b)……………………………………………………...……….. 13. 14
Fed.R.Civ.P. 72(b) ……………………………………………………...……….. 1, 2
Fed. R. Evid. 201(b) ……………………………………………………...………… 2
The Communications Decency Act § Section 230 …….………………………………….…12

**Pennsylvania Criminal Codes (imputing Plaintiff with crimes)**
18 Pa. Con. Stat. Ann. § 2709…………………………………………………………… 4
18 Pa. Con. Stat. Ann. § 2709.1 …………………………………………………...…….. 4

**Pennsylvania State Rules**
42 Pa. C.S. §8343 (b) ……………………………………………………….…….… 6

**U.S. Codes**
28 U.S.C. § 636(b)(1)(C) ………………………………………………….….………. 1, 2

**United States Constitution**
First Amendment …………………………………………………………..…. 7

## Other Authorities

Black's Law Dictionary (Seventh Ed) …………………………………………….……19

**INTRODUCTION**

On August 13, 2019, United States Magistrate Judge Richard Lanzillo issued a Report and Recommendation ("R & R") on two pending motions, Defendant Stephen Quayle's ("Quayle") and Defendant Douglas Hagmann's ("Hagmann," collectively, "Defendants") motions to dismiss recommending granting in part and denying in part. § Dkt. No. 124.

As further explained below, this Court should reject the recommendations, in part, and adopt in part, on *de novo* review. To wit, Plaintiff, *pro se*, Marinka Peschmann ("Plaintiff") challenges two recommendations from R & R.  She agrees with R & R that Defendant Hagmann should not be dismissed for Count 1: Defamation/Defamation *per se* and should be adopted.

1.  Plaintiff objects to R & R that Defendant Quayle should be dismissed from Count 1: Defamation/Defamation *per s*e with prejudice when amendment is not futile.

2.  Plaintiff objects to R & R in that additional statements made by Defendants against Plaintiff are not actionable.  Specifically, statements imputing Plaintiff with criminal activity, business misconduct and statements where Defendants intimidated, bullied, threatened, and/or incited violence against her.

These objections, and lack thereof, are concurrently reducing the length of Plaintiff's Second Amended Complaint ("SAC.") and streamlining litigation.  The Plaintiff files these Objections respectfully and in good faith.

**I.      STANDARD OF REVIEW**

Plaintiff's objections to a United States Magistrate Judge's Report and Recommendation require the Court to perform a *de novo* review of the contested portions of the Report. *Sample v. Diecks*, 885 F.2d 1099, 1106 n. 3 (3d Cir. 1989) (citing Fed.R.Civ.P. 72(b); 28 U.S .C. §

636(b)(1)(c)).  This Court has jurisdiction to review a Magistrate Judge's report and recommendation on dispositive matters. Fed. R. Civ. Proc. 72(b). "The district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to" and "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. Proc. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1)(C).

As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings. *Angelastro v. Prudential-Bache Sec., Inc.*, 764 F.2d 939, 944 (3rd Cir. 1985).  However, the Court of Appeals for the Third Circuit has held that there are exceptions to the general rule. For example, if a document is integral to, or explicitly relied upon in a Complaint (*see In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1426 (3d Cir. 1997)), the Court may consider it. Similarly, a Court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document. *Pension Ben. Guar. Corp. v. White Consol. Industries, Inc*., 998 F.2d 1192, 1196 (3d Cir. 1993).  The Court is also permitted to take judicial notice of "certain matters outside the body of the complaint itself, such as exhibits attached to the complaint and [other] facts of which the court will take judicial notice." See *Pryor v. National Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) (quoting 62 Fed. Proc., L. Ed. § 62:520).  A judicially noticed fact is a fact that is not established by admissible evidence but may be accepted by the Court because the fact is generally known within the trial Court's territorial jurisdiction, or because its validity can be determined from sources whose accuracy cannot be reasonably questioned. See Fed. R. Evid. 201(b).

The Court of Appeals has expressed that its rationale underlying these exceptions is that

"the primary problem raised by looking to documents outside the complaint – lack of notice to the plaintiff – is dissipated '[w]here plaintiff has actual notice . . . and has relied upon these documents in framing the complaint.'" *Burlington*, 114 F.3d at 1426.

## II.   LEGAL ARGUMENT

### A.   Defendant Quayle Imputed Plaintiff with Crimes, Thus, R & R Recommendations for Count 1 Defamation/Defamation *per se* Against Quayle Should be Rejected

Quayle should not be dismissed with prejudice for Count 1: Defamation/Defamation *per se* given he had made statements imputing criminal conduct to Plaintiff during the February 10, 2015 Broadcast with Hagmann. Thus, those statements are capable of a defamatory meaning.

Quayle should also not be dismissed given R & R correctly recommended denying Hagmann's Motion to Dismiss for Count 1: Defamation/Defamation *per se* imputing the Plaintiff with criminal conduct which should be adopted.

*See:* §SAC §167

> 167.      During the Feb10 Radio Broadcast § **Exhibit 18** § line 308-309 Quayle continued to conflate and falsely associate the Plaintiff with the conduct of other individuals to defame her when he claimed his wife and family were put in harm's way "basically putting a bullet to [his] head" after a picture allegedly of his house and address was posted on the Internet, to falsely condemn the Plaintiff for the conduct of another individual.

Posting an individuals address and house online is illegal and dangerous. Typically, this conduct comes with the intent of harassing the victim, intimidating, them, or having them assaulted, or inspiring or instructing someone else reading the information to do any of these things.  Often referred to as "doxxing," individuals who doxx a person may be prosecuted as assault. These laws are evolving to keep up with the times as these cyber crimes are a relatively new phenomena.

3

Doxxing falls under various state criminal laws, such as stalking, cyberstalking, harassment, threats, and other such laws, depending on the state. In Pennsylvania criminal statutes apply to cyberbullying, stalking, harassment and threats.  When a cyberbullying offense, like doxxing, ends up in criminal court, it may be charged as harassment if the defendant communicated with the victim in a threatening way with the intent to alarm or annoy the victim. (18 Pa. Con. Stat. Ann. § 2709.)  Cyberbullying may also be charged as stalking when the underlying behavior includes repeated acts that show an intent by the bully to put the victim in fear of bodily injury or serious emotional distress. (18 Pa. Con. Stat. Ann. § 2709.1.)

In Pennsylvania cyberbullying laws are applicable to children and adults.  *See* § 2709.

Quayle's entire quote during the February 10, 2015 Broadcast, imputed Plaintiff with additional crimes in addition to doxxing/cyberbullying as set forth above.  Quayle's statement is as follows verbatim.  *See* §SAC §**Exhibit 18** § line 304-310.  Dkt. No. 103-2

> **MR. QUAYLE:**  I think that one of the things that Doug and I want to share, because we've agonized over this because, again, you know, uh the people that turn the other … that always tell us to turn the other cheek, they've never had their cheek even touched. The people that tell us, but when it comes to overt Internet fraud, cyber liable, cyber slander, and even to the point of putting my family, my wife in harm's way. And when I see somebody basically uh putting a bullet to my head, posting my house on the internet, posting my address… We withheld a whole lot of information.  We're setting the record straight.

Plaintiff never put Quayle or his family in harms way, "basically putting a bullet to his head." She did not post a picture of Quayle's house or his address to doxx, intimidate, harass or stalk him.  Here too, Quayle falsely claimed directly, and by implication, with actual malice that Plaintiff was guilty of "overt Internet fraud, cyber libel, cyber slander."

These statements were not substantiated when they were made, because they are not true. Imputing Plaintiff with any crime, cyber crimes, or in person crimes, is slander *per se*.  Thus, the R & R recommendation to dismiss Quayle with prejudice should be rejected.

4

Quayle's quote imputing Plaintiff with multiple crimes was also restated, in part, by

Hagmann, separate from Quayle, as Plaintiff pleaded §SAC §136 [**Exhibit 18** §line 447-450].

> **MR. HAGMANN:** […]We brought our families into this. Because our families have been threatened, have been directly uh involved in this, to a degree folks that you will never know because we will never disclose it. <u>And when Steve says death threats, house on the Internet, yes, he's not lying.</u> And I become emotional because, folks, let me tell you something. You've got no idea.[…] Emphasis Plaintiff

As Plaintiff pleaded at §SAC§146.

> 146.      At different times, separately, in concert, and often acting as a false witness to each other's false statements of facts, during the Feb 10 Broadcast, as cited above, Quayle and Hagmann knowingly make heinous, impossible to be true, categorically false statements of fact that Plaintiff was engaged in, and guilty of, crimes against them, and their families, including, but not limited to, making "threats," "death threats," "intimidation," "harassment," and of "stalking" them. These statements were made with actual and common law malice and are impossible to be true considering the Plaintiff has never been to Montana or to Erie, Pennsylvania.  Allegations or imputations of criminal activity are slander *per se.*

Given the foregoing, with respect to Quayle and Count 1 for defamation/defamation *per se*,

amendment regarding these statements would not be futile.  Essentially, Plaintiff needs to quote

Quayle's full  quote imputing her with criminal activity as it occurred further up in the pleadings.

In addition, Plaintiff cited a number of statements where Quayle and Hagmann made

threatening, intimidating, and violence inciting statements against her on multiple broadcasts,

beginning on February 10, 2015.  *See for e.g.* §SAC §p 41: and §SAC §p. 93.  Following is

likely the most egregious example of Quayle inciting violence against her during the February

10, 2015 Broadcast §SAC §119, 154-155:

> 154.      On a malicious, dangerous grand scale, with a reckless disregard for the truth, Defendants knowingly placed Plaintiff's safety and life in danger when they incited violence against her.  During the Feb 10 Broadcast, Quayle, referring to the Plaintiff and McLeod, stated this below § **Exhibit 18** § line 1289-1294.

> **MR. QUAYLE:**  I'm a human. I absolutely would do anything to defend my family. Doug will do anything to defend his family.  And what has come against him, I would say this, is no different than somebody showing up at the door… And and because again when people want you dead. When someone says, "I am going to destroy you."

Let me tell you this, in the real world that's what they make 45s for, and I'm not exaggerating.  That's when they make time out of the brethren more important.  That's when your training takes over.

155.      Quayle told their loyal, trusting worldwide audience that someone with military or weapons training should literally shoot and possibly kill the Plaintiff— "that's what they make 45s for." Statements such as this constitute true threats, are fighting words and are "directed to inciting or producing imminent lawless action and is likely to incite or produce such action," are also unprotected by the First Amendment. *Brandenburg v. Ohio.*

In *Brandenburg*, the Supreme Court said speech loses First Amendment protection if it calls for and is likely to lead to "imminent lawless action."

Quayle was not exaggerating about inspiring or instructing someone to go and shoot the Plaintiff.  He said so himself. He was literally instructing the brethren— fellow Christians or members of a male religious order, to stop what they were doing; to pick up their guns, they were well-trained to use, and go and shoot the plaintiff, and U.S. citizen, Kirk Michael McLeod. That is what 45s are for.

While Counsel in Quayle's Motion to Dismiss tried to downplay these statements Quayle made against Plaintiff as a one-time event, it was not.  Plaintiff has pleaded Defendants' conduct has not stopped.  She has preserved additional broadcasts, where Hagmann continued to try to bully and intimate her *with and without Quayle. See:* §SAC §343-365.  Thus, Quayle should not be dismissed with prejudice when these statements are not protected speech.

In addition, Plaintiff objects to R & R, Count 1, defamation/defamation *per se* given she had raised 42 Pa. C.S. §8343 (b).  In Pennsylvania, when properly raised, the defendants may have the burden of proving: (1) The truth of the defamatory communication. (2) The privileged character of the occasion on which it was published. (3) The character of the subject matter of defamatory comment as of public concern§SAC §387.  R & R did not address 42 Pa. C.S. §8343 (b) when it had been raised.  This too will streamline litigation.

**B.     But for the Mischaracterization of Defendants Provable False Statements Against the Plaintiff as Insults, Rhetorical Hyperbole, Opinion, and/or Protected, the Magistrate Judge Would Have Found More Statements Capable of Defamatory Meaning.**

Magistrate Judge is correct in that only provably false statements of objective fact are potentially actionable as the First Amendment protects subjective statements of opinion that do not convey a "provably false factual connotation," as well as criticism consisting of "imaginative expression," "rhetorical hyperbole" or even "vigorous epithet." *Milkovich v. Lorain J. Co.,* 497 U.S. 1, 17 (1990).  But R & R mischaracterized black and white, yes or no, provable statements Defendants made against the Plaintiff as if they were insults, rhetorical hyperbole, opinion, imaginable expression, vigorous epithet, and/or as protected.  They are not. They are provably false, and were made with actual malice. Thus, they are capable of defamatory meaning. These statements directly and by implications are injurious to Plaintiff's trade, profession and business. *See* for example R & R §p 16 §d.

> She also points to language in their Joint Statement accusing her of accepting financial support from the Defendants, of having been given free airtime by them, of representing Hagmann "in the press like a press person," and of claiming she was angry over their refusal to promote her book. *Id.;* ECF No. 103-2, at 62, 72. None of these statements is defamatory.

To demonstrate Plaintiff's objection, following are some of Defendants' quotes reproduced verbatim herein, which Magistrate Judge is referring to above. §SAC §132.

132.    Quayle and Hagmann's Feb 10 Joint Statement states in part below:

**FEB 10 JOINT STATEMENT:** We issue this joint statement as obedient watchmen as referenced in chapter six of the Book of Jeremiah to address very slanderous and libelous public accusations that have been made against us by two individuals, Kirk [Michael] McLeod, using the fictitious name Michael Erevna, and Marinka Peschmann. Our statement is not made out of haste, but only after a lengthy period of abundant prayerful consideration.

* * *

As many readers and listeners know, we've been subjected to a well-coordinated and malicious campaign of slander and libel over the last several months by two individuals who we once trusted, generously provided airtime,

7

> financial support, and for whom we solicited the support of others. Both were
> introduced to us telephonically by third parties…. We never met either Kirk
> McLeod, a/k/a Michael Erevna or Marinka Peschmann in person, although had
> numerous telephone conversations with both.

Quayle and Hagmann know whether or not they "generously provided" Plaintiff with

financial support. Either they did, or they did not.  They did not. There is nothing subjective in

that statement. There is no opinion in this statement, but whether the statement is true or false, is

defamatory, as the connotation and the implications are clear. *See* Plaintiff's pleadings with

respect to these statements  §SAC §137-141, 145.

These false statements are provably false and capable of defamatory meaning, given in

discovery Plaintiff can subpoena any and all documents from Defendants concerning or relating

to having provided Plaintiff with financial support.  It is false, thus provably false when

Defendants will have to admit they do not have any documents, *i.e.* bank records, paypal

transfers, wire transfers, cashed checks, etc. because they did not "generously provide" her with

financial support.

Defendants claimed Plaintiff was engaged in a "well-coordinated and malicious campaign,"

with Kirk McLeod against them.  She either was engaged or she was not. She was not.

Defendants claimed Plaintiff had slandered and libeled them. She either slandered or libeled

Quayle and/or Hagmann, or she did not. She did not, as she pleaded §SAC §137-139, and so

forth.   In addition, this Court has Plaintiff's Correction Articles and can verify that she did not

libel them. It was impossible for her to have slandered them in written published form.

All of these statements are provably false, were made with actual malice, thus capable of

defamatory meaning, as they impute business misconduct against the Plaintiff, and are similarly

actionable.   Genuine issues of material fact on whether Defendants published statements exist

and need to be litigated.  Any pleading deficiencies can be cured by amendment. Thus, R& R

should be rejected for dismissing Quayle with prejudice, and dismissing with prejudice

additional provable false statements Defendants made with actual malice, separately, and/ or

jointly against the Plaintiff .

### C. Objection to Dismissing Defendants' February 10, 2015 Joint Statement. In Pennsylvania Republication Goes to Actual Malice

R & R's recommendations to dismiss Defendants' statements against the Plaintiff in Quayle

and Hagmann's Joint Statement are erroneous and must also be rejected given Defendant(s) had

republished their Joint Statement twice on another one of Hagmann's websites §SAC §126-

130.[1]

The republication of Defendant(s) Joint Statement *in itself shows actual malice*. Defendants'

statements against Plaintiff are capable of defamatory meaning. *Weaver v. Lancaster*

*Newspapers, Inc.*, 926 A.2d 899 (Pa. 2007) held that republication of a defamatory statement is

relevant and admissible to prove the publisher's state of mind concerning actual malice in regard

to the initial publication. Moreover, in *Weaver v Lanscaster,* the Pennsylvania Supreme Court

indicated that, in a defamation case in Pennsylvania, the most minimal evidence of actual malice

will defeat a motion for summary judgment. The court held that evidence of Brownstein's

republication of the letter was relevant because Brownstein's willingness to republish the

defamatory statements, even after Weaver filed suit alleging that they were false, could possibly

indicate that Brownstein's original publication was made with disregard for the truth.

Defamation or slander per se occurs where a publication "imputes to another conduct,

characteristics, or a condition that would adversely affect her in her lawful business or trade[.]"

*Walker v. Grant Cent. Sanitation, Inc, 634 A.2d at 241.* A defamation per se plaintiff need not

---

[1] Plaintiff does not know at this time whether or not Quayle was involved with the republications of Defendants' February 10, 2015 Joint Statement.

prove "special damages," i.e., monetary or out-of-pocket loss. Instead, a plaintiff need only prove "general damages," i.e., "proof that one's reputation was actually affected by the slander, or that she suffered personal humiliation, or both." *Id. at 242.*

In addition, when Defendants imputed Plaintiff with crimes, they also adversely affected her fitness for the proper conduct of lawful business. As such, it is premature to dismiss statements that are provably false as being incapable of being defamation at this stage of litigation. Audiences who read and believed Defendants Joint Statement against the Plaintiff would come away believing she was guilty of serious professional misconduct and ineptitude.

Actual malice is a high legal standard that means acting knowing that information is false or in reckless disregard as to whether the information is false. Here, Defendants knew all their provable statements were false when they made them as Plaintiff pleaded. §SAC §384-416. Thus, she should be afforded the ability to present clear and convincing evidence they acted with actual malice.

Defamation and False Light in Pennsylvania share the common actual malice standard regarding public and/or limited public figures. Falsity of the materials in question "is defined broadly and can be established where . . . [the] presentation of [the] information . . . renders the publication susceptible to inferences casting [the plaintiff] in a false light." *Cheney v. Daily News L.P.*, 654 F. App'x 578, 583 (3d Cir. 2016) (quoting *Larsen*, 543 A.2d at 1189).

Further, in *Cheney v. Daily News L.P.*, 654 Fed. Appx. 578 (3rd Cir. 2016), the court held that the plaintiff could be defamed by implication, where the Daily News published an article on its website entitled "Heated Sex Scandal Surrounds Philadelphia Fire Department: 'It's Bad Stuff.' " The text of the article described a sex scandal within the Philadelphia Fire Department.

The same can be said here where the Plaintiff was associated, directly and by implication, with serious professional misconduct and ineptitude, in her capacity as a journalist.  Specifically, she could be defamed by implication by Defendants provable false statements concerning her in both their February 10, 2015 Joint Statement and February 10, 2015 Broadcast and subsequent broadcasts as she pleaded.

In *Cheney v. Daily News L.P., No. 15-2251 (3d Cir. 2016)* the Third Circuit reversed the District Court's dismissal of [plaintiff] Cheney's claims for defamation and false light invasion of privacy and remanded to the District Court for further proceedings.  Thus, R & R recommendations with respect to the afore-stated should be rejected.

Additionally, like the Defendants, R& R cites *Hustler Magazine v Falwell* which featured parody and political satire.  In contrast, Defendants claim to provide news with reputable sources yet they published provable false statements with actual malice, and defamatory news, concerning the Plaintiff.

Defendants' audiences trust and believe them and their news, in part, because of Defendants claimed credentials, specifically in relation to Hagmann being an over 35-year multi-state licensed private investigator, an alleged former operational asset for various government agencies, and his purported reputable "sources" he has accrued from his experience.

Defendant's audiences believe and trust them, in part, because Defendants claim they are Christian watchmen with reputable sources, and Quayle's use of scriptures and prayers while he delivers their provable false statements about the Plaintiff as news. *See:* §SAC §2-9.

The United States Supreme Court has stated that there is "no constitutional value in false statements of fact." *Gertz V. Robert Welch, Inc..* 418 U.S. 323,338, 94 S.Ct. 2997,41 L.Ed.2d 789 (1974).  The intentional lie does not materially advance society's interest in "uninhibited,

robust, and wideopen" debate on public issues. *New York Times Co. v. Sullivan,* 376 U.S. at 265, 84 S.Ct. 710. Falsehoods belong to that category of utterances that "are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality." *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572,62 S.Ct. 766, 86 L.Ed. 1031 (1942). The Court has further stated that "[f]alse statements of fact are particularly valueless; they interfere with the truth seeking function of the marketplace of ideas, and they cause damage to an individual's reputation that cannot easily be repaired by counter speech, however persuasive or effective." *Hustler Magazine v. Falwell*, 485 U.S. 46, 51, 108 S.Ct. 876,99 L.Ed.2d 41 (1988).

Thus, R & R should be adopted concerning Hagmann in Count 1; rejected with respect to dismissing Quayle with prejudice in Count 1; and rejected with respect to prematurely dismissing additional provable false statements Defendants made against the Plaintiff imputing her with criminal activity and/or business misconduct.

A claim will not be dismissed pursuant  to Fed. R. Civ. P. 12(b)(6) so long as it alleges "enough facts to state a claim to relief that is  plausible on its face." *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1974 (2007). "The issue is not whether a plaintiff will ultimately prevail but whether [it] is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974).

### D.  How to Remedy Report and Recommendations Regarding Plaintiff's Pleadings– Plaintiff's First Amended Complaint "FAC"

In brief, R & R has recommended that SAC has exceeded the pleading standard under Federal Rules of Civil Procedure Rule 8, and cautiously recommends amendment given the length of SAC.  These were not issues with Plaintiff's First Amended Complaint ("FAC") in which Defendants' filed two motions to dismiss it.

12

Defendants first motion to dismiss FAC was filed in the Southern District of New York ("SDNY") where Plaintiff had prevailed on jurisdiction after New York digital corps defendants were dismissed, immunized by the Communication Decency Act § Section 230.

Defendants second motion to dismiss FAC was filed after FAC had been transferred to this honorable Court, the Western District of Pennsylvania ("WDPA").  Plaintiff did not seek to amend FAC as it was her understanding that Courts disregard the pleadings with dismissed defendants. She also thought it would be more efficient this way.  She filed a second Opposition against Defendants second Motions(s) to Dismiss pursuant to Pennsylvania law as she had been ordered to do (Dkt. No. 88-89).

The first step Plaintiff can take to remedy Magistrate Judge Lanzillo's recommendations concerning SAC would be for Plaintiff to essentially amend back to a shorter FAC pursuant to this Court's *de novo* review.

R & R did not address Plaintiff's legal arguments concerning Rule 9(b) with SAC.

As a direct result of Defendants' ongoing fraudulent activity, the manufacturing of "evidence," and use of dubious sources in her pleadings, which had been repeated again, this time during the 2016 Presidential Elections, Plaintiff believed she was required to plead under Federal Rule Civil Procedure 9(b).  *See for example* §SAC§34, 38-106, 224-239, 265-276.

"Federal Rule of Civil Procedure 9(b) requires plaintiffs to plead claims of fraud or mistake with particularity."  As courts typically look to the "circumstances constituting fraud," factors such as "time, place, contents of the false representation, the person making it, and what was obtained from it must be stated with specificity."  This is a sensible formulation for affirmative misrepresentations because they "are discrete, observable events which can be

13

particularized."[2] Just because a claim is not technically referred to as "fraud" does not mean it is automatically exempt from the heightened standard.[3]  Further, the Third Circuit has held that to satisfy Rule 9(b), a plaintiff must "state the circumstances of the alleged fraud with sufficient particularity to place a defendant on notice of the 'precise misconduct with which [it is] charged.'" *Dimare v. Metlife Insurance Co.*, 369 Fed. App'x 324, at *329 (3d Cir. 2010) (quoting *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (alteration in original).

Plaintiff does not object to R & R's recommendations for amendment to cure possible Rule 8 pleading deficiencies.  Evidently, Plaintiff tried to accomplish too much in SAC after the unprecedented events regarding Defendants, their "news," their self admitted online conspiracy ("Circle of Trust"), and the 2016 U.S. Presidential Elections had transpired.  History had repeated itself after Plaintiff had filed this action for similar conduct which had prompted this action in the first place.

Multiple investigations, including criminal investigations, into the 2016 Presidential Elections followed, including, but were not limited to purported leaks from the New York FBI field office, former Congressman and convicted sex offender Anthony Weiner's laptop, then Presidential candidate Hillary Clinton's emails, and an alleged child sex ring in a D.C. pizza place basement with no basement.  "News" in which Defendant Hagmann had played a leading role in publishing and disseminating in the online media based on another one of his purported reputable "sources."  As is/was Quayle's practice, Defendants' Circle of Trust's practice, they repeated and disseminated Hagmann's "news" §SAC §265-276.  A North Carolina man with a AR-15 showed up at a D.C. pizza place on a mission to rescue children and shots were fired.

---

[2] 135. *Breeden v. Richmond Cmty. Coll.*, 171 F.R.D. 189, 195 (M.D.N.C. 1997) ("An affirmative misrepresentation involves a specific statement made at a specific place and time and involves specific persons.").

[3] *See Fairman,* supra note 100, at 1005 ("[I]f the claim is 'fraud-like,' specificity is required.").

Here again, Defendants "news" used their Satanic, Lucifer, twisting of scripture, demon possession talk, like they did with the Plaintiff, against a U.S. candidate for President of the United States.  People believed them. These audiences can be found among massive Christian Conservative audiences §SAC § 161-166.  Plaintiff had already learned the hard way that some reasonable people can believe unreasonable things, and then there are unreasonable people.  Both categories appear to be active online and vote.  Nevertheless, Plaintiff will defer to other parties to handle that issue. She does not seek to replead it here pursuant to R & R.

Meanwhile, regarding SAC's length, during this time other individuals in Defendants' Circle of Trust, became relevant to this action, including, but not limited to Alex Jones of *Infowars.com,* Kevin Schipp, and a Coach Dave Daubenmire ("Coach Dave") of Pass the Salt Ministries. They, like Defendants, had disseminated Hagmann's 2016 Presidential Election "news," and had spoken publicly about facts in this case. §SAC §277-300, 301-329, 337 §footnote 110.  For the Plaintiff this case was in unchartered waters for a while.

Thankfully, R & R recommended the proper course.  SAC incorrectly tried to address it all. This can be remedied by amendment, by essentially amending back to a shorter FAC pursuant to this Court's *de novo* review, and by eliminating counts.

Now that Defendants and other individuals in their Circle of Trust appear to have caught the attention of authorities, coupled with multiple FBI threat assessments which are in the public domain concerning Defendants and their Circle of Trust's "news," the authorities can sort out Defendants' and their Circle of Trust as is proper.

After reading R & R, and sharing the same desire to streamline litigation, should this honorable Court's *de novo* review agree, in good faith, Plaintiff will not seek to replead the Counts of civil conspiracy, and aiding and abetting, in a third amended complaint. This also

reduces SAC's length and an amended FAC's length.  R & R had recommended dismissal for both counts without prejudice.

**E.      Report and Recommendations Did Not Issue Recommendations for the Republication of Defendants Joint Statement Against the Plaintiff, Spoilation, and the Removal of Evidence During Ongoing Proceedings**

R & R takes issue with Plaintiff's exhibits. Plaintiff did not file exhibits in her original complaint in 2015 or in FAC in 2016 which, as aforementioned, was transferred from SDNY to WDPA in September 2017.  She had assumed exhibits would come in later, after the pleading stage.

Instead, she responded to Defendants' annual gamesmanship in their filings with exhibits. Consequently, SAC has a number of exhibits at the pleading stage.  For example, Defendants in their first and second motions to dismiss in SDNY and then again in WDPA filed provable false statements about the Plaintiff and this case in their filings. They also attached exhibits they claimed were true and correct copies of content from Plaintiff's website. They were not.

Defendants' exhibits were improperly formatted, distorted copies from Plaintiff's website. Defendants with Counel seriously submitted them in a Federal proceeding with open pop up ads rendering the content virtually illegible—both in SDNY (Dkt. No. 49-3), and then again in WDPA (Dkt. No. 82-4). Thus, Plaintiff countered this gamesmanship by filing legible exhibits which were true and correct copies that the Court could actually read (Dkt. No. 90-2).  In her Feb. 2018 Opp decl she drew the Court's attention to this and had apologized for the necessary duplications of exhibits (Dkt. No. 90).  She hoped Defendants' antics would stop.  They did not.

In Defendants' third motions to dismiss they submitted new false statements, slighter better exhibits from Plaintiff's website, and then a February 10, 2015 transcript where portions were

altered, making it hard for the Court to decipher while claiming she had adopted it, after she had made some minor corrections to it [2018]. *See also* §SAC §119.

And so it went. Year after year.

Plaintiff included more exhibits to substantiate her pleadings as she saw the impact Defendants and the online media had during the 2016 U.S. Presidential Elections based on Hagmann's "news." Countless people were blindsided at that time. More individuals were defamed and smeared online. Plaintiff was not blindsided by the 2016 Presidential Election, having had this unfortunate incident(s) with Defendants earlier. She already knew about the alternative/online media's reach, and the impact it was having on audiences and in social media.

By then, Plaintiff had already caught Defendant(s) and/or just Hagmann improperly republishing and removing content from the Internet in this Action and had notified the Court about it.[4] Defendant(s) republished their Joint Statement against the Plaintiff twice §SAC §126-130. Two of Hagmann's websites were removed *before and after* Plaintiff filed SAC during a Federal Court proceeding §SAC §368- 378. *See also:* §Opp §Plaintiff decl §16-22.

It was like being trapped in whack a mole. A comparison of Defendants exhibits with hers verifies this. For these reasons, the length of SAC and the number of exhibits grew.

Plaintiff is not a lawyer, but she has gone through legal reviews with traditional publishing houses when legal reviews were mandatory. The day she filed this case, on November 9, 2015, was the same day she could substantiate her pleadings which did not have Rule 8 issues or exhibits.

Plaintiff always sought direction from the Court when she filed exhibits in her filings. She would have preferred not to have had to file one exhibit with SAC and Opp, let alone so many

---

[4] **Note:** Plaintiff does not know at this time, if Quayle was involved, as this occurred on Hagmann's websites.

exhibits, but Defendants with seasoned Counsels' gamesmanship, coupled with the unprecedented circumstances which occurred during this proceeding, seemed to demand it.

In Pennsylvania spoliation provides that a party cannot benefit from its own withholding or destruction of evidence by creating an adverse inference that the evidence is unfavorable to that party. *Manson v. Southeastern Transp. Auth.*, 767 A.2d 1, 5 (Pa. 2001). The United States Court of Appeals for the Third Circuit established the *Schmid* test, to determine the proper penalty (if any) for a party's spoliation of evidence. This was subsequently adopted by the Pennsylvania Supreme Court. *Schmid v. Milwaukee Electric Tool Corp.,* 13 F.3d 76 (3d Cir. 1994); *Schroeder v. Com. Dept. Of Transp.,* 551 Pa. 243, 710 a.2d 23 (1998).

*Edwards v. Hearst Comm'ns*, 15-CV-9279, 2017 WL 6458612 (S.D.N.Y. Dec. 18, 2017) demonstrates, in the sister state of New York, if parties do not adhere to litigation holds, it can spawn spoliation claims in subsequent lawsuits. The court noted that "threats of litigation or prior litigation may put a party on notice of future litigation, and thus give rise to a duty to preserve [citations omitted]."

Here in this case, Defendants have been on notice since February 24, 2015. R & R did not address these issues which Plaintiff submits remains open for *de novo* review. She desires to decrease the length of SAC too, not have to file so many exhibits with her pleadings, and seeks direction from the Court about these matters. Plaintiff's objections (and lack thereof) have already reduced SAC's page length and started to bring it to Rule 8 compliance in areas where she may have fallen out of scope for the afore-stated reasons. FAC did not have Rule 8 pleading standard issues, conclusive pleadings, pleadings regarding the 2016 Presidential Elections, exhibits, and is much shorter in length. Plaintiff will meet this honorable Court's requirements. She sincerely did not mean to test the Court's patience.

For the foregoing reasons, should the Court's *de novo* review agree, R & R should be adopted in relation to Plaintiff amending, to at minimum; (1) Defendant Quayle's statements imputing Plaintiff with criminal activity and professional, business misconduct; (2) additional statements Hagmann made against her capable of defamatory meaning that also imputed her with criminal activity and are injurious to her business and profession; (3) and concerning the Count of Negligent Misrepresentation against Defendant Hagmann.  R & R had correctly dismissed Quayle for Negligent Misrepresentation with prejudice and without prejudice against Hagmann.

*De novo* review means that deference does not have to be shown to the magistrate judge's conclusion. The phrase "de novo determination" in Section 636(b)(1) was selected by Congress "to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations"); Black's Law Dictionary (Seventh Ed.) (de novo review is "[a]n appeal in which the appellate court uses the trial court's record but reviews the evidence and law without deference to the trial court's rulings"); see *United States v. Zuckerman,* 88 F. Supp.2d 9, 11-12 (E.D.N.Y. 2000) ("the District Judge may also, in his sound discretion, afford a degree of deference to the Magistrate Judge's Report and Recommendation")

**F.      In the Event Defendant(s) File More Provable False Statements Against the Plaintiff, Plaintiff Requests a Telephone Conference**

In the event Defendant(s) attempt to file more provable false statements of facts against the Plaintiff in this action, Plaintiff respectfully requests a telephone conference with this honorable Court and Defendants' Counsel.  Since R & R was filed Plaintiff has been contacted outside of proceedings again §SAC §364-367.

### III. Conclusion

This Court should reject Magistrate Judge Lanzillo's Recommendations as set forth above, and exercise its discretion to deny Defendants' Motions to Dismiss.  Defendant Hagmann and Defendant Quayle should not be allowed to short-circuit the appeals process at the expense of Plaintiff when deficiencies can be cured by amendment, are on the path to being cured by these objections, and lack thereof, unprecedented events with Defendants and their Circle of Trust, occurred during the 2016 Presidential Elections and these proceedings, and the complained of conduct has still not ceased against the Plaintiff, and other individuals, U.S. citizens, separate from her.

This action should also serve as a much needed deterrent for other individuals online who claim to bring the real news.

For all of the foregoing reasons, Plaintiff respectfully requests that this Court exercise its discretion to deny Defendants' Motions to Dismiss as set forth above.

Respectfully submitted,

 /s/Marinka Peschmann_____
Marinka Peschmann, *Plaintiff pro se*
PO Box 45094 Port Credit
Mississauga, Ontario  L5G 4S7 Canada
Email: marinkapm@aol.com,
Telephone: 646-929-4132

**CERTIFICATE OF SERVICE**

I hereby certify that on August 27, 2019 copies of the foregoing Objections to Magistrate Judge's Report and Recommendation were filed in the Western District of Pennsylvania and served via ECF to the following counsel parties of record:

Representing Defendant Stephen Quayle

Bruce Steven Rosen
McCusker, Anselmi, Rosen, Carvelli, P.C.
805 Third Avenue, 12th Floor
New York, NY 10022
Telephone: (212) 308-0070
Email: BRosen@marc.law

Representing Defendant Douglas Hagmann

Michael A. Agresti
Marsh Spaeder Baur Spaeder & Schaaf, LLP
300 State Street, Suite 300
Erie, PA 16507
Telephone: 814-456-5301
MAgresti@marshlaw.com

   /s/ Marinka Peschmann
Marinka Peschmann, Plaintiff *pro se,*
P.O. Box 45094 Port Credit
Mississauga, Ontario, L5G 4S7, Canada
Telephone: 646-929-4132
Email: marinkapm@aol.com

21