# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARINKA PESCHMANN, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 1:17-CV-259 (Erie) |
| STEPHEN QUAYLE, DOUGLAS HAGMANN, DOES 1-20, | ) |
| Defendants. | ) |

## MEMORANDUM ORDER

This action was received by the Clerk of Court by transfer from the United States District Court for the Southern District of New York on September 22, 2017. The case was assigned to District Judge Cathy Bissoon and referred to the undersigned as the Magistrate Judge for pre-trial proceedings. On September 18, 2018, upon taking the oath as United States District Judge, the matter was re-assigned to the undersigned as the District Judge, and on September 27, 2018, Magistrate Judge Richard A. Lanzillo was referred the case for report and recommendation in accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Rules 72.1.3 and 72.1.4 of the Local Rules. Prior to its transfer to this Court, the matter had a procedural history starting in New York state court with its subsequent removal to the Southern District of New York federal court as described in detail in Magistrate Judge Lanzillo's Report and Recommendation (ECF No. 124).

Plaintiff Marinka Peschmann (Peschmann), a Canadian citizen, brings a lengthy eleven-count Second Amended Complaint asserting defamation, misrepresentation, civil conspiracy and other torts against Defendants Douglas Hagmann (Hagmann) and Stephen

1

Quayle (Quayle) as well as twenty "John Doe" defendants. Peschmann is mainly a freelance political reporter, with other writing credits to her portfolio. She wrote an article about Defendant Hagmann for publication on a site called Canada Free Press about Hagmann's claim that he was being targeted for surveillance by the National Security Agency of the United States. Plaintiff claims the information provided by Hagmann and upon which she based her article was false. She later issued public retractions of her article.

The details of the disagreement between the parties were played out in public on both sides as not only did Plaintiff write several articles along with her retractions that were critical of Defendants, but Defendants, in turn, on their own Internet media programs and elsewhere were critical of Plaintiff and her accusations against them. The Report and Recommendation provides the details of these episodes and they will not be repeated here but to say that Plaintiff's Second Amended Complaint, the operative pleading, reads as a soul-baring catalog of complaints of Defendants' comments about her and critique after critique of Defendants' work and political views.

The Report and Recommendation appropriately takes to task Plaintiff's pleading for its length, repetitiveness and refusal to provide concise statements of factual allegations as required by Rule 8 of the Federal Rules of Civil Procedure.[1] The burden this imposes on court resources is substantial and would strain the patience of any Judge, even when accounting for the fact that Plaintiff is a pro se litigant. For her part, Plaintiff has apologized for the length and breadth of

---

[1] "[T]he Second Amended Complaint, without exhibits, is one hundred and thirty-five pages in length. It consists of five hundred and thirty-seven paragraphs, one hundred and twenty-four footnotes, and forty-three exhibits, which add approximately two hundred and fifty additional pages to the pleading and bring its approximate total length to three hundred and eighty-eight pages." ECF No. 124 at pp.3-4.

her Second Amended Complaint in her Objections, reiterating that she is not a lawyer and suggesting alternatively that she either return to her First Amended Complaint or agree to some of the Magistrate Judge's recommended dismissals. Her Objections and those of Defendants, which lean heavily on arguments to dismiss all counts with prejudice, rather than giving Plaintiff any more opportunities to amend, have been studied in their entirety as part of the Court's *de novo* review. The legal requirements to state claims of each of these torts under Pennsylvania law were thoroughly and accurately laid out by Judge Lanzillo. Using the *Iqbal/Twombly* standard[2], a review of Plaintiff's claims follows.

First, the dismissal with prejudice of Count IV (Intentional and Negligent Infliction of Emotional Distress) and Count VIII (Unjust Enrichment) are required as the facts underlying them do not state a plausible claim as to either tort under Pennsylvania law. It appears from her Objections that Plaintiff is not contesting such a ruling.

Second, Count V (Equitable Estoppel), Count X (Continuing Violations)[3] and Count XII[4] (Immediate Permanent Injunctive Relief) are not legitimate causes of action or are not pled as plausible claims under any "title" Plaintiff might give them. It appears from her Objections that Plaintiff is also not contesting the dismissal of these claims beyond that discussed in note 3.

---

[2] *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).
[3] To the extent that Plaintiff objects that the Magistrate Judge did not review the "republication of Defendants Joint Statement", the Court notes that this was discussed with regard to the Continuing Violations count of her Second Amended Complaint in the Report and Recommendation.
[4] As no Count XI exists in the Second Amended Complaint, the count titled Count XII is actually the eleventh and last count of the pleading.

3

Third, Plaintiff's first and clearest count is her Defamation claim (Count I) against both Defendants. In her Objections, she recounts her claims in this regard and specifically points to statements made by both Defendants that accuse her of libel, slander and cyberbullying, which she alleges rise to claims of criminal conduct under Pennsylvania's criminal statutes related to stalking, harassment, cyberbullying and general threats. In response, both Defendants, and particularly Defendant Quayle, attempt to parse out the specific quotes pointed to by Plaintiff and argue that these statements were made against another player in this saga, not Ms. Peschmann. Such an argument is a defense, not a basis for a motion to dismiss, and one that requires a factual determination to succeed. At this stage, all of Plaintiff's allegations are accepted as true, including those statements she alleges were made against her and call into question whether she violated criminal statutes in verbally attacking Defendants and those averments where she alleges that Defendants called her a psychopath, a sociopath and mentally retarded. Because of this, the defamation claims against both named Defendants will proceed.

Similarly, with Count IX (False Light), Plaintiff alleges that such statements also satisfy the elements of a False Light cause of action of Publicity That Unreasonably Places the Other in a False Light Before the Public. That tort, as defined in Restatement (Second) of Torts § 652E, and applied by Pennsylvania courts, has two elements: (1) the false light in which the other was placed would be highly offensive to a reasonable person, and (2) the actor had knowledge or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed. *See Curran v. Children's Service Center of Wyoming County, Inc.*, 396 Pa.Super.29, 38-39 (1980). Statements that essentially

4

accuse Plaintiff of criminal conduct and cyberbullying, call into question her mental health, suggest that she is a Satan follower, Communist, Marxist, or the like, or intimate that she was part of a conspiracy to ruin Defendants because they failed to promote her book can plausibly be construed as attributing to Plaintiff characteristics, conduct, or beliefs that are false, as well as objectively offensive to an individual in Plaintiff's position. *See Reese v. Pook & Pool, LLC*, 158 F.Supp. 3d 271, 290 (E.D.Pa. 2016)("For the information about a person to be 'highly offensive,' it must constitute a 'major misrepresentation of his character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable man in his position....'")(quoting Restatement (Second) of Torts § 652, cmt.c). At this stage of the case, Plaintiff has made factual allegations, accepted as true, to make out a plausible claim for False Light, and the count will go forward as against both named Defendants.

Fourth, although Plaintiff contests the dismissal of Count VI (Civil Conspiracy) and Count VII (Aiding and Abetting) for failure to state plausible claims, each count fails because all of the elements necessary to make out a *prima facie* case in each instance are lacking. As to Civil Conspiracy, a cause of action for conspiracy requires that two or more persons combine or enter an agreement to commit an unlawful act or to do an otherwise lawful act by unlawful means. *Slaybaugh v. Newman,* 330 Pa.Super. 216, 221, 479 A.2d 517, 519 (1984). Plaintiff's allegations focus generally on the alleged wild and dangerous nature of false information disseminated by Defendants to the public. The only allegations that may be read to be allegations of a specific conspiracy against Plaintiff directly, focus on Defendants' failure to retract the alleged false NSA targeting claims, "causing the Plaintiff

5

compounding [unspecified] damage, and by continuing to harm more innocent individuals, separate from the Plaintiff." ECF No. 103, ¶ 483. The underlying failure to retract the NSA targeting claims is not an unlawful act and neither is telling a falsehood. Also missing from the claim are allegations of "legal damage" to her. *See McKeeman v. Corestates Bank, N.A.*, 751 A.2d 655, 660 (Pa. Super. Ct. 2000) (third element of a civil conspiracy claim is legal damage). Even in her several filings objecting to the Report and Recommendation and objecting to the objections of the named Defendants, she points to no allegations in her Second Amended Complaint and offers no new facts to support legal damage from the alleged conspiracy.

Similarly, in the Aiding and Abetting claim, Plaintiff's allegations do not state a claim. As discussed in the Report and Recommendation, there must be allegations of tortious conduct, knowledge with some amount of intent, and substantial assistance by the abettor to cause the tortious conduct in order to state a claim. *See, generally,* Restatement (Second) of Torts § 876 (1979). Plaintiff's allegations in this count focus on the general falsehoods she claims are being spread by Defendants and especially those which criticize the media generally, a media of which she is a member. She also makes much of Defendant Quayle's Renaissance Precious Metals sales and the general alleged harm caused by the unusual theories posited by Defendants to the general public. These allegations do not state the elements necessary to bring an Aiding and Abetting claim, especially as to Plaintiff specifically. The Report and Recommendation suggests that a generous reading of these allegations **may** be construed as claims of aiding and abetting defamation against Plaintiff, which defamation claims survive these motions to dismiss as to each named Defendant.

Even giving Plaintiff this generous reading of her allegations in this count, there are no claims that either named Defendant substantially assisted the other in the alleged defamatory statements; instead, the allegations are that each of the Defendants said similar defamatory things. In other words, the defamation claims against each named Defendant **are** the tort, not Aiding and Abetting.

Finally, the Fraudulent and Negligent Misrepresentation claims (Counts II and III) will be dismissed because Plaintiff has not pled damage of pecuniary loss with the particularity required for either count. *See* Restatement (Second) of Torts § 525 (1979) ("One who fraudulently makes a misrepresentation of fact, opinion, intention or law for the purpose of inducing another to act or to refrain from action in reliance upon it, is subject to liability to the other in deceit for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation."); *Barry-Wehmiller Design Grp., Inc. v. Storcon Sys., Inc.*, 2014 WL 6750089, at *2 (M.D.Pa. 2014) ("To state a legally sufficient claim for negligent misrepresentation, the plaintiff must show the following: (1) the defendant, in the course of business, supplied false information for the guidance of others in their business transactions; (2) the defendant failed to exercise reasonable care or competence in obtaining or communicating the information; (3) the plaintiff justifiably relied upon the information; and (4) such reliance caused pecuniary loss.") (citing Restatement (Second) of Torts § 552 (1977)).

Putting aside the particularity that must be pled for charges of fraud, Plaintiff has made no allegations that she lost contracts, business or any individual work that would satisfy the element of these counts such that justifiable reliance on the misrepresentation, whether fraudulent or negligent, resulted in a pecuniary injury that can be redressed. Such

specificity of out-of-pocket damages by reason of the reliance, as noted by the Magistrate Judge, is necessary; general claims of harm to her business reputation are not enough. *Cf. Rosen v. Comm'n Servs. Group, Inc.*, 155 F. Supp. 2d 310, 322 (E.D.Pa. 2001) (plaintiffs adequately pled loss causation by alleging that, as a direct result of the defendant's misrepresentations, losses were sustained because of the fraudulent overvaluation of the consideration received for their stock).

At its core, this is a Defamation and False Light case, and the allegations and review of the law bear that out. Therefore, after *de novo* review of the complaint, all filings and documents in the case, together with the report and recommendation and objections thereto, the following order is entered:

AND NOW, this 30th day of September, 2019;

IT IS ORDERED that the Motion to Dismiss For Failure To State a Claim (ECF No. 106) by Defendant Stephen Quayle and the Motion to Dismiss For Failure To State a Claim (ECF No.108) by Defendant Douglas Hagmann are GRANTED in part and DENIED in part as follows:

(1) Defendants' Motions to Dismiss as to Count I of the Second Amended Complaint for defamation per se against Defendant Hagmann and Defendant Quayle is and is hereby DENIED;

(2) Defendants' Motions to Dismiss as to Count IX of the Second Amended Complaint for publicity that unreasonably places the other in false light against Defendant Hagmann and Defendant Quayle is and is hereby DENIED;

(3) Defendants' Motions to Dismiss as to Count II (Fraudulent Misrepresentation), Count III (Negligent Misrepresentation), Count IV (Intentional and Negligent Infliction of Emotional Distress), Count V (Equitable Estoppel), Count VI (Civil Conspiracy), Count VII (Aiding and Abetting), Count VIII (Unjust Enrichment), Count X (Continuing Violations) and Count XII (Immediate Permanent Injunctive Relief) as to Defendant Hagmann and Defendant Quayle are and are hereby GRANTED and these Counts shall be DISMISSED with prejudice.

IT IS FURTHER ORDERED that because no further amendment will cure the defects in the counts dismissed as all factual allegations in this saga have been made and reiterated, and because any further attempts at curative amendments will cause undue delay in an already four year-old case, any request to amend the Second Amended Complaint at this time are and are hereby DENIED.

AND, IT IS FURTHER ORDERED that the report and recommendation of Magistrate Judge Lanzillo issued on August 13, 2019 [ECF No. 124] is adopted as the opinion of the court as modified by this Order.

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States District Judge