**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

_____

|  |  |  |
|---|---|---|
| MARINKA PESCHMANN, | : | |
| | : | CIVIL ACTION NO.: |
| Plantiff, | : | **1:17-CV-00259-SPB-RAL** |
| | : | |
| vs. | : | Plaintiff's Opposition to Defendants' |
| | : | Stephen Quayle's and Douglas |
| STEPHEN QUAYLE, and DOUGLAS | : | Hagmann's Motion for |
| HAGMANN | : | Reconsideration |

_____

**PLAINTIFF'S OPPOSITION TO DEFENDANT QUAYLE'S AND**
**DEFENDANT HAGMANN'S MOTIONS FOR RECONSIDERATION**

Plaintiff *pro se*, Marinka Peschmann ("Plaintiff"), hereby respectfully submits this

Opposition to Defendant Stephen Quayle's ("Quayle") and Defendant Douglas Hagmann's

("Hagmann," collectively "Defendants") Motion for Reconsideration, filed on October 10, 2019,

(Dkt. 139 and 140) to reconsider the Honorable Susan Paradise Baxter's Order which modified

Magistrate Judge Richard Lanzillo's Report and Recommendation.

In part, the Honorable Baxter's Order denied dismissal of both Quayle and Hagmann's

Motions to Dismiss Plaintiff's second amended complaint ("SAC") for the Counts of Defamation

*per se* and False Light (Dkt. No. 134).   To conserve's this Court's time and to prevent

unnecessary duplication, Plaintiff is responding to both Defendants' reconsideration motions in

one filing, instead of two filings. If that is unacceptable, Plaintiff respectfully requests she be

ordered to re-file two separate oppositions.

**Dated:** October 18, 2019.                    Respectfully submitted,

                                         /s/Marinka Peschmann_____
                                         Marinka Peschmann, *Plaintiff pro se*
                                         PO Box 45094 Port Credit
                                         Mississauga, Ontario  L5G 4S7 Canada
                                         Email: marinkapm@aol.com,
                                         Tele: 646-929-4132

# TABLE OF CONTENTS

Table of Contents..................................................................................…………… i

Table of Authorities …………………………….…………………………………...……. ii

Preliminary Statement …………………………………………….…...……1

Standard of Review ……………………………..…………..…………..…………….. 1

I.      Defendants' Fake "War of Words" and Plaintiff "Threw the First Punch" Arguments in Defendants' Reconsideration Motion are Still Fake and Were Already Adjudicated ………..2

II.     Seasoned Counsel Did It Again. Counsel Filed Copies of Plaintiff's Website Content Which Are Not True and Correct Copies Despite Having Copies from Previous Filings ……….….3

III.    The True Context. Almost Four (4)-Years After Plaintiff Filed this Lawsuit, and More Than 135 Court Filings Later, NSA Targeting Allegation is Still Fake. Hagmann's "News," which Quayle Also Claimed was True, was False, Fake, Fraudulent, a Hoax,  and a Sham …………7

IV.     Should The Court Grant Defendants' Alternative— to Re-evaluate SAC for Defamatory Capability, Plaintiff Opposes Defendants' Re-Cycled Claim – It Was Somebody Else Who Defendants' Imputed with Crimes and It Should Be Rejected……………………………… 9

V.      Should The Court Grant Defendants' Alternative, Hagmann Also Imputed Criminal Activity and Professional Misconduct Against the Plaintiff on November 11, 2014 Broadcast…..…. 12

VI.     Counsel Mischaracterizes Defendants Provable False Statements and Implications Against the Plaintiff as Insults, Rhetorical Hyperbole, Opinion, and/or Protected. They Are Not. They Are Capable of Defamatory Meaning …………………………………………………… 15

VII.    Ripe for Rule 56 Summary Judgment.  Motion For Reconsideration Confirms that Plaintiff Did Not Slander or Libel Defendants ………………………………………………….. 17

VIII.    Should Defendants' Alternative Be Granted, Satanic and Demonic "news" is *Per Se* Defamatory to Christian Conservative Audiences— Defendants' Audiences……………… 22

IX.     Plaintiff Has Already Addressed and Opposed the "Chilling Effect" In All Three of Her Oppositions to Defendants' Motions to Dismiss …………………………………… 24

X.      Conclusion ……………………………………………………………… 25

## Table of Authorities

*American Future Systems v. Better Business Bureau*, 592 Pa. 66, 923 A.2d 389 (2007) ……… 24

*Angelastro v. Prudential-Bache Securities, Inc.,* 764 F.2d 939, 944 (3d Cir. 1985) …………... 15

*Atkins v. Marathon LeTourneau Co*., 130 F.R.D. 625, 626 (S.D. Miss. 1990)) ………………..... 2

*Baker v. Lafayette College*, 350 Pa.Super. 68, 76, 504 A.2d 247, 251 (1986) …………..… 13, 20

*Castro v. United States,* 540 U.S. 375, 381-82, 124 S. Ct. 786, 791-92, 157 L. Ed. 2d 778 (2003)………………………………………………………………………………………… 25

*Chaplinsky v. New Hampshire*, 315 U.S. 568, 572,62 S.Ct. 766, 86 L.Ed. 1031 (1942) ……... 23

*Cheney v. Daily News L.P*., 654 F. App'x 578, 583 (3d Cir. 2016) (quoting *Larsen*, 543 A.2d at 1189) …………………………………………………………..…………… 18

*Corabi v. Curtis Pub. Co.*, 273 A.2d 899, 901 (Pa. 1971) …………………………..…… 21

*Cosgrove Studio & Camera Shop, Inc. v. Pane,* 182 A.2d 751, 753 (Pa. 1962)……………..… 13

*Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003) ……………………………….…..… 25

*Dougherty v. Boyerton Times*, 547A.2d 778 (Pa. Super. 1988) ……………..……………..... 13

*Dunlap v. Phila. Newspapers, Inc.,* 448 A.2d 6, 15 (Pa. Super. Ct. 1982) ……………………. 20

*Farrell v. Triangle Publ'ns, Inc.,* 159 A.2d 734 (Pa. 1960) ……………………………..... 13

*Fowler v. UPMC Shadyside,* 578 F.3d 203, 212 (3d Cir. 2009) ………………………….… 26

*FTC v Kevin Trudeau et al* (2016) Case: 15-3472 ………………………………………… 9

*Gertz V. Robert Welch, Inc.*. 418 U.S. 323,338, 94 S.Ct. 2997,41 L.Ed.2d 789 (1974) ………. 23

*Higgs v. Atty. Gen. of the United States*, 655 F.3d 333, 339 (3d Cir. 2011) …………………... 25

*Hill v. Cosby,* 2016 WL 491728, at *2 (W.D. Pa. Feb. 9, 2016) ………………………..… 15

*Humanitarian Law Project v. United States Dept. of Justice*, 352 F.3d 382 ……………...… 24

*Hustler Magazine v. Falwell*, 485 U.S. 46, 51, 108 S.Ct. 876,99 L.Ed.2d 41 (1988) …………. 23

*MacRae v. Afro-American Co.*, 172 F. Supp. 184 (E.D.Pa.1959), aff'd, 274 F.2d 287 (3d Cir. 1960) ………………………………………………………………………... 21

*Milkovich v. Lorain Journal Co*., 497 U.S. 1, 22, 110 S.Ct. 2695, 2708 (1990) …………..…. 15

*Mzamane v. Winfrey,* 693 F. Supp. 2d 442, 476-78 (E.D. Pa. 2010) …………………………….. 20

*New York Times Co. v. Sullivan,* 376 U.S. at 265, 84 S.Ct. 710. ………………….………… 23

*Rosenblatt v. Baer*, 383 U.S. 75, 86, 86 S.Ct. 669, 676 (1966) ………………………………... 25

*Rottmund v. Continental Assurance Co.*, 813 F. Supp. 1104, 1107 (E.D. Pa. 1992) …………... 2

*Rybas v. Wapner*, 311 Pa.Super. 50, 457 A.2d 108 (1983) …………………………………...…13

*Thomas Merton Center, supra*, 422 A.2d at 216. *Id.* at 783 ………………………...……13, 21

*Twombly v Bell Atlantic Corp*, 550 U.S. at 563 n.8 ……………………………………………… 25

*Waye v. First Citizen's Nat'l Bank,* 846 F. Supp. 310, 313-14 (M.D. Pa. 1994), aff'd, 31 F.3d 1175 (3d Cir. 1994) ………………………………………………………………………………1

*Williams v. Pittsburgh*, 32 F. Supp. 2d 236, 238 (W.D. Pa. 1998) ………………………..… 2

*Zerpol Corp. v. DMP Corp.,* 561 F.Supp. 404, 410 (E.D. Pa. 1983) …………………………...13

## RULES

FRCP 56 Summary Judgment ……………………………………...………………17
42 Pa.C.S. § 5523(1) ……………………………………………………………… 14
42 Pa. C.S. §8343 (b) ……………………………………………………………... 15
42 Pa. Const. Stat. Ann. § 8343(b)(1) (West 2013) ……………………………….… 20

## The United States Constitution

First Amendment ……………………………….…………………………….………7, 15, 23, 24

## The Constitution of Pennsylvania

Article 1, Section 7 ………………………………..…………………………...……..7, 24

## Other Authorities

Sack, Libel, Slander, and Related Problems at 50-51, 137-38 (1980) ……………………..…… 24

**Preliminary Statement**

On October 10, 2019, Defendants' seasoned Counsel from two law firms filed Motions of Reconsideration ("Rec Motion") (Dkt. No. 139 and 140) for Plaintiff to oppose, despite having had not one, not two, but three opportunities (over almost four years) to file three motions to dismiss, a motion to strike, respective objections, which failed, against a *pro se* plaintiff.

They did this after the Honorable Susan P. Baxter modified (Dkt. No. 134) Magistrate Judge Richard Lanzillo's Report and Recommendations (R&R) (Dkt. No. 124) by ruling that Plaintiff's Second Amended Complaint ("SAC") should not be dismissed with prejudice against Defendant Quayle; that additional statements Defendants made against the Plaintiff are capable of defamatory *per se* meaning; and had portrayed her in a false light.  The Honorable Baxter also agreed that Magistrate Judge Lanzillo was correct when he denied Defendants' Motions to Strike with prejudice three declarants with relevant testimony in this Action.

Still, borrowing Defendants' Counsels' words, they want "another bite at the apple."  Rec Motion essentially recycles Defendants' meritless, false, and distortions of reality objections which the Honorable Baxter has already rejected and adjudicated.  As such, Rec Motion must be denied and the Parties move promptly forward into discovery.

**Standard of Review**

A motion to reconsider "must rely on at least one of three grounds: 1) intervening change in controlling law, 2) availability of new evidence not previously available, or 3) need to correct a clear error of law or prevent manifest injustice." *Waye v. First Citizen's Nat'l Bank,* 846 F. Supp. 310, 313-14 (M.D. Pa. 1994), aff'd, 31 F.3d 1175 (3d Cir. 1994). By reason of the interest in finality, at least at the district court level, motions for reconsideration should be granted sparingly; the parties are not free to relitigate issues the court has already decided.

*Rottmund v. Continental Assurance Co.*, 813 F. Supp. 1104, 1107 (E.D. Pa. 1992). Stated another way, a motion for reconsideration is not properly grounded in a request for a district court to rethink a decision it, rightly or wrongly, has already made. *Williams v. Pittsburgh*, 32 F. Supp. 2d 236, 238 (W.D. Pa. 1998).

Here, the third ground is applicable.  In the third ground, litigants are cautioned to "'evaluate whether what may seem to be a clear error of law is in fact simply a point of disagreement between the Court and the litigant.'" *Waye,* 846 F. Supp.at 314 n.3 (citing *Atkins v. Marathon LeTourneau Co*., 130 F.R.D. 625, 626 (S.D. Miss. 1990)).  As afore-stated, Rec Motion was adjudicated during *de novo* review. Thus, it must be denied. *See* the Parties Objections to R&R (Dkt. No. 125, 127, 128 ) and to each other's Objections (Dkt. No. 130, 132, 133 ).  Thus, there is duplication in this Opposition, and in Rec Motion.

In the alternative, Plaintiff does not oppose *Defendants' alternative,* that this Court re-evaluate each and every false statement Defendants made against her, to determine the number which are capable of defamatory meaning and put her in a false light. As the Honorable Baxter's Order affirmed (Dkt. No. 134), there are more statements in SAC which are defamatory. Plaintiff did not Object, or properly Object to other Recommendations, as a *pro se,* to streamline 4- years of bludgeoning litigation, which always could have gone forward, and to speed up discovery.

## I.  Defendants' Fake "War of Words" and Plaintiff "Threw the First Punch" Arguments in Defendants' Reconsideration Motion are Still Fake and Were Already Adjudicated.

Just like in all three of Defendants' Counsels' motions to dismiss, their Objections, and now in Rec Motion, Plaintiff had no desire to engage Defendants' in their fictional "war of words."  Their ridiculous, juvenile claims that she threw the "first punch," against Defendants, as if these grown men, purported "Christian watchmen" were helpless and innocent. They are not. Additionally, Plaintiff had no interest in having to detangle Defendants' twisting, and mutilation

2

of her pleadings *again*, or having to categorically deny their false claims that she had admitted to things she did not admit to *again* (Dkt. No. 103).  She had expressly rejected them in her Opp (while substantiating falsehoods *again*), as their assertions are not true (Dkt. No.112 §p. 6-17). But she must because here again Defendants are trying to dupe the Court as if their fake arguments were legitimate. They are not. And they know it.

The fact that Defendants did not file Plaintiff's First Correction Article, "Did Doug Hagmann make up his NSA allegation he asked me to report?" as an Exhibit in Rec Motion tells the true story, and the true context (§SAC§ 110 (Dkt. No. 111-5 **Exhibit 28**)).  **Exhibit 28** is Plaintiff's First Correction Article incorporated herein in its entirety.

## II.    Seasoned Counsel Did It Again.  Counsel Filed Copies of Plaintiff's Website Content Which Are Not True and Correct Despite Having Copies from Previous Filings.

In Rec Motion, Defendants' Counsel submitted exhibits from Plaintiff's website which are not true and correct copies *again* (Dkt. No. 138-2). This is the <u>fourth time</u> Bruce S Rosen has done this, and the third time for Michael Agresti with zero (0) accountability to deter them. True and correct copies of Plaintiff's website content show the truth of this matter. Thus, Counsel should be sanctioned pursuant to Rule 11. At least these exhibits do not have open pop-up ads rendering them illegible, but they are still not true and correct copies. *See,* Seasoned Counsels' open pop-up ads exhibit (Dkt. No. 49-3, and Dkt. No. 82, 82-4, 84).[1]

Plaintiff does not want to try Magistrate Judge Lanzillo's patience by having to counter Defendants' altered exhibits *again*.  As such, instead of resubmitting them again, Plaintiff requests this Court use her true and correct copies of her websites substantiated content.

---

[1] Plaintiff has evidence which shows Defendants' Counsel knew what they were doing was wrong, but they do it anyways—a broadcast transcript should the Court wish to read or watch it.

Plaintiff's exhibits are properly formatted, color copies.  Defendants' exhibits are not.[2]

Additionally, Defendants re-submitted their February 10, 2015 Joint Statement in black and white, and ignored the re-publications of it which goes to actual malice (Opp p. 12 (Dkt. No. 111)).  It was unsubstantiated except for one time, which turned out to be a ruse, fake "evidence" (§SAC §246-248).  Thus, Plaintiff requests this Court use her true and correct copies (§SAC **Exhibit 19** (Dkt No.103-2 ). Plaintiff is a journalist/writer who substantiates facts.  The Defendants, who claim to provide the real news to Christian Conservative audiences, do not.

There was no "war of words" in this Action. Plaintiff did not throw the "first punch." Briefly, on October 8, 2014, in "Did Doug Hagmann make up his NSA allegation he asked me to report?" (§Dkt. No. 111-5 §**Exhibit** 28) Plaintiff started correcting false allegations, Hagmann had made against U.S. government agencies in 2013. The owner, editor and publisher of *Canada Free Press'* ("CFP") Judi McLeod had assigned Hagmann's story to her to report as if it were true, at his request in cahoots with him, and other individuals, including Quayle.  It was not.

Hagmann had claimed he had been targeted by the National Security Agency ("NSA") in May 2013 when he got off the phone with Quayle to presumably identify his so-called reputable U.S. government agency sources, because of the critical reporting he had published concerning the Obama administration at *CFP,* and reported on his worldwide broadcast H&H Report.[3] Hagmann is a licensed private investigator in the state of Pennsylvania, a purported investigative journalist, an Alex Jones of *Infowars.com* expert, who claims to bring his audiences the real news with reputable government and financial sources where the "Truth Can't Be Silenced."

---

[2] *See* Plaintiff's exhibits with her third Opposition §Plaintiff decl (Dkt. No. 111-5 §**Exhibit 28 29, 30**, and Dkt. No. 111-7 §**Exhibit 47)**.  Please also read the comments. Defendants' Christian Conservative audience's take what Defendants say literally. *See also,*§SAC 61, §SAC §**Exhibit 11,** §SAC §252)

[3] Hagmann's worldwide broadcast, *The Hagmann and Hagmann Report* ("H&H Report) was renamed *The Hagmann Report,* during these proceedings, thus interchangeable.

In part, to memorialize his NSA targeting allegation, Hagmann had written a "sworn" statement he claimed he had notarized under the penalty of perjury. He had it sent by email via Judi McLeod to the Plaintiff to report an article about it (§Dkt. No. 103-1, **Exhibit** 1-2). Hagmann recounted his NSA targeting allegation to her directly by phone  (§SAC§34-48, SAC§ **Exhibit** 1-2). He with his purported government agency source, U.S. citizen, Wayne Willott, signed off on the article before it was published, as Plaintiff had no personal knowledge of it (§SAC §34-48, 476).  Later, after her article was published, Hagmann wrote about it at *CFP* as if it was legitimate news.[4] For over five (5) years, Hagmann repeatedly restated his NSA targeting allegation to the public-at large as if it were true, as recently as July 24, 2018 (§SAC §301-331).

Hagmann's serious NSA targeting allegation was not true.  His purported reputable U.S. government agency sources were not reputable either (assuming they both exist).  Hagmann's "sworn" statement he had claimed he signed and notarized under the penalty of perjury, and sent to his Pennsylvania representatives, did not exist either (§SAC §39, 66, 326).

Correcting false allegations and shining a light on fraudulent sources is what honest, ethical journalists do when they can no longer stand by a story. For conducting herself properly, as a journalist, Quayle, the rarely admitted businessman, who also claims to provide real news with Hagmann, in his role as a Christian pastor on Hagmann's H&H Report Broadcast, defamed and incited violence against the Plaintiff in written and spoken form to worldwide audiences.

Defendants profit off of each other's "news." Defendants induce lucrative interstate and international commerce of precious metals, doomsday gear, books and DVDs off of it. They also induce tithes/offerings/donations to be sent to Hagmann's private Pennsylvania corporation for providing real news to their audiences, when it is not true (§SAC§49, 53, 72, 117, 118, 207).

---

[4] *See:* Dkt. No. 103 (SAC §82, 314 §**Exhibit** 38). *See also,* Dkt. No. 111-2,  (Opp Plaintiff decl §45 §**Exhibit** 32.) None of this has been retracted at *Canada Free Press* either.

As Plaintiff's substantiated pleadings verify, after defaming and inciting violence against her, Defendants continued to make false allegations against U.S. government agencies, and U.S. persons, with dubious sources (assuming they exist).

Despite being represented by Counsel (Bruce S. Rosen at that time), Hagmann's fraudulent online conduct did not stop, and reportedly has caught the attention of the authorities (and FBI threat assessments),[5] when Hagmann manufactured "evidence" again in what is known as "Pizzagate."  Here he had claimed he had received "evidence" from a reputable source from Anthony Weiner's laptop during an ongoing FBI investigation in the run-up to the 2016 Presidential Elections (SAC§265-300).  He did not.

In reality, Hagmann creepily lifted his purported "evidence" from a harmless online parenting tips website.  Here too, Plaintiff has substantiated this (§SAC §**Exhibits 31-34** (Dkt. No. 103-3)).  Just like Hagmann manufactured "evidence" in his fake NSA targeting allegation with a disreputable purported "intelligence agency source" (§SAC 36-37, §SAC §**Exhibit 1-2** (Dkt. No 103-1)), he did it again during the 2016 U.S. Presidential Elections. As is Quayle's pattern and practice, he repeated it, disseminated it as if real news (§SAC §265-276.)[6]  A North Carolina man with a AR-15 showed up at a D.C. pizza place believing he was going to rescue children in a satanic pedophile ring, and shots were fired. Thankfully, no one was killed.

And Plaintiff?  She blew the whistle on Defendants, and their "news," beginning in 2014.

---

[5] Jana Winters, "Exclusive: FBI document warns conspiracy theories are a new domestic terrorism threat," *Yahoo News,* August 1, 2019, located at: https://news.yahoo.com/fbi-documents-conspiracy-theories-terrorism-160000507.html

[6] Quayle publishes "news" too §SAC§65, 366. §SAC §**Exhibit** 12 and §Opp §Plaintiff decl §68 §**Exhibit** 54. Like Hagmann, Quayle also uses manufactured "evidence," as "news," *See* The V Files which Hagmann also peddled with Quayle as if legitimate news §SAC §226, 366 (Dkt. No. 111-6 §**Exhibit** 35-37). It was not, but it did induce multi-million dollar interstate and international commerce.

Plaintiff does not want to see anyone else hurt by Defendants "news." She is relieved that law enforcement is finally paying attention to their "news." Fraud is not protected by the First Amendment of the U.S. Constitution or The Constitution of Pennsylvania.

Despite pleading and substantiating this in SAC and Opp with true and correct exhibits, Quayle and Hagmann want this honorable Court to dismiss the Counts of defamation *per se*, False Light and this Action *with prejudice*. There was no "war of words."  Freedom of speech is not the freedom to defraud or to defame.  As such, Defendants' Rec Motion must be denied.

### III.  The True Context. Almost Four (4)-Years After Plaintiff Filed this Lawsuit, and More Than 135 Court Filings Later, NSA Targeting Allegation is Still Fake. Hagmann's "News," which Quayle Also Claimed was True, was False, Fake, Fraudulent, a Hoax,  and a Sham.

It will be four (4) years on November 9, 2019, when Plaintiff originally filed this action on November 9, 2015. That is over one thousand three hundred and seventy (1,370) days, and over one hundred and thirty-five (135) Court filings later.  During this time Defendants' seasoned Counsel had time to file altered, deceptive, virtually illegible exhibits of Plaintiff's website content.  Defendants had time to remove two websites with relevant evidence to this action, and republish their libel *per se* Joint Statement against the Plaintiff twice (§SAC§368 - 378, §SAC Exhibit 19-21 (Dkt. No. 103-2)) (§SAC **Exhibit 42-43** (Dkt. No.103-4)).  *See,* Hagmann's second website was removed after SAC was filed (§Opp § Plaintiff decl §16-22, **Exhibit  5-9** (Dkt. No. 111-3)).

During this time, Defendants' Counsel never found time to file a true and correct copy of Hagmann's NSA targeting allegation "sworn" statement to find his purported government agency sources which started this incident, and led to this Action because it was false. A sham. Fraudulent. A swindle. Fake News. Hoax. Nonsense (§SAC §34-42, 172, 301 §SAC **Exhibit 1-**

**2**.). Hagmann made up his NSA targeting allegation he claimed occurred when he was talking to Quayle under the guise of bringing the real news to worldwide audiences (§SAC§120).

Freedom of speech is not the freedom to defraud.  Defendants defrauded the Plaintiff, and the public-at-large. Rec Motion is Defendants *fourth* motion attempt to have this case dismissed with prejudice. Thereby, granting Defendants permission to continue this lucrative unlawful, fraudulent conduct disguised as "news" on the worldwide Internet without consequence.

Defendants' three motions to dismiss, which Plaintiff *pro se* opposed every year for the last three years, buttressed by their Objections provide additional evidence of this.

Every year for the last three years, Counsel has essentially argued, "So what if Hagmann is a bad source, and even if his NSA targeting allegation is not true…."  (Dkt. No. 128).

So what?  Even if...? Journalists expose fraud, corruption, and potential funny business. They do not engage in it. It is illegal for journalists, lawyers, and for any individual to make false allegations, manufacture "evidence," claim "sources" have legitimate credentials when they are phony, for their unjust financial gain or personal gratification or the furtherance thereof.

Plaintiff is not a lawyer, but a person does not have to be a lawyer to see fraud, and to know fraud is unlawful.[7]  Plaintiff cannot fathom how Defendants, or anyone, deliberately sets out to make false allegations, with counterfeit sources, and manufacture "evidence," as "news," when there are real problems to be concerned with, while claiming to bring the real news.

Now that Hagmann's fraudulent activity which prompted this lawsuit, that Quayle also lied about, and tried to intimidate and bully the Plaintiff over for correcting, has been re-confirmed <u>again</u> by Counsels' Objections, this Court should apply defamation law in the true context in which Defendants' malicious false statements and implications against the Plaintiff

---

[7] Plaintiff has worked with traditional publishing house when legal reviews were mandatory and has experience covering true crimes.

were made.  She conducted herself properly, lawfully.  Hagmann and Quayle did not.  It is worth

noting that in *FTC v Kevin Trudeau et al* (2016) Case: 15-3472, Mr. Trudeau's lawyers made

similar arguments, like Defendants' Counsel.  Ultimately, their arguments failed, and Lady

Justice caught up to Mr. Trudeau.

**IV.    Should The Court Grant Defendants' Alternative—to Re-evaluate SAC for Defamatory Capability, Plaintiff Opposes Defendants' Re-Cycled Claim – It Was Somebody Else Who Defendants' Imputed with Crimes and It Should Be Rejected.**

To prevent duplication, Plaintiff re-incorporates SAC (Dkt. No. 103), her [third]

Opposition to Defendants' Motions to Dismiss ("Opp") (Dkt. No. 111-112), case law and

arguments in their entirety.  In Defendants' Rec Motion among the failed recycled arguments,

lies, and parsing of words, Counsel brought forth again, they claimed their clients were not

talking about the Plaintiff, during the February 10, 2015 Broadcast, thus neither of them could

have imputed her with criminal activity.

Plaintiff opposes this (again), given in the beginning of Defendants' February 10, 2015

Broadcast, when Quayle started talking about this matter, he had told their audiences who he

(and Hagmann) were talking about when he directed them to go to their Joint Statement: "Setting

the Record Straight: Our Joint Statement Addressing the Character Assassinations that are

Underway ("Joint Statement")."  (§SAC §133-134, (§SAC **Exhibit 18** § line 173-175)), in part:

> **MR. QUAYLE:**  The point is it came time to draw the line, and we drew the line. You can go on Doug Hagmann's site or stevequayle.com—Setting the Record Straight: Our Joint Response Addressing the Character Assassinations that are Underway.

Two people were featured in their Joint Statement. The Plaintiff and U.S. citizen Kirk

Michael McLeod. She was named twenty-seven (27) times, and her picture was also published.

*See:* §SAC §126 §SAC **Exhibit 19**.  As this Court may verify, Defendants did not identify

somebody else, or other people in their Joint Statement. They identified Plaintiff and Kirk

McLeod. Defendants also conflated her with other individuals conduct, as she correctly pleaded, thus imputing her with other people's conduct—criminal or otherwise (§SAC §121). In part:

> 121.      During the three (3)-hour Feb 10 Broadcast, approximately one third of the audio content was dedicated to slandering and inciting violence against the Plaintiff, directly and indirectly, and by falsely, and broadly associating her with other individuals.

Thus, Defendants, directly and by implication, imputed Plaintiff with crimes.  Further, for good measure, Hagmann also directly told new listeners if case they had tuned in late exactly who Quayle had been talking about—the Plaintiff and Kirk McLeod.

§SAC §136 (§SAC **Exhibit 18** §line 431-465) in part:

**MR. HAGMANN:** OK, I just want to put this in context urn for the new, for listeners just joining us. What we're... Steve Quayle's our guest, of course, stevequayle.com. What we're talking about is this. Uh for the last several months... Just for a context here. The last several months we've been under just a vicious, vile attack. It it's by two individuals, uh one is Marinka Peschmann, the second Michael Erevna. Really his real name is Kirk McLeod, although he had never disclosed that to us. Now, here's the situation. We have both, Steve and I have been the subject of threats, uh intimidation, harassment. And I mean harassment. Folks, what you read on the websites, what you read on the websites that are referenced in this article are just the top portion of the iceberg. Understand that.

The second thing everyone needs to understand, the very people who we allowed into our inner circle, just as perhaps you, ladies and gentlemen, may allow into your inner circle, have betrayed us. For, well, for their own personal gain. Lies upon lies. And how do you refute lies made out of whole cloth? It's difficult.

But I want to make one thing perfectly and abundantly clear to everyone listening to this. The 3,000 word article, response, that Steve and I crafted, and we agonized. And when Steve says we agonize, we agonized. And we sought, we sought counsel. Wise counsel. Scripture counsel. Divine... we prayed. We prayed together. We prayed individually.

We brought our families into this. Because our families have been threatened, have been directly uh involved in this, to a degree folks that you will never know because we will never disclose it. And when Steve says death threats, house on the Internet, yes, he's not lying. And I become emotional because, folks, let me tell you something. You've got no idea. If if you would have told me three years ago that we were going to walk into this vipers' den, I probably would have had second thoughts about doing what we're doing right now. But now we're in too deep urn and we've got a job to do and doggon it, we're gonna finish it. We're gonna see it right to the end.

But I'll say this. <u>The 3,000 words response on the Internet, from Steve and I, we can add another 9,000. Understand, we only released a response, just enough, to satisfy the vipers, the serpents, and those people who thrive on chaos and lies.</u> We're not going to take any... We're not going to take any more. <u>We're not going to take any more threats to our families. We're not going to take any more threats to to ruin our reputations. We're not going to take the harassment any more. I don't believe we have to.</u> And I'm gonna tell ya, as Steve's younger brother, and the emphasis there is on younger, Steve, uh, as Steve's younger brother, I I will stand in front of him, beside him, behind him, and protect him. And his wife, and his family. Because some of the horrendous things I've seen, and that's only a small portion of what he's endured. It it's just, it's incredible. <u>It's not a threat. I'm not making a threat. I'm just saying that we have so much more information.</u> And lastly, lastly, is this, Steve. And thank you for being patient with me.

Hagmann's quote also falsely accuses Plaintiff of additional crimes, of having been a part of Defendants' inner circle/Circle of Trust –a provable false and defamatory statement given the context (§SAC§104, 120, 175-177), and tries to intimidate and bully her by claiming Defendants "can add another 9,000 [words]" against her which Quayle repeated (§SAC§151-153). Intimidation and bullying is not protected speech either. For Quayle's most egregious example of inciting violence against her— murder, *see,*§SAC §119, 154-155. That's what 45s are for.

Moreover, correcting false allegations is not harassment; a threat to anyone's reputation; a "war of words," or "throwing the first punch." It is what journalists do and must do when they can no longer stand by a story. Hagmann needs to stop making false allegations with Quayle, and other individuals in their online media Circle of Trust, with disreputable sources (assuming they all exist), as "news," as purported "Christians," which induces interstate and international commerce *(i.e.* precious metals, prepper gear, books etc.) and "tithes/donations."

Lastly, in Defendants' February 10 Broadcast, Quayle also addressed Plaintiff by name, and said this below, which Counsel twisted in Rec Motion §p.17 (§SAC §203-206) §**Exhibit 18** §line 472-482.  In part:

11

**MR. QUAYLE:** I want to say this. I was in real-time when Doug was arrested, and thrown down, because I put up immediately on my website to pray for you. The person who had it out for you, and in this case Marinka, couldn't wait to try and bury you, I mean, she just doesn't believe, and she tried to, ladies and gentleman, she tried to enlist me against Doug. I wouldn't buy it. Obviously, my response to her is posted [Defendants' Joint Statement]. You know, again, I mean for too many times, you know, Hawk used to get a bunch of crap too about it. I have personally been involved in communications by special operations when actual assassinations attempts against him were underway. And he's still alive. Because Hawk's not ashamed of the Gospel of Jesus Christ. So the point is is that you know, urn, I don't have time for... I can't say that word, I don't have time to any longer give any foothold to the devil.

204.   Here Quayle's false statements of fact would be taken, in part, by the intended listener to mean the Plaintiff serves the devil, is a liar and bound and determined to destroy and ruin Hagmann. Quayle and Hagmann's reckless, vicious character assassination portrayed a false picture of her character and motives. Defendants' false allegations and fraudulent sources (if they exist) are harming their audiences.

        Thus,  Rec Motions needs to be denied

## V.    Should The Court Grant Defendants' Alternative, Hagmann Also Imputed Criminal Activity and Professional Misconduct Against Plaintiff on November 11, 2014.

        In the H&H Report's November 11, 2014 Broadcast, Hagmann had already imputed

Plaintiff with criminal activity and professional misconduct (slander *per se*). Here too, Hagmann

also restated his fake NSA targeting allegation, the hoax, the swindle, the fake news, as if it was

true again with new <u>provable</u> false claims.  *See* §SAC §263. In part:

263.        Prior to the Feb 10 Broadcast and Feb 10 Joint Statement, to the Plaintiff's knowledge, Hagmann's response to her Correction Article(s), was on H&H Report on November 11, 2014.[8]  There, Hagmann claimed his alleged sworn affidavit regarding his NSA targeting allegation was not just notarized by a notary, but "in fact before a municipal judge," slandered the Plaintiff and stated this in part below:

**MR. HAGMANN:** Folks, I am going to make this one statement and this one statement only. And I am going to say it right now. Last year, I had, I had, I was the subject of an NSA targeting type of an event, a harassment, I filed a— I actually swore out an affidavit. I swore to it under oath before a notary, and in fact before a municipal court judge outlining exactly what happened to me in my office on a certain date, 2013, where the NSA had shown up on my telephone. In other words, subsequent to a conversation with an

---

[8] H&H Report, November 11, 2014, http://www.blogtalkradio.com/cfp-radio/2014/11/12/stan-deyo-on-the-hagmann-hagmann-report. [Time stamp: 24:00:00].

investigative reporter, and I'm not going to name that investigative reporter, the NSA, Utah Data center showed up on my caller id.

I had a ring back from that showing that, and of course, you know. Look. I got a message, as well that, that essentially, that was directed, I suspect to, or intended for someone else.

There is a lot of crap, a lot of BS being attempted right now about my situation, and quite frankly it, it's almost like a serial stalking situation by a person who I believe personally, I believe is mentally unstable, and that is all I'm going to say, except to say, folks, believe only half of what you read on the internet, perhaps maybe none of what you read. But that's all I'm going to say about that. Let's continue with Ms. Attkinsson. I can relate to this.

264.      In Pennsylvania, "a plaintiff claiming defamation need not be specifically named in the communication, if the plaintiff is pointed to by description or circumstances tending to identify him or her. *Cosgrove Studio & Camera Shop, Inc. v. Pane,* 182 A.2d 751, 753 (Pa. 1962). The test is "whether the defamatory communication may reasonably be understood as referring to the plaintiff." *Zerpol Corp. v. DMP Corp.,* 561 F.Supp. 404, 410 (E.D. Pa. 1983) (citing *Farrell v. Triangle Publ'ns, Inc.,* 159 A.2d 734 (Pa. 1960))."

The Pennsylvania Superior Court further explained in  *Dougherty v. Boyerton Times*, 547

A.2d 778 (Pa. Super. 1988):

The nature of the audience is a critical factor in determining whether a statement is capable of defamatory meaning. . . . Injury to reputation is judged by the reaction of other persons in the community and not by the party's self-estimation.  *Rybas v. Wapner*, 311 Pa.Super. 50, 457 A.2d 108 (1983).  Specifically, a communication is defamatory if it "ascribes to another conduct, character or a condition that would adversely affect his fitness for the proper conduct of his lawful business, trade or profession." *Baker v. Lafayette College*, 350 Pa.Super. 68, 76, 504 A.2d 247, 251 (1986) *quoting Thomas Merton Center, supra*, 422 A.2d at 216. *Id.* at 783.

Plaintiff had also made a harmless (albeit confusing) numbering error in SAC.  For

clarity sake, with respect to the November 11, 2014 Broadcast, §SAC §254 should be re-

numbered to 265.  (*See also* §SAC §381)

~~254~~. 265.   In addition, Hagmann slandered *per se* the Plaintiff again by making false statements of facts when he accused her of the crime of "serial stalking," said she was "mentally unstable," and that her NSA corrective reporting was "a lot of crap, a lot of BS."

13

In Pennsylvania, defamation actions have a one-year statute of limitations period. 42 Pa.C.S. § 5523(1).  Plaintiff filed this lawsuit on November 9, 2015 before the H&H Report's November 11, 2014 statute of limitations had run out. These statements are actionable.

For the afore-stated reasons, Plaintiff's corrective reporting was not "a lot of crap, a lot of BS," s*ee also* §SAC §379-383.  She is also not guilty of the crime of serial stalking Hagmann or "mentally unstable."  As is his practice, Hagmann provided no proof because it does not exist. His statements imputing her with crimes and business misconduct were made with actual malice.

In addition, R&R made an error.  Among Hagmann's false statements made with actual malice against the Plaintiff, it was Quayle, not Hagmann, who had imputed Plaintiff with the crime of murder when he heinously twisted scripture against her in his role as a pastor (SAC§169-170,  207).  Quayle also falsely claimed she was a "government operative," which is defamatory given their audiences (the recipients) believe there is a "Deep State."  Plaintiff is not a government operative.  Moreover, given Defendants' intended audience, who also believe Defendants are Christian watchmen, Quayle's statements, his twisting of scripture, directly and by implication defamed the Plaintiff, particularly in the context in which they were made, and the recipients' understanding of them—a Christian, Conservative audience.

Under Pennsylvania law, to state a claim for defamation a plaintiff must allege: "(1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of a conditionally privileged occasion." *Hill v. Cosby,* 2016 WL 491728, at *2 (W.D. Pa. Feb. 9, 2016).

That is what Plaintiff repeatedly pleaded in SAC. Thus, Defendants' Rec Motion, should

be denied, and additional statements capable of defamatory meaning, and of inciting violence

move forward into discovery.  The focus in ruling on a Motion to Dismiss is not on resolving the

merits of the dispute.  The Court must accept as true all allegations set out in the Complaint, and

view all reasonable factual inferences in the light most favorable to the non-moving party.

*Angelastro v. Prudential- Bache Securities, Inc.,* 764 F.2d 939, 944 (3d Cir. 1985).  The purpose

of discovery is to eliminate strawmen arguments. Here, Plaintiff has already demonstrated

Defendants' arguments are strawmen, despite not being legally required to do at the motion to

dismiss stage.  Further, Plaintiff properly raised 42 Pa. C.S. §8343 (b) (§SAC §387)[9] which will

quickly show which parties are not credible and which party is credible, as if there is any doubt.

Like Counsel, this Court, (and a future jury), may listen to and read Defendants' lucrative, fake,

destabilizing, fear porn "news" with fraudulent sources at any time.

## VI.  Counsel Mischaracterizes Defendants Provable False Statements and Implications Against the Plaintiff as Insults, Rhetorical Hyperbole, Opinion, and/or Protected. They Are Not. They Are Capable of Defamatory Meaning.

The First Amendment protects subjective statements of opinion that do not convey a

"provably false factual connotation," as well as criticism consisting of "imaginative expression,"

"rhetorical hyperbole" or even "vigorous epithet." *Milkovich v. Lorain J. Co.,* 497 U.S. 1, 17

(1990).  In Rec Motion (and R&R) mischaracterizes black and white, yes or no, provable

statements Defendants made against the Plaintiff that directly and by implications are injurious

to her trade, profession and business, which are capable of defamatory meaning, and cast her in a

false light, as if they were insults, rhetorical hyperbole, opinion, imaginable expression, vigorous

---

[9] 42 Pa. C.S. §8343 (b) states: In an action for defamation, the defendant has the burden of
proving, when the issue is properly raised: (1) The truth of the defamatory communication. (2)
The privileged character of the occasion on which it was published. (3) The character of the
subject matter of defamatory comment as of public concern.

epithet, and/or as protected. They are not.  *See for e.g.,* Defendants' Feb. 10 Joint Statement

*(*§SAC §132) which states in part:

> **FEB 10 JOINT STATEMENT:** We issue this joint statement as obedient watchmen
> as referenced in chapter six of the Book of Jeremiah to address very slanderous and
> libelous public accusations that have been made against us by two individuals, Kirk
> [Michael] McLeod, using the fictitious name Michael Erevna, and Marinka Peschmann.
> Our statement is not made out of haste, but only after a lengthy period of abundant
> prayerful consideration.
>
> * * *
>
> As many readers and listeners know, we've been subjected to a well-coordinated and
> malicious campaign of slander and libel over the last several months by two individuals
> who we once trusted, generously provided airtime, financial support, and for whom we
> solicited the support of others. Both were introduced to us telephonically by third
> parties…. We never met either Kirk McLeod, a/k/a Michael Erevna or Marinka
> Peschmann in person, although had numerous telephone conversations with both.

Plaintiff either was in a coordinated malicious campaign against Defendants with Kirk

McLeod, or she was not. She was not. Quayle and Hagmann know whether or not they

"generously provided" Plaintiff with financial support. Either they did, or they did not. They did

not. They provided Kirk McLeod with five thousand dollars ($5,000), and the Plaintiff with zero

dollars ($0.00). There is nothing subjective in these statements.  There is zero (0) truth or

opinion, but whether the statement(s)  are true or false, is defamatory, as the connotation and the

implications are clear. *See* pleadings of these statements §SAC §137-141, 145. Moreover, each

and every statement in Defendants' <u>Joint Statement</u> were "not made out of haste," against the

Plaintiff (all of them), thus were made with the full knowledge they were false—actual malice.

In discovery Plaintiff can subpoena any and all documents from Defendants concerning

having provided her with financial support.  It is false, thus provably false and Defendants will

have to admit they do not have any documents, *i.e.* bank records, paypal transfers, wire transfers,

cashed checks, etc. because they did not "generously provide" her with financial support ($0.00).

16

Counsel also wants this Court to seriously believe that audiences (the recipients) painfully parse and separate their clients' sweeping, conflated statements against her for the conduct of other individuals—criminal or otherwise, when they heard and/or read them, (§SAC §121). The recipients do not. These statements, among all the others in SAC, are provably false, were made with actual malice, thus capable of defamatory meaning. They impute business misconduct and ineptitude against the Plaintiff, and are similarly actionable, given Plaintiff's corrective reporting was accurate.

### VII.  Ripe for Rule 56 Summary Judgment.  In Addition To Plaintiff's Correction Articles, Motion For Reconsideration Confirms that Plaintiff Did Not Slander or Libel Defendants.

In Defendants' February 10, 2015 Joint Statement (*See also* §SAC §132, 139) and during the February 10, 2015 Radio Broadcast, Quayle and Hagmann claimed Plaintiff had slandered and libeled them. She either did or she did not. She did not (§SAC §137-139).  Moreover, as she wrote in her Objections to R&R §p. 4 with respect to Quayle's quote and doxxing (*See* §SAC **§Exhibit 18** § line 304-310. Dkt. No. 103-2):  "Here too, Quayle falsely claimed directly, and by implication, with actual malice that Plaintiff was guilty of "overt Internet fraud, cyber libel, cyber slander."  None of these statements are true and were made with actual malice, imputing her with crimes, and are injurious to her profession thus *per se* defamatory. They also paint her in a false light. Moreover, it was impossible for her to have slandered or cyber slandered Quayle or Hagmann in written published form, thus, these statements are ripe for Rule 56 summary judgment. At Rec Motion §p. 4, Counsel confirmed their clients' statements were false.

After months of Plaintiff's continuous *ad hominin* attacks, Hagmann and Quayle,  in an attempt to defend themselves, went on the defensive and finally responded.

Indeed, Plaintiff did not slander or libel or cyber slander or cyber libel Defendants. In addition, unlike Defendants' content, Plaintiff's Correction Articles, (like her pleadings) are

substantiated. This does not constitute *ad hominin* attacks either. Lastly, publishing three (3) correction articles from October 8, 2014-February 9, 2015 –four months (120 days), then a detailed retraction notice because of Defendants back-to-back defamatory *per se* statements, does not remotely equate to "months of Plaintiff's continuous ad hominin attacks" either.

Defamation and False Light in Pennsylvania share the common actual malice standard regarding public and/or limited public figures. Falsity of the materials in question "is defined broadly and can be established where . . .[the] presentation of [the] information . . . renders the publication susceptible to inferences casting [the plaintiff] in a false light." *Cheney v. Daily News L.P.*, 654 F. App'x 578, 583 (3d Cir. 2016) (quoting *Larsen*, 543 A.2d at 1189). Rec Motion p. 2

> For example, it would be a fool's errand indeed to attempt to use discovery to determine whether falsity can ever exist in statements such as that Plaintiff is a "slithering snake," or that she bore "bitterness, envy, strife and… tale bearing;" that she was sleeping with the devil; that she was a "nut job;" or that she was "unstable." These statements are not actionable and must first be analyzed by the Court, and determined to be as such.

Plaintiff agrees "slithering snake" is not defamatory, so the parties can agree on that. However, other words and statements are capable of defamatory meaning, directly and by implication. *For e.g.*, the Plaintiff is not "bitter." She does not "envy" the Defendants. "Strife?" She blew the whistle on their "news" with their fraudulent "sources," as any ethical journalist would have done. That is not "strife." Additionally, she would not want to live virtually online like the Defendants do, or she would have done so a long time ago. Bitter? Envy? Strife? On the contrary, there are honest ways to make a living. Defendants can make "money" like millions of people do—honestly. Now, finally, the FBI noticed there is a dangerous problem with their "news." As such, there is nothing to envy about the Defendants or to be bitter about. Plaintiff is glad she blew the whistle on them . (*See also:* SAC §116, 207, 336-337) Her hands are clean. Doing what is right, ethical and lawful does not make her "nut job," or "unstable" either.

Notably, Plaintiff's Correction articles and oppositions to Defendants' *annual* motions to dismiss has led to Quayle to start conducting himself lawfully online, given on or about July 20, 2018, Quayle published a precious metals "buy-back" program (§SAC §150, §SAC **Exhibit 22**.) Already, this Action has provided a valuable public service and we are not in discovery yet.

 *See* also §SAC §149-150, in part:

> Quayle, during the Feb 10 Broadcast, made false statements of facts that the Plaintiff and McLeod are "traitors? Oh, the ultimate," and "false accusers," who were guilty of "bitterness, envy, strife," "despisers of those who are good," and of "tale bearing," among other reckless falsehoods by twisting and abusing scriptures to *per se* defame the Plaintiff when the opposite is true. § **Exhibit 18** § line 216-222, line 491-493

 Plaintiff corrected Defendants' false NSA targeting allegation she *was assigned to report* (§SAC §35-43, 176, 316-327).  Counsel has spent almost four years, essentially arguing, "Who cares if Hagmann is a bad source and his NSA targeting allegation is not true..."[10]  Thus, she is not a traitor," a "false accuser," or guilty of being a "tale bearer."  She is the opposite of what Quayle  (and Hagmann separately, or collectively) claimed and implied, when he made those (and other false statements), with actual malice, given Quayle knew Hagmann's NSA targeting allegation was false when he made them, but he *per se* defamed her anyways.

 Additionally, Plaintiff is not a "despiser of those who are good." Good, honest, (and Christian) people do not make serious false allegations with fraudulent sources which induces lucrative interstate and international commerce. Then defame and incite violence against a woman who would not play along.  Plaintiff likes people who do good and tell the truth. They save her and this Court a lot of time too. There is no reason to file defamation lawsuits against

---

[10] (*See* §*SAC for e.g.* Quayle's "news" §SAC§65, 224-235, 366. §SAC **Exhibit** 12 and §Opp §Plaintiff decl §68 §**Exhibit** 54. Like Hagmann, Quayle also uses manufactured "evidence," as "news," *See* The V Files which Hagmann also peddled with Quayle as if legitimate news §SAC §226, 366 (Dkt. No. 111-6 §**Exhibit** 35-37) . It was not legitimate either, but it did induce lucrative interstate and international commerce.

them.  A defendant may avoid liability for defamation if it shows that its statements were

"substantially true." See *42 Pa. Const. Stat. Ann. § 8343(b)(1) (West 2013)*; see also *Dunlap v.*

*Phila. Newspapers, Inc.,* 448 A.2d 6, 15 (Pa. Super. Ct. 1982) ("The proof of truth must go to the

gist or sting of the defamation.") (quoting Sack, Libel, Slander, and Related Problems at 50-51,

137-38 (1980) (internal quotation marks omitted)).  Here, the opposite is true.

> A defamatory statement must be viewed in context, *Baker v. Lafayette Coll.,* 532 A.2d 399,
> 402 (Pa. 1987), and a defendant cannot use truth as a defense where "the implication of the
> communication as a whole was false," even if the statement is "literally accura[te]," *Dunlap,*
> 448 A.2d at 15. Though we are not aware of any Pennsylvania Supreme Court case on the
> point, inferior Pennsylvania courts applying Pennsylvania law have concluded that
> defamation may be established where a statement, viewed in context, creates a false
> implication. See, e.g., id. (adopting defamation by innuendo theory); *Mzamane v. Winfrey,*
> 693 F. Supp. 2d 442, 476-78 (E.D. Pa. 2010) (collecting cases approving a defamation-by-
> implication theory).

Quayle, who the Plaintiff did not cite in her first Correction Article, could have stayed

out of this matter, but instead he provided her with more evidence that Hagmann's NSA

targeting allegation was false, by lying for him and attacked her.  He chose to lie for Hagmann

and to bully, and intimidate her. Quayle prompted her Second Correction Article, and then he

held a fundraiser for Hagmann crying victim against "hell's messenger" (aka Plaintiff) to their

Christian audiences. (§SAC § 34-51, 66, 112-117).  Already, several of the statements Rec

Motion has highlighted are false, defamatory statements that also put Plaintiff in a false light.

In Rec Motion §p. 3-4, as is their custom, Defendants Counsel mischaracterized the facts

of this case and the pleadings. She would have preferred that Quayle stayed out of this matter,

but he did not. Borrowing Counsels' words, Quayle "threw the first punch."  That is the context

and how the capability of defamatory meaning must be applied.  In its examination of the

meaning of the communication, the court must read the allegedly defamatory words in context.

*Thomas Merton Center*, supra, 442 A.2d at 214; *Corabi v. Curtis Pub. Co.*, 273 A.2d 899, 901

(Pa. 1971); *MacRae v. Afro-American Co.*, 172 F. Supp. 184 (E.D.Pa.1959), aff'd, 274 F.2d 287 (3d Cir. 1960).

In Rec Motion §p. 11, Counsel had the gall by speaking for the Plaintiff, as if he could, and knows what she thinks. He does not. Counsel claimed that Plaintiff and Quayle "were expressing opinions about the other rather than statements of actual fact," in their fake "war of words" defense. Plaintiff can speak for herself.  She was not expressing her opinion about the Defendants.  The NSA targeting allegation was false, a hoax. A swindle. This Court may read and listen to scores of other examples of Defendants' fear porn fake "news" with fraudulent sources, they disseminated repeatedly to Christian Conservative audiences, as if real "news," in her pleadings, and exhibits of Defendants' own published content.

If Defendants "news" were true, Americans would have been put in Fema Camps, living under martial law, or been shot and killed (§SAC §57). Their guns would have been confiscated; the banks would have taken all their money, and so on  (*See for e.g.* §SAC §54-65, 336-339). Defendants "news" is fear porn disguised as news. It terrifies and distresses their Christian Conservative audiences, who typically believe in the end times and the "mark of the beast," (hence Quayle sells precious metals).  Defendants "news" demonstrates they have no credibility. So goes the falsity of their Counsels' fake, false arguments and purported defenses. Counsel, who can also read and listen to their clients "news," have become their clients, except they do not claim Jesus speaks to them in the shower, at least not yet (SAC §201). Among their lies of Plaintiff's pleadings (§SAC §204, 209-211), Defendants re-claimed she threatened to "destroy" Quayle  (§Rec Motion p.17.).  False. In reality, Quayle could have stayed out of this matter.[11]

---

[11] **Note:** Defendants' Counsel chronically misrepresents facts. *See,* Rec Motion §p. 2, Footnote 1. Plaintiff's October 10, 2019, morning letter she sent via email to Counsel was entitled:  "Rule 26(f) Conference and other matters: Peschmann v. Quayle, Hagmann *1:17-cv-00259-SPB-RAL.*"

**VIII.  Should Defendants' Alternative Be Granted, Satanic and Demonic "news" is *Per Se* Defamatory to Christian Conservative Audiences— Defendants' Audiences.**

Respectfully, Magistrate Judge Lanzillo erred in R&R when determining which statements were defamatory in their true context, and which were not, and the recipients understanding of them— Christian Conservative audiences. This audience takes the Bible literally, believe in Satanism, in demonic possession, and "Spirit Cooking," whatever that is.

Defendants "news" used their Satanic, Lucifer, twisting of scripture, demon possession "news," like they did with the Plaintiff in 2015, against a U.S. candidate for President of the United States in 2016.  People believed them. These audiences are among massive Christian Conservative audiences (§SAC §161-166). As a result of this incident, Plaintiff learned the hard way there are reasonable people who may believe unreasonable things, and then there are unreasonable people.  Both are active online and vote.  The Russians understood this audience, and exploited it (§SAC §159-166). Thus, Plaintiff is grateful the Honorable Susan P. Baxter set precedence with "Satan follower." As such, it is actionable when Quayle seriously claimed Plaintiff sleeps with the devil twice to a Christian Conservative audience who believe it literally (§SAC §159-166).  What Defendants do with their Satanic talk  "news" is defamatory, dehumanizing, and dangerous among a worldwide Christian Conservative audience.

Moreover, the Court has the power to set guidelines and to issue jury instructions to acknowledge the recipients are Christian Conservative audiences, who take the Bible literally, and to distinguish the difference between defamation and insults as applicable. Plaintiff already has evidence to prove this, and filed a small fraction of it. *For e.g., see,* Deliverance [from Satanic Forces] Questionnaire (Dkt No. 111-11), which the Defendants aggressively tried to have

---

Plaintiff was following Magistrate Judge Lanzillo's order (Dkt. No. 137) to set up a time for the Parties to confer. So she did, and Defendants' Counsel twisted that too to make Plaintiff look bad when she was following the Court's Order.  There is no bottom.

stricken from the record, but failed. The Defendants have "deliverance ministers," "intercessors," and "prayer warriors" in their online media Circle of Trust for a reason. The Plaintiff does not. As this case is at the pleading stage, this need not be fully addressed, at this time.

The United States Supreme Court has stated that there is "no constitutional value in false statements of fact." *Gertz V. Robert Welch, Inc..* 418 U.S. 323,338, 94 S.Ct. 2997,41 L.Ed.2d 789 (1974). The intentional lie does not materially advance society's interest in "uninhibited, robust, and wideopen" debate on public issues. *New York Times Co. v. Sullivan,* 376 U.S. at 265, 84 S.Ct. 710. Falsehoods belong to that category of utterances that "are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality." *Chaplinsky v. New Hampshire,* 315 U.S. 568, 572,62 S.Ct. 766, 86 L.Ed. 1031 (1942). The Court has further stated that "[f]alse statements of fact are particularly valueless; they interfere with the truth seeking function of the marketplace of ideas, and they cause damage to an individual's reputation that cannot easily be repaired by counter speech, however persuasive or effective." *Hustler Magazine v. Falwell,* 485 U.S. 46, 51, 108 S.Ct. 876,99 L.Ed.2d 41 (1988).

*Hustler Magazine v Falwell* (R&R cited, and Defendants cited in their Motions to Dismiss, but not in Rec Motion after Plaintiff's Objections) featured parody and political satire.

In contrast, Defendants, as "Christians" claim to provide news with reputable sources, yet they published *per se* defamatory news, concerning the Plaintiff and other individuals, U.S. citizens.  Defendants' audiences trust and believe them and their news, in part, because of Defendants claimed credentials (§SAC§ 2-9, 207). Genuine issues of material fact on whether Defendants published statements exist and need to be litigated.

**V.  Plaintiff Has Already Addressed and Opposed the "Chilling Effect" In All Three of Her Oppositions to Defendants' Motions to Dismiss.**

In Rec Motion §p. 15, Counsel argues how Pennsylvania Courts have been mindful of the chilling effect of the use of libel suits to chill "embarrassing or annoying" speech.  Here, Defendants' speech repeatedly imputed Plaintiff with criminal conduct and business misconduct. That is not embarrassing or annoying.  It is highly damaging and destructive—defamation *per se.*

Moreover, Plaintiff addressed this and countered it in all three of her Oppositions to Defendants' Motions to Dismiss. *See,* First Opp (Dkt. No. 62 §p. 17, footnote 21-22); Second Opp (Dkt. No. 88 §p. 16,footnote 16-17); and Third Opp (Dkt. No. 111 §p. 16, footnote 13-14).

> 13.     To guard against a "chilling effect," the Court has the power to set guidelines for proof and evidence and to issue jury instructions to mitigate any concerns over unnecessary encroachment on free speech or association. *See, Humanitarian Law Project v. United States Dept. of Justice*, 352 F.3d 382 (statute construed to have an element of *mens rea* to preserve constitutionality). As this case is at the pleading stage, this need not be addressed, at this time. 14.     The standards for First Amendment protection are higher in a criminal case. This is a civil case. It does not chill free speech, if anything; it would "chill" Defendants specific behavior.

Pennsylvania's Constitution relegates free speech to a less-prominent position in Article 1, Section 7, and even then cautions the free speaker that he or she shall be "responsible for the abuse of that liberty." Thus, Pennsylvania law closely guards the ability of a person whose reputation has been injured by defamatory statements to obtain redress for such injury. In *American Future Systems v. Better Business Bureau*, 592 Pa. 66, 923 A.2d 389 (2007), the Court explained that the Pennsylvania Constitution "places reputational interests on the highest plane, that is, on the same level as those pertaining to life, liberty, and property." *Id*. at 77 n.7, 923 A.2d at 395 n.7; *see* Pa. Const. art. I § 1 ("All men have certain inherent and indefeasible rights, among which are those of enjoying and defending reputation."); *id.* § 11 ("[E]very man for an injury done him in his reputation shall have remedy by due course of law."); *See also Rosenblatt v. Baer*, 383 U.S. 75, 86, 86 S.Ct. 669, 676 (1966) (recognizing that "[s]ociety has a pervasive and strong interest in preventing and redressing attacks upon reputation").

24

**Conclusion**

With respect to the length of SAC, Plaintiff did not seek to amend her first amended complaint ("FAC"), when this case was transferred to this Court in the Fall of 2017 (Dkt. No. 78). FAC did not have any exhibits attached (Dkt. No. 27). She believed a R&R on FAC would economize the Parties' time, including this Court's time and resources, and speed up proceedings.[12]  SAC is long because Counsel has had not one, not two, not three (and now four) "bites at the apple" when this case always could have gone forward. Plaintiff had to repeatedly oppose them, counter their falsehoods, altered exhibits, and she did not think a U.S. Federal District Court would have wanted her to be complicit in any of Defendants' repeated fraudulent online conduct, which, thankfully, has finally caught the attention of the authorities and FBI threat assessments (SAC§ 265-275).  Her hands are clean. During *de novo* review, Honorable Baxter declined to strike any pleadings.

This Court may not dismiss a Complaint because it appears unlikely or improbable that Plaintiff can prove the facts alleged or will ultimately prevail on the merits. *Twombly v Bell Atlantic Corp*, 550 U.S. at 563 n.8. Instead, this Court must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements. *Id.* at 556. Generally speaking, a Complaint that provides adequate facts to establish "how, when, and where" will survive a Motion to Dismiss. *Fowler v. UPMC Shadyside,* 578 F.3d 203, 212 (3d

---

[12] [I]t is well settled that this Court must construe a *pro se* litigant's pleadings liberally. *See Higgs v. Atty. Gen. of the United States*, 655 F.3d 333, 339 (3d Cir. 2011) ("The obligation to liberally construe a *pro se* litigant's pleadings is well-established.") (citing cases). *Castro v. United States,* 540 U.S. 375, 381-82, 124 S. Ct. 786, 791-92, 157 L. Ed. 2d 778 (2003) (internal citations omitted); and *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003) (noting that courts must liberally construe pro se filings and "apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name").

Cir. 2009). Because the pleadings provide fair notice, there was no basis for a dismissal of Defendants' Motions to Dismiss.

For the foregoing reasons, Defendants' Rec Def must be denied, or in the alternative, *Defendants' alternative,* for Judge Lanzillo to complete the list the Honorable Susan P. Baxter started (Dkt. No. 134) of defamatory/defamatory *per se* statements Quayle and Hagmann made against the Plaintiff which also paint her in a false light, applied in the true context; and by identifying additional applicable Counts pursuant to Pennsylvania law.

Freedom of Speech is not the freedom to defraud, to defame, to exploit, to unjustly enrich, or to incite violence.

**Dated:** October 18, 2019.                    Respectfully submitted,

                                            /s/Marinka Peschmann
                                           Marinka Peschmann, *Plaintiff pro se*
                                           PO Box 45094 Port Credit
                                           Mississauga, Ontario, L5G 4S7, Canada
                                           Email: marinkapm@aol.com
                                           Telephone: 646-929-4132

## CERTIFICATE OF SERVICE

I hereby certify that on October 18, 2019 copies of the foregoing Opposition to Defendant Stephen Quayle's and Defendant Douglas Hagmann's Motion for Reconsideration were filed in the Western District of Pennsylvania and served via ECF to the following counsel parties of record:

Representing Defendant Stephen Quayle

Bruce Steven Rosen
McCusker, Anselmi, Rosen, Carvelli, P.C.
805 Third Avenue, 12th Floor
New York, NY 10022
Telephone: (212) 308-0070
Email: BRosen@marc.law

Representing Defendant Douglas Hagmann

Michael A. Agresti
Marsh Spaeder Baur Spaeder & Schaaf, LLP
300 State Street, Suite 300
Erie, PA 16507
Telephone: 814-456-5301
MAgresti@marshlaw.com

Respectfully submitted,

  /s/ Marinka Peschmann
Marinka Peschmann, Plaintiff *pro se,*
P.O. Box 45094 Port Credit
Mississauga, Ontario, L5G 4S7, Canada
Telephone: 646-929-4132
Email: marinkapm@aol.com